## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| AMERICAN CLOTHING EXPRESS, INC., D/B/A ALLURE BRIDALS AND JUSTIN ALEXANDER, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>CLOUDFLARE, INC. and DOES 1 - 200, inclusive,<br><br>Defendants. | Case No. 2:20-cv-02007-SHM-dkv<br><br>**COUNTERCLAIMS AND ANSWER OF CLOUDFLARE, INC.** |
| CLOUDFLARE, INC.<br><br>Counterclaimant,<br><br>v.<br><br>AMERICAN CLOTHING EXPRESS, INC., D/B/A ALLURE BRIDALS AND JUSTIN ALEXANDER, INC.,<br><br>Counterdefendants. | |

Defendant and Counterclaimant Cloudflare, Inc. asserts counterclaims, and answers the Complaint, below.  It refers to Plaintiff American Clothing Express, Inc. d/b/a Allure Bridals as "Allure Bridals"; Plaintiff Justin Alexander, Inc. as "Justin Alexander"; and itself as "Cloudflare."

## COUNTERCLAIMS

### I.      CLOUDFLARE AND ITS SERVICES

1.      Cloudflare is one of the Internet's most important infrastructure providers.

2.      Cloudflare secures websites and the Internet from cyberattacks while it enhances the overall health and efficiency of the Internet.

3.      Cloudflare was founded in 2010, and it went public on the New York Stock Exchange in 2019.

4.      Relatively small for its reach and effect, with under 1500 employees, Cloudflare blocks over 50 billion cyberattacks per day as it handles traffic to and from over 26 million Internet properties.

5.      Cloudflare's mission is to help build a better Internet.  That means emphasizing security, privacy, reliability, and efficiency of the "network of networks" that make up the Internet.

6.       In carrying out this function, Cloudflare's services operate several layers lower in the Internet stack than websites or platforms themselves.  Cloudflare does not operate a social media platform or offer other content-based services that analyze the data crossing its network for the purpose of promoting, locating, ranking or marketing content.

7.      To carry out its mission, Cloudflare aims to serve everyone on the Internet from individual developers, to small businesses, to the largest enterprises.

8.     Cloudflare provides services to approximately 10% of the Fortune 1000, as well as universities, governments, and other large organizations.  It derives the overwhelming share of its revenue from those large customers.

9.     For example, in its August 15, 2019 S-1 Registration Statement, Cloudflare provided a list of representative customers that included the Federal Bureau of Investigation, the Library of Congress, Adobe, LendingTree, SoFi, Walmart, The Daily Beast, Harper Collins Publishing, 23andMe, Norwegian Air, Baylor University, and Starbucks.  See Cloudflare's S-1 Statement at 137, available at

https:///www.sec.gov/Archives/edgar/data/1477333/000119312519222176/d735023ds1.html.

10.     Cloudflare's customers have also included political parties in the United States and other countries (including the web properties of many U.S. presidential candidates since 2015), dissident groups in autocratic countries, and many other sensitive or politically vulnerable groups.

11.     Earlier this year, Cloudflare launched Cloudflare for Campaigns, a suite of services tailored to assist campaigns in protecting, accelerating, and ensuring the reliability of their websites—with additional solutions designed to keep internal teams and data secure. Cloudflare provides these services for free to qualifying federal political candidates.  Information about this program is at https://www.cloudflare.com/campaigns/.

12.     Cloudflare established its Athenian Project to ensure that state and local government election-related websites have the highest level of protection and reliability for free, so that their constituents have access to election information and voter registration.

13.     Cloudflare also has operated Project Galileo, which protects at-risk public-interest and civil-society groups in the arts, human rights, civil society, journalism, or democracy by

providing them free enterprise-class protection and business-level performance services. Information about the project is available at https://www.cloudflare.com/galileo/.

14.     Recently, in response to the COVID-19 pandemic, Cloudflare has taken additional steps to help the Internet function during a time of increased usage, including as a result of remote working.  Among other things, Cloudflare has made available, for free, additional solutions to allow teams to work from remote locations securely and efficiently.  Information is available at https://blog.cloudflare.com/cloudflare-during-the-coronavirus-emergency/. Cloudflare also is working to provide for free a suite of services designed to help state and local government websites remain online.

15.     Cloudflare offers a variety of service plans.  Apart from custom-tailored "Enterprise" plans for large customers, Cloudflare offers the "Business" plan at $200 per month, the "Pro" plan at $20 per month, and the "Free" plan at no cost.

16.     Cloudflare has more than 2.5 million customers, and more than 2.4 million of those customers use Cloudflare's services for free.

17.     Cloudflare's offer of free services reflects its mission to help build a better Internet and its belief that one's ability to operate securely on the Internet should not depend on one's ability to pay.

18.     Cloudflare's free services also meaningfully contribute to the security, performance, and reliability of Cloudflare's network, thus benefiting the Internet as a whole.

19.     The inclusion of millions of free customers in Cloudflare's network allows Cloudflare to capture data about the operation, functionality, and performance of the Internet, in effect giving Cloudflare a vast sensory network.  Cloudflare's machine learning systems automatically aggregate all data across its network that it then uses to provide better solutions for

its customers.  For instance, hackers often test a new attack against smaller sites before they launch an attack on a major enterprise.  Cloudflare will often detect these attacks in their nascent stages and, like an immune system response, its machine learning algorithms learn to stop them before they can target others.  The breadth of Cloudflare's customer base gives it a unique perspective that it would not see if it served only the largest enterprises.

20.     Cloudflare's free services also assist Cloudflare's quality assurance efforts for the benefit of all customers.  Cloudflare's free customers regularly test new features that Cloudflare develops.  This gives Cloudflare a virtual quality assurance team and ensures that, by the time it rolls a feature out to its paying customers, it has rigorously tested the feature under real Internet conditions.

## II.     CLOUDFLARE'S TECHNICAL OPERATIONS

21.     Cloudflare's engineers around the world keep constant watch on the development of constantly-evolving cyberattacks and fight daily to protect the Internet and its users, including but not limited to Cloudflare's customers.  It is the Company's top priority.

22.     Cloudflare's engineers also fight daily to make the Internet more reliable by making it more efficient and more able to route around attacks and other damage.

23.     One significant risk that Cloudflare protects against is that of "distributed denial of service" (DDoS) attacks.  In these attacks, malicious actors flood Internet properties with requests that overwhelm the properties' capability to respond.  The effect of DDoS attacks is to knock Internet properties offline and make them unavailable to other Internet users.

24.     Another principal risk that Cloudflare protects against is that of viruses and worms, computer code that often infects computers and networks for malicious purposes.  They include code that disables computers and networks, or steals and exports private or secret data (sometimes by "scraping," or downloading and exporting massive amounts of, or even entire

4

contents, of a computer or network), or locks computers or networks to block their owners' access to data until the owners pay ransoms (this malicious code is called "ransomware").

25.     These types of malicious code are often disseminated by "bots," automated programs that install themselves in computers or networks to use them to launch attacks and deliver malicious code to other computers or networks.  When bots corrupt other networks, they create "botnets" to multiply their paths of attack across the Internet.

26.     Because bots take advantage of vulnerabilities of some computers or networks to attack and infect other computers or networks, protection of one computer or network helps protect other computers and networks.  This is one reason why Cloudflare provides free services to millions of Internet properties.

27.     Cloudflare protects against Internet attacks—including DDoS, virus or worm, and botnet attacks described above—by placing itself in the traffic flow both ways between a customer's Internet property and Internet users who seek to access the Internet property.  All traffic to a Cloudflare customer must go through Cloudflare's network so that Cloudflare can detect the traffic patterns and block traffic that is characteristic of an attack.

28.     To carry out that function, Cloudflare operates what is called a "content delivery network" with "points of presence" around the globe.

29.     When a user seeks an Internet property of a Cloudflare customer, that user's Internet service provider (ISP) sends the user's traffic to the Cloudflare network, and not that of Cloudflare's customer.  Cloudflare's automated systems inspect the traffic for signs of malicious activity and, if the systems do not detect malicious activity, the traffic automatically passes on to the customer.  When the customer's Internet property responds, that response passes automatically through Cloudflare's network back to the user.

30.     By this process, for example, when an Internet user wants to go to Baylor University's website and types "baylor.edu" into the browser address bar, the traffic goes to Cloudflare's network, from Cloudflare's network to Baylor University's network, from Baylor University's network back to Cloudflare's network, and then from Cloudflare's network back to the requesting user.

31.     To ensure that the traffic to and from the customer's website passes through Cloudflare's network, the customer associates with its domain name a Cloudflare network IP address instead of the IP address of its own network or hosting provider.

32.     When an Internet user's browser initiates a transmission to a Cloudflare customer's Internet property, the browser consults a "Domain Name System" (DNS) service to identify the IP address associated with the domain name.  A DNS service provides a massive directory that matches domain names with the IP addresses that the domain owners specify. Cloudflare provides a DNS service to help carry out this function.  It is one of the ten largest DNS providers, along with Microsoft (Azure), Google, Amazon, and Verisign.

33.     Thus, when an Internet user wants to visit Baylor University's website by typing "baylor.edu" into the browser address bar, (a) the browser consults a DNS service to find the IP address corresponding to that domain; (b) the browser transmits data to that IP address at Cloudflare; (c) Cloudflare's automated system inspects the traffic and, if it finds no technical evidence of a threat, passes the traffic to the Baylor's network or hosting provider; (d) Baylor's network or hosting provider responds to the user, sending data or information back to Cloudflare's network; and (e) the Cloudflare system, again detecting no technical evidence of a threat, relays Baylor's data or information to the browser user.  All this happens in a split-second.

34.     Cloudflare's transmission, relaying, and threat detection functions are fully automatic.  Cloudflare's automatic system does not discriminate in favor of or against transmission of material based upon any analysis of the content of the material that passes through its system.  It looks instead for certain technical "signatures" or traffic patterns of known threats.

35.     Because Cloudflare stands between Internet users and its customers' Internet properties, and because some Internet properties generate large amounts of traffic, Cloudflare makes the Internet more efficient and reduces burdens on its customers' networks by reducing the number of times Cloudflare must fetch the identical data from customers and relay it to users.

36.     For that purpose, Cloudflare's system may on occasion temporarily store data or information from its customers' websites on a particular point in Cloudflare's network (a "point of presence") if it receives numerous and frequent requests for the data or information through that point of presence.  Thus, instead of constantly relaying multiple requests for the same customer data from users through its network to a source website and back through the network to all the users, Cloudflare's system will temporarily store the data or information at the point of presence and deliver it immediately from that point to the user.  By shortcutting the transmission path, Cloudflare's system spares its customer the traffic burden and transmits the data from a point generally closer to the requesting user, shaving milliseconds off the round trip of the user's request.  This process is called "system caching."

37.     Whether Cloudflare's system "caches" material from its customers' Internet properties depends on many different factors.  They include (a) the number and frequency of requests for the same material from users through a particular point of presence, (b) the type of

data or files, (c) the duration of availability of the material on the customer's Internet property, and (d) settings that Cloudflare's user can control.  No caching occurs with audio and video files.

38.     Cloudflare's system frequently "refreshes" its cache, by comparing it to the customer's Internet property, to ensure that the cache matches what is on the Internet property. If the customer's Internet property has changed its data or information, Cloudflare's system automatically clears its "cache" of that data or information.

39.     Cloudflare's caching functions are fully automatic.  Cloudflare's system does not discriminate in favor or against caching based upon any analysis of the content of the material it caches, although it does not cache dynamic material (such as video or sound).

### III.    CLOUDFLARE'S POLICIES AND PRACTICES REGARDING ACCUSATIONS OF ABUSE OF CLOUDFLARE'S SYSTEM AND SERVICES BY ITS CUSTOMERS

40.     Cloudflare has established substantial policies and practices regarding accusations of abuse of Cloudflare's system or services by Cloudflare customers.

41.     Cloudflare's abuse complaint reporting system and team address approximately 100,000 accusations per month, requiring automated handling of that volume.

42.     To facilitate the reporting of complaints about misconduct by Cloudflare's customers, Cloudflare provides an online web form to allow persons to report accusations of various types of abuse.

43.     The types of accusations that the web form facilitates include those of copyright infringement, trademark infringement, child exploitation material, violent threats and harassment, and phishing and malware.

44.     While some categories of abuse accusations address cybersecurity issues (including phishing) that are within Cloudflare's expertise, other abuse accusations require

factual and legal determinations outside the core of Cloudflare's technical and business expertise. Cloudflare takes action in response to accusations of copyright infringement while ensuring that those reports reach the agencies, organizations, or other businesses (such as hosting providers) that are best positioned to address them.

45.     Cloudflare has built a robust and responsible system to support copyright holders that have accused Cloudflare customers of copyright infringement while also protecting customers against abuse of the accusation system.

46.     Cloudflare's policies and practices for addressing accusations of copyright infringement by its customers appropriately balance the interests of copyright holders and of Cloudflare customers.

47.     Cloudflare's services are very different from those of other types of Internet services that have attracted attention in relation to copyright infringement controversies.

48.     Cloudflare does not provide "on-ramp" Internet Service Provider (ISP) type Internet access for anyone.

49.     Cloudflare's customers are not individual users but website operators, which often have their own policies in place to address user-generated copyright infringing content.

50.     Cloudflare does not provide ISP-type Internet access for any of its customers.

51.     Cloudflare does not provide ISP-type Internet access for the defendants whom the plaintiffs refer to as "Does 1-200" (and to whom Cloudflare will refer to by that phrase below).

52.     Cloudflare's services do not assist its customers, including Does 1-200, in gaining access to the Internet.

53.     Cloudflare's services are not necessary for its customers, including Does 1-200, to gain access to the Internet.

54.     Cloudflare is not, and has not been, a website hosting provider for any of Does 1-200.

55.     Except for a few discrete Cloudflare services that are not and have never been used by Does 1-200, Cloudflare does not host, or store, the websites of any customers,

56.     Cloudflare does not host, or store, the websites of Does 1-200.

57.     Cloudflare's services are not necessary for its customers, including Does 1-200, to put their websites on the World Wide Web or Internet.

58.     Cloudflare cannot remove any content from its customers' websites.

59.     Cloudflare cannot control or affect the presence of any content on its customers' websites.

60.     Cloudflare cannot control what content its customers or their hosting providers maintain on the customers' websites.

61.     Cloudflare does not operate a web search engine.

62.     Cloudflare's services do not allow any person to search the web for content, including images.

63.     Cloudflare's services cannot control or affect what content of its customers appears in search engines.

64.     Cloudflare's services do not review, rank, suggest, or promote any content of its customers' websites.

65.     For the overwhelming majority of Cloudflare services, including all services used by Does 1-200, Cloudflare cannot remove any customer's content from the Internet, the World Wide Web, or search engines.

66.     Cloudflare's services do not make websites searchable on search engines.

67.     Cloudflare's services are not necessary for its customers, including Does 1-200, to make their websites searchable on search engines.

68.     Cloudflare works regularly with law enforcement officials to address illegal conduct on the Internet.

69.     Cloudflare obeys court orders and responds to valid subpoenas to assist complainants, including copyright holders.

70.     Cloudflare has adopted a policy for terminating, in appropriate circumstances, subscribers or account holders who are repeat infringers.

71.     Cloudflare has given notice of its policy for terminating services, in appropriate circumstances, to subscribers or account holders who are repeat infringers.

72.     Cloudflare has reasonably implemented its policy for terminating services, in appropriate circumstances, to subscribers or account holders who are repeat infringers.

73.     Cloudflare has terminated services to subscribers or account holders under its policy of terminating services, in appropriate circumstances, to subscribers or account holders who are repeat infringers.

74.     For Cloudflare, the determination of appropriate circumstances for termination of services to subscribers and account holders takes into account the nature of the services, namely cybersecurity and related services, that Cloudflare provides.

75.     For Cloudflare, the determination of appropriate circumstances for termination of services to subscribers and account holders takes into account the existence of "social engineering attacks" to defeat cybersecurity protection and related services for websites.

76.     For Cloudflare, the determination of appropriate circumstances for termination of services to subscribers and account holders takes into account the existence of incorrect,

bad-faith, and fraudulent notifications of claimed infringement, as discussed in published legal opinions and academic studies discussing notifications of claimed infringement and their use.

77.     For Cloudflare, implementation of its repeat infringer termination policy takes into account whether notifications of claimed infringement accusing its customers have met the requirements appropriate for notifications to Cloudflare.

78.     For Cloudflare, implementation of its repeat infringer termination policy takes into account whether an objective, neutral decision maker has made an authoritative determination as to whether a Cloudflare customer is a repeat copyright infringer.

79.     For Cloudflare, implementation of its repeat infringer termination policy takes into account the fact that websites using its services may have user-generated content, and that such website operators are not "repeat infringers" if they have reasonably implemented a policy to address accusations of infringements by their users.

80.     For Cloudflare, implementation of its repeat infringer termination policy takes into account that websites may contain voluminous amounts of content and therefore may reasonably be expected to be the target of more abuse reports than individual users would be.

81.     Cloudflare would respond expeditiously to all valid notifications of claimed infringement under section 512(b) of the Digital Millennium Copyright Act.

82.     Cloudflare furnishes copyright holders and their agents a web form-based means of reporting accusations of claimed infringement for transmission to hosting providers and Cloudflare's customers, at the accuser's option.

83.     When Cloudflare receives non-web form notifications of claimed infringement under the Digital Millennium Copyright Act that are appropriate for a hosting provider (under

section 512(c)) but not for it, Cloudflare will respond by directing the accuser to use Cloudflare's web form for reporting abuse.

## IV. COMMUNICATIONS BETWEEN PLAINTIFFS' AGENT AND CLOUDFLARE

84.     Plaintiffs relied upon a company called XML Shop, LLC dba Counterfeit Technology ("Counterfeit Technology") to send copyright-related communications on their behalf to Cloudflare.

85.     Counterfeit Technology communicated to Cloudflare through its representative Armen Petrossian.

86.     Plaintiffs, through their agent Counterfeit Technology, sent to Cloudflare communications referring to the Digital Millennium Copyright Act and claiming to be notifications of claimed infringement under that Act.

87.     The Digital Millennium Copyright Act, 17 U.S.C. § 512, provides four safe harbors for four different types of online services.

88.     Those safe harbors preclude liability for damages, or broad injunctions, for copyright infringement by service providers who qualify for the safe harbors.

89.     The safe harbors under the Digital Millennium Copyright Act, 17 U.S.C. § 512, are optional for online service providers.  They do not affect the determination of whether an online service provider has committed direct, contributory, or vicarious copyright infringement.

90.     Where an online service provider has not engaged in direct infringement, contributory infringement, or vicarious infringement of copyright, the limitation on remedies under the safe harbor becomes irrelevant because damages in a copyright lawsuit are relevant only where a violation of copyright law by the defendant has occurred.

91.     The different types of safe harbor for different types of online services reflect and accommodate the different technical characteristics of different types of service.

92.     Each of the four safe harbors under 17 U.S.C. § 512, in subsections (a), (b), (c), and (d), has a different set of conditions for the optional safe harbor.

93.     Each of the four safe harbors under 17 U.S.C. § 512, in subsections (a), (b), (c), and (d), stands in a different position from the others with respect to notifications of claimed infringement.

94.     Section 512(a) of the Digital Millennium Copyright Act, 17 U.S.C. § 512(a), makes no provision for notifications of claimed infringement to service providers under that subsection.

95.     Section 512(b)(2)(E) of the Digital Millennium Copyright Act, 17 U.S.C. § 512(b)(2)(E), incorporates all the requirements for a valid notification of claimed infringement by a copyright owner or agent under section 512(c)(3) (as set forth below) *and* adds a requirement that a notification must include a statement confirming that the material claimed to be infringing has been removed from the originating site or access to it has been disabled or that a court has ordered that the material be removed from the originating site or that access to the material on the originating site be disabled.

96.     Section 512(c)(3) of the Digital Millennium Copyright Act, 17 U.S.C. § 512(c)(3), provides the following requirements for a notification of claimed infringement to service providers that fall within that category of service provider:

(A)     To be effective under this subsection, a notification of claimed infringement must be a written communication provided to the designated agent of a service provider that includes substantially the following:

(i)     A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

(ii)     Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.

(iii)     Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.

(iv)     Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.

(v)     A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

(vi)     A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

97.     Cloudflare believes, and therefore alleges, that Counterfeit Technology, at all times before the filing of these Counterclaims and Answer, was ignorant of the nature of Cloudflare's technology and services.

98.     Cloudflare believes, and therefore alleges, that Counterfeit Technology, at all times before the filing of these Counterclaims and Answer, was ignorant of the requirements of section 512(b)(2)(E) of the Digital Millennium Copyright Act for valid notifications of claimed infringement.

99.     Cloudflare believes, and therefore alleges, that Counterfeit Technology, at all times before the filing of these Counterclaims and Answer, was ignorant of the requirements of section 512(c)(3) of the Digital Millennium Copyright Act for notifications of claimed infringement.

100.    Cloudflare believes, and therefore alleges, that by the time of these Counterclaims and Answer Plaintiff Allure Bridals had never sent Cloudflare, directly or through an agent, a valid notification of claimed infringement under section 512(b) of the Digital Millennium Copyright Act.

101.    Cloudflare believes, and therefore alleges, that by the time of these Counterclaims and Answer Plaintiff Allure Bridals had never sent Cloudflare, directly or through an agent, a communication that referred to section 512(b) of the Digital Millennium Copyright Act.

102.    Cloudflare believes, and therefore alleges, that by the time of these Counterclaims and Answer Plaintiff Justin Alexander had never sent Cloudflare, directly or through an agent, a valid notification of claimed infringement under section 512(b) of the Digital Millennium Copyright Act.

103.    Cloudflare believes, and therefore alleges, that by the time of these Counterclaims and Answer Plaintiff Justin Alexander had never sent Cloudflare, directly or through an agent, a communication that referred to section 512(b) of the Digital Millennium Copyright Act.

104.    Plaintiff Allure Bridals claims to have sent Cloudflare notifications of claimed infringement under section 512(c) of the Digital Millennium Copyright Act.

105.    Cloudflare believes, and therefore alleges, that by the time of these Counterclaims and Answer Plaintiff Allure Bridals had not sent Cloudflare any notifications of claimed copyright infringement that contained all necessary elements of a valid notification under section 512(c).

106.    Plaintiff Justin Alexander claims to have sent Cloudflare notifications of claimed infringement under section 512(c) of the Digital Millennium Copyright Act.

107.    Cloudflare believes, and therefore alleges, that by the time of these Counterclaims and Answer Plaintiff Justin Alexander had not sent Cloudflare any notifications of claimed copyright infringement that contained all necessary elements of a valid notification under section 512(c).

108.    Exhibits A through H to these Counterclaims and Answer are examples of communications that Plaintiffs' agent sent to Cloudflare.

109.    Exhibits A through H are typical of communications that Plaintiffs claim their agent emailed to Cloudflare by the time of these Counterclaims and Answer, which Plaintiffs consider to be notifications of claimed infringement under section 512(c) of the Digital Millennium Copyright Act.

110.    Exhibits E through H, ostensibly communications on behalf of Plaintiff Justin Alexander, Inc., do not show its correct name as the claimed owner of the copyrights asserted in the exhibits.

111.    Exhibits A through H to these Counterclaims all omit the complete statement required by section 512(c)(3)(v) of the Digital Millennium Copyright Act for a valid notification of claimed infringement, namely that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

112.    Exhibits A through H all direct their statements "to the infringing domain," and "To Whom it May Concern," not specifically to Cloudflare.

113.    Exhibits A through H all refer to "a website your company hosts."

114.    Exhibit I is a Cloudflare webpage explaining its web form for submitting accusations of abuse by Cloudflare customers.

115.    Cloudflare believes, and therefore alleges, that Plaintiffs through their agent were aware of the information on that webpage.

116.    Exhibit J is Cloudflare's web form for submitting accusations of copyright infringement by Cloudflare customers.

117.    Cloudflare believes, and therefore alleges, that Plaintiffs through their agent were aware of the information on that web form.

118.    Exhibits K and L are examples of the data that Plaintiffs' agent, on their behalf, submitted to Cloudflare by the Cloudflare web form for copyright accusations.

119.    When Cloudflare received from Plaintiffs or their agent accusations of copyright infringement by its customers through its web form interface, Cloudflare responded by providing

the name and contact information of the hosting provider of the customers who were the subject of the accusations.

120.    When Cloudflare received from Plaintiffs or their agent accusations of copyright infringement by its customers through its web form interface, Cloudflare forwarded the accusations to its customers and/or their hosting providers, as the accusers directed.

121.    When Cloudflare received from Plaintiffs or their agent non-web form accusations of copyright infringement by its customers that did not comply with the requirements of section 512(b) of the Digital Millennium Copyright Act, Cloudflare responded by urging the Plaintiffs or their agent to use the web form to facilitate transmission of the accusation to their customers or their hosting providers, as the accusers may direct.

122.    Cloudflare has reason to believe that hosting providers of its customers generally act on valid notifications of claimed infringement that they receive.

## V.     THE PLAINTIFFS' BUSINESS

123.    Plaintiffs claim to sell wedding dresses.

124.    Cloudflare believes, and therefore alleges, that Plaintiffs are members of American Bridal & Prom Industry Association.

125.    Cloudflare believes, and therefore alleges, that Plaintiffs have their wedding dresses manufactured outside the United States.

126.    Cloudflare believes, and therefore alleges, that Plaintiffs have wedding dresses manufactured in China.

127.    Cloudflare believes, and therefore alleges, that Plaintiffs import wedding dresses from China.

128.    Cloudflare believes, and therefore alleges, that Plaintiffs do not sell wedding dresses online.

129.     Cloudflare believes, and therefore alleges, that Plaintiffs sell their wedding dresses only through authorized retailers.

130.     Cloudflare believes, and therefore alleges, that Plaintiffs do not authorize any online sales of their wedding dresses.

131.     Cloudflare believes, and therefore alleges, that Plaintiffs forbid any online sales of their wedding dresses.

132.     Cloudflare believes, and therefore alleges, that Plaintiffs consider their wedding dresses to be elite, premium products and sell them, or encourage their sale, at prices to match that status.

133.     Cloudflare believes, and therefore alleges, that Plaintiffs believe that their customers are sophisticated and discerning consumers.

134.     Cloudflare believes, and therefore alleges, that Plaintiffs market and promote their wedding dresses, among other ways, through their websites.

135.     Cloudflare believes, and therefore alleges, that Plaintiffs have displayed their catalogues of their wedding dresses on their websites.

136.     Cloudflare believes, and therefore alleges, that Plaintiffs believe that their websites, and the catalogues of photographs of their wedding dresses, drive retail sales of their wedding dresses.

137.     Cloudflare believes, and therefore alleges, that Plaintiffs have placed on their websites all the images that they claim in this lawsuit to have been infringed.

138.     Cloudflare believes, and therefore alleges, that Plaintiff Allure Bridals placed all its images at issue in this lawsuit on one or both of its two websites, at Madison-James.com and Allurebridals.com.

139.     Cloudflare believes, and therefore alleges, that Plaintiff Justin Alexander placed all its images at issue in this lawsuit on its website at justinalexander.com.

140.     Cloudflare believes, and therefore alleges, that Plaintiffs' websites steer potential buyers to physical retail stores or boutiques where the customers may order or purchase their wedding dresses.

141.     Cloudflare believes, and therefore alleges, that all authorized sales of the Plaintiffs' wedding dresses occur at or through retailers or boutiques with physical stores.

142.     Cloudflare believes, and therefore alleges, that at least hours, and perhaps days or weeks, generally pass between a customer's first interaction with the Plaintiffs' websites and the consummation of a purchase from one of the Plaintiffs' retailers or boutiques.

143.     Cloudflare believes, and therefore alleges, that Plaintiffs believe that personnel at their retailers or boutiques close the sales of the Plaintiffs' wedding dresses to consumers.

144.     The Plaintiffs have never communicated directly with Cloudflare regarding accusations of copyright infringement by Cloudflare's customers.

145.     The Plaintiffs have relied entirely upon one or more agents to communicate with Cloudflare regarding accusations of copyright infringement by Cloudflare's customers.

146.     Cloudflare believes, and therefore alleges, that Plaintiff Allure Bridals was once a customer of Cloudflare, obtaining services under both the paid "Pro" plan and the "Free plan," but later ended its customer relationship with Cloudflare.

## VI.     THE DOE DEFENDANTS

147.     Plaintiffs allege that the Does 1-200 are counterfeiters of their dresses.

148.     Plaintiffs allege that the Does 1-200 are in China and other countries.

149.     Plaintiffs' Complaint refers to default judgments against direct infringers.

150.    Plaintiffs' Complaint refers to complaints or accusations that they or their agents have sent to direct infringers.

151.    Plaintiffs allege that they lack a meaningful remedy against Does 1-200.

152.    Cloudflare believes, and therefore alleges, that Plaintiffs have not tried to obtain meaningful remedies against Does 1-200 before filing this lawsuit.

153.    Cloudflare believes, and therefore alleges, that Plaintiffs have filed no other suits in the United States against Does 1-200.

154.    Cloudflare believes, and therefore alleges, that Plaintiffs have filed other lawsuits in the United States against other alleged direct infringers.

155.    Cloudflare believes, and therefore alleges, that by the time of these Counterclaims and Answer Plaintiffs had not asked United States Customs to interdict shipments of wedding dresses by Does 1-200.

156.    Cloudflare believes, and therefore alleges, that by the time of these Counterclaims and Answer Plaintiffs had sent no notifications of claimed infringement regarding Does 1-200 to Google with respect to its search engine.

157.    Cloudflare believes, and therefore alleges, that by the time of these Counterclaims and Answer Plaintiffs had sent no notifications of claimed infringement regarding Does 1-200 to Microsoft with respect to its Bing search engine.

158.    Cloudflare believes, and therefore alleges, that by the time of these Counterclaims and Answer Plaintiffs had sent no notifications of claimed infringement or other accusations regarding Does 1-200 to MasterCard or Visa with respect to their payment processing for Does 1-200.

159.    Cloudflare believes, and therefore alleges, that by the time of these Counterclaims and Answer Plaintiffs had sent no notifications of claimed infringement or other accusations regarding Does 1-200 to other payment processors with respect to their payment processing for Does 1-200.

160.    Cloudflare believes, and therefore alleges, that by the time of these Counterclaims and Answer Plaintiffs had sent no notifications of claimed infringement or other accusations regarding Does 1-200 to FedEx, UPS, DHL, or other transport companies with respect to their transport of products for Does 1-200.

161.    Cloudflare believes, and therefore alleges, that by the time of these Counterclaims and Answer Plaintiffs had sent no notifications of claimed infringement or other accusations regarding Does 1-200 to their own manufacturers of wedding dresses.

162.    Cloudflare believes, and therefore alleges, that by the time of these Counterclaims and Answer Plaintiffs had sent no notifications of claimed infringement regarding Does 1-200 to hosting providers whom Cloudflare identified in response to communications by Plaintiffs or their agent.

163.    By the time of these Counterclaims and Answer Plaintiffs had served no subpoenas on Cloudflare for documents or information regarding Does 1-200.

164.    Cloudflare believes, and therefore alleges, that Plaintiffs have no evidence regarding storage of claimed infringing images on hard drives of US consumers.

165.    Plaintiffs have not alleged that any U.S. consumers possess the allegedly infringing images on their hard drives.

166.    Cloudflare believes, and therefore alleges, that Plaintiffs have not pursued any remedies against US consumers with allegedly infringing images on their hard drives.

167.    Cloudflare believes, and therefore alleges, that Cloudflare replied to every communication to it from Plaintiffs or their agent.

168.    Cloudflare forwarded information that Plaintiffs or their agent submitted through Cloudflare's web form for abuse complaints to Cloudflare's customers or their hosting providers, according to direction of Plaintiffs or their agents.

169.    By the time of these Counterclaims and Answer Plaintiffs or their agent had never submitted to Cloudflare any information regarding caches by Cloudflare of material from the websites of Does 1-200 that was claimed to infringe upon Plaintiffs' works.

### VII.    NO HARMS TO PLAINTIFFS FROM CLOUDFLARE'S SERVICES

170.    Plaintiffs seek statutory damages.

171.    Plaintiffs have no evidence of actual damages they have suffered for which Cloudflare is responsible.

172.    Plaintiffs do not sell copies of their photographs.

173.    By the time of these Counterclaims and Answer Plaintiffs had not licensed their photographs in return for licensing revenue.

174.    By the time of these Counterclaims and Answer Plaintiffs had not exploited their photographs other than to advertise or promote the retail sales of their wedding dresses.

175.    Plaintiffs have no evidence of sales they lost because of the alleged direct infringements by Does 1-200.

176.    Plaintiffs have no evidence of U.S. consumers buying counterfeits of their dresses who would have bought Plaintiffs' dresses but for the alleged direct infringements by Does 1-200.

177.    Plaintiffs have no evidence of U.S. consumers buying counterfeits of their dresses who would have bought Plaintiffs' dresses but for Cloudflare's services to the alleged direct infringements by Does 1-200.

178.    None of Does 1-200 had "Enterprise" or "Business" accounts with Cloudflare.

179.    Most of the Does 1-200 had free accounts with Cloudflare, from which Cloudflare derived no revenue.

180.    None of the allegedly infringing websites cited in Plaintiffs' Complaint paid more than $750 in total for Cloudflare's services, and the payments for Cloudflare's services from all the Does 1-200 together totaled less than $5,000.

## VIII.   DECLARATORY JUDGMENT JURISDICTION

181.    This lawsuit involves a dispute between the Plaintiffs and Cloudflare under the Copyright Act.  There is a real and continuing controversy among the parties, as the lawsuit evidences.  But Plaintiffs artfully omitted from their Complaint their defective alleged notifications of claimed infringement to which they have referred, and there are also matters beyond the face of the Complaint that justify judgment for Cloudflare.  For that reason, Cloudflare brings these counterclaims for declaratory relief both to clarify matters in the pleadings and to declare the parties' respective rights, obligations, immunities, and privileges.

182.    This Court has jurisdiction over the counterclaims pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (original jurisdiction of federal copyright claims), and 28 U.S.C. § 2201 (the Declaratory Judgment Act).

183.    The Court has personal jurisdiction over Plaintiffs because, among other things, they have purposefully availed themselves of the privilege of conducting their litigation business against Cloudflare in this district.

184.    Venue in this district is proper for these counterclaims against Plaintiffs under 28 U.S.C. §§ 1391(b)(1), 1391(b)(2), and 1391(c)(2).

## IX.    FIRST CAUSE OF ACTION:

## DECLARATION OF NON-INFRINGEMENT BY CLOUDFLARE

185.    Cloudflare hereby incorporates the earlier paragraphs of its counterclaims by reference.

186.    Plaintiffs do not assert or claim that Cloudflare has engaged in any direct infringement of the Plaintiffs' works.

187.    Plaintiffs do not assert or claim that Cloudflare has intentionally induced infringement of the Plaintiffs' works.

188.    Cloudflare's services are capable of substantial non-infringing uses.

189.    Cloudflare does nothing to induce or encourage infringement of Plaintiffs' works.

190.    Cloudflare has made no clear expression or taken other affirmative steps to foster infringement of Plaintiffs' works.

191.    Insisting on valid notifications of claimed infringement neither evidences nor constitutes intentional inducement of copyright infringement.

192.    Plaintiffs have made accusations of infringement against some Cloudflare customers.

193.    By the time of these Counterclaims and Answer Plaintiffs had not provided Cloudflare with any court decisions finding infringement by Cloudflare customers.

194.    By the time of these Counterclaims and Answer Plaintiffs had not sought or obtained any injunctions against Does 1-200.

195.    By the time of these Counterclaims and Answer Plaintiffs had not provided Cloudflare with any objective, neutral determinations finding infringement by any Cloudflare customers.

196.    By the time of these Counterclaims and Answer Plaintiffs had not provided Cloudflare with conclusive proof of infringement by any of Cloudflare's customers.

197.    A conclusive determination of infringement requires knowledge of, and assessment of, multiple facts.

198.    A conclusive determination of direct infringement requires knowledge by a factfinder of, and assessment of, among other things who the claimed owner of the copyright is; whether the claimed owner was the author or a successor in interest to the author of the work; whether the work is an original work of authorship; whether the work is copyrightable subject matter; who the alleged infringer is; whether the alleged infringer has a relationship with the claimed copyright owner, a predecessor of the owner, or an agent of the claimed owner, and in particular whether there has been a license or other consent; and whether the use of the work is a fair use.

199.    A conclusive determination of contributory or vicarious infringement by a website, such as Cloudflare's customers, turns in part upon an assessment of any direct infringement that is alleged to underlie the contributory or vicarious infringement and then an assessment of facts bearing upon potential contributory or vicarious infringement.

200.    A conclusive determination of whether a Cloudflare customer is entitled to one or more of the optional safe harbors under the Digital Millennium Copyright Act depends upon still more facts, including the satisfaction of various conditions.

201. Plaintiffs have not, by the time of these Counterclaims and Answer, served any of Cloudflare's customers with process in this lawsuit.

202. Plaintiffs have not, by the time of these Counterclaims and Answer, noticed the default of any of Cloudflare's customers in this lawsuit.

203. Plaintiffs have not, by the time of these Counterclaims and Answer, obtained a default judgment against any of Cloudflare's customers in this lawsuit.

204. The filing of the Complaint in this action did not prove infringement by Does 1-200.

205. Plaintiffs have yet to prove infringement by Does 1-200 as a matter of law.

206. Cloudflare has no direct actual knowledge of infringements of Plaintiffs' works by Does 1-200.

207. Cloudflare has no actual knowledge of infringements of Plaintiffs' works by Does 1-200 based upon the accusations by Plaintiffs.

208. Plaintiffs do not allege or claim that, but for Cloudflare's services, the infringements by Does 1-200 would have been immaterial.

209. Cloudflare believes, and therefore alleges, that Plaintiffs believe the infringements by Does 1-200 would be material infringements of their works even without Cloudflare's services.

210. Any speed difference Cloudflare makes to the loading of a website, web page, or image is significantly smaller than the speed difference between an online payment system and an offline payment system such as use of a check or money order.

211. Any speed difference Cloudflare makes to the loading of a website, web page, or image is significantly smaller than the speed difference between getting an Internet search result

28

and making an online purchase on the one hand and getting a search result and making an in-store purchase from a bridal retailer or boutique on the other hand.

212.    Cloudflare does not cause any infringements of Plaintiffs' works by Does 1-200.

213.    Any infringement of Plaintiffs' works by Does 1-200 would not end in the absence of Cloudflare's services.

214.    Cloudflare's services do not make it easier to find any alleged infringements of Plaintiffs' works by Does 1-200.

215.    There are no simple measures available to Cloudflare to prevent further damage to Plaintiffs' works by Does 1-200.

216.    Cloudflare has not failed to take any simple measures available to it to prevent further damage to Plaintiffs' works by Does 1-200.

217.    Cloudflare does not aid and abet any infringements of Plaintiffs' works by Does 1-200.

218.    For these reasons Cloudflare asks for a declaration that it has not infringed upon any of the Plaintiffs' copyright rights.

### X.    SECOND CAUSE OF ACTION:

### DECLARATION OF NO PROOF OF DIRECT INFRINGEMENT BY DOES 1-200 BY THE TIME OF THE COMPLAINT

219.    Cloudflare hereby incorporates the earlier paragraphs of its counterclaims by reference.

220.    In their Complaint, the Plaintiffs have not proved the infringements they alleged against Does 1-200.

221.    The purpose of this lawsuit, and of trial or other proceedings, is for Plaintiffs to prove the infringements they have alleged.

222.    The mere filing of their Complaint in this case did not constitute proof of infringement of the Plaintiffs' works by any defendant.

223.    Plaintiffs never provided Cloudflare with any adjudication or other decision by an objective third party of any infringements of their works by Does 1-200 before the filing of the Complaint.

224.    For these reasons, Cloudflare asks the Court for a declaration that, at the time of the Complaint, Plaintiffs had provided Cloudflare no proof of actual direct infringements of their rights by Does 1-200.

## XI.    THIRD CAUSE OF ACTION:

### DECLARATION OF NO VALID NOTIFICATIONS OF CLAIMED INFRINGEMENT BY PLAINTIFFS UNDER 17 U.S.C. § 512(b)(2)(E).

225.    Cloudflare hereby incorporates the earlier paragraphs of its counterclaims by reference.

226.    Plaintiffs never provided Cloudflare with notifications of claimed infringement satisfying all the requirements of 17 U.S.C. § 512(b)(2)(E).

227.    For these reasons, Cloudflare asks for a declaration that Plaintiffs provided Cloudflare with no valid notifications of claimed infringement of their works by Does 1-200 in accordance with 17 U.S.C.§ 512(b)(2)(E).

## XII.    FOURTH CAUSE OF ACTION:

### DECLARATION OF CLOUDFLARE'S ENTITLEMENT TO SAFE HARBOR UNDER SECTION 512(a) OF THE DIGITAL MILLENNIUM COPYRIGHT ACT

228.    Cloudflare hereby incorporates the earlier paragraphs of its counterclaims by reference.

229.    Cloudflare offers the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received.

230.    Cloudflare is thus a "service provider" within the meaning of 17 U.S.C. §§ 512(a) and 512(k)(1)(A).

231.    Plaintiffs seek to impose liability on Cloudflare for transmitting, routing, or providing connections for, material through a system or network controlled or operated by or for it, or by reason of the intermediate and transient storage of that material in the course of such transmitting, routing, or providing connections.

232.    Cloudflare's transmissions of the material from Does 1-200 were initiated by or at the direction of a person other than the Cloudflare.

233.    Plaintiffs have no evidence that Cloudflare's transmissions of the material from Does 1-200 were not initiated by or at the direction of a person other than the Cloudflare.

234.    Cloudflare's transmission, routing, provision of connections, or storage is carried out through an automatic technical process without selection of the material by Cloudflare.

235.    Plaintiffs have no evidence that Cloudflare's transmission, routing, provision of connections, or storage is not carried out through an automatic technical process without selection of the material by Cloudflare.

236.    Cloudflare does not select the recipients of the material except as an automatic response to the request of another person.

237.    Plaintiffs have no evidence that Cloudflare selects the recipients of the material except as an automatic response to the request of another person.

238.    No copy of the material made by Cloudflare's system or network in the course of such intermediate or transient storage is maintained on the system or network in a manner ordinarily accessible to anyone other than anticipated recipients, and no such copy is maintained on the system or network in a manner ordinarily accessible to such anticipated recipients for a longer period than is reasonably necessary for the transmission, routing, or provision of connections.

239.    Plaintiff has no evidence that any copy of the material made by Cloudflare's system or network in the course of intermediate or transient storage is maintained on the system or network in a manner ordinarily accessible to anyone other than anticipated recipients, or that any such copy is maintained on the system or network in a manner ordinarily accessible to such anticipated recipients for a longer period than is reasonably necessary for the transmission, routing, or provision of connections.

240.    The material from Does 1-200 is transmitted through Cloudflare's system or network without modification of its content.

241.    Plaintiffs have no evidence that material from Does 1-200 is transmitted through Cloudflare's system or network with modification of its content.

242.    Cloudflare has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers.

243.    Plaintiffs have no evidence that Cloudflare has not adopted and reasonably implemented, or does not inform subscribers and account holders of Cloudflare's system or

network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers.

244.   Cloudflare accommodates and does not interfere with technical measures that are used by copyright owners to identify or protect copyrighted works and (A) have been developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry standards process; (B) are available to any person on reasonable and nondiscriminatory terms; and (C) do not impose substantial costs on service providers or substantial burdens on their systems or networks.

245.   Plaintiffs have no evidence that Cloudflare does not accommodate, or interferes with, technical measures that are used by copyright owners to identify or protect copyrighted works and (A) have been developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry standards process; (B) are available to any person on reasonable and nondiscriminatory terms; and (C) do not impose substantial costs on service providers or substantial burdens on their systems or networks.

246.   For these reasons, Cloudflare is entitled to a declaration that it satisfies the safe harbor under 17 U.S.C. §512(a).

### XIII.   FIFTH CAUSE OF ACTION:

### DECLARATION OF CLOUDFLARE'S ENTITLEMENT TO SAFE HARBOR UNDER SECTION 512(b) OF THE DIGITAL MILLENNIUM COPYRIGHT ACT

247.   Cloudflare hereby incorporates the earlier paragraphs of its counterclaims by reference.

248.   Cloudflare offers intermediate and temporary storage of material on a system or network controlled or operated by or for it.

249.    Cloudflare is thus a "service provider" within the meaning of 17 U.S.C. §§ 512(b) and 512(k)(1)(B).

250.    Plaintiffs seek to impose liability on Cloudflare for the intermediate and temporary storage of material from Does 1-200 on a system or network controlled or operated by or for Cloudflare.

251.    The material is made available online by persons other than Cloudflare.

252.    Plaintiffs have no evidence to the contrary of paragraph 251.

253.    The material is transmitted from Does 1-200 through Cloudflare's system or network to persons other than Does 1-200 at the direction of those persons other than Does 1-200.

254.    Plaintiffs have no evidence to the contrary of paragraph 253.

255.    The storage is carried out through an automatic technical process for the purpose of making the material available to users of the system or network who, after the material is transmitted as described above, request access to the material from Does 1-200.

256.    Plaintiffs have no evidence to the contrary of paragraph 255.

257.    The material from Does 1-200 is transmitted to the subsequent users without modification to its content from the manner in which the material was transmitted from Does 1-200.

258.    Plaintiffs have no evidence to the contrary of paragraph 257.

259.    Cloudflare complies with rules concerning the refreshing, reloading, or other updating of the material when specified by Does 1-200 in accordance with a generally accepted industry standard data communications protocol for the system or network through which

Does 1-200 make the material available, unless Does 1-200 used the rules to prevent or

unreasonably impair Cloudflare's intermediate storage.

260.    Plaintiffs have no evidence to the contrary of paragraph 259.

261.    Cloudflare does not interfere with the ability of technology associated with the

material to return to Does 1-200 the information that would have been available to Does 1-200 if

the material had been obtained by the subsequent users directly from Does 1-200 so long as the

technology does not significantly interfere with the performance of the provider's system or

network or with the intermediate storage of the material; is consistent with generally accepted

industry standard communications protocols; and does not extract information from the

Cloudflare's system or network other than the information that would have been available to

Does 1-200 if the subsequent users had gained access to the material directly from Does 1-200.

262.    If Does 1-200 have in effect a condition that a person must meet prior to having

access to the material, such as a condition based on payment of a fee or provision of a password

or other information, Cloudflare permits access to the stored material in significant part only to

users of its system or network that have met those conditions and only in accordance with those

conditions.

263.    Plaintiffs have no evidence to the contrary of paragraph 262.

264.    If Does 1-200 make material available online without the authorization of

copyright owners of the material, Cloudflare responds expeditiously to remove, or disable access

to, the cached material that is claimed to be infringing upon receiving a notification of claimed

infringement as described in 17 U.S.C. § 512(c)(3) if (i) the material has previously been

removed from the originating site or access to it has been disabled, or a court has ordered that the

material be removed from the originating site or that access to the material on the originating site

be disabled; and (ii) the party giving the notification includes in the notification a statement confirming that the material has been removed from the originating site or access to it has been disabled or that a court has ordered that the material be removed from the originating site or that access to the material on the originating site be disabled.

265.    Plaintiffs have no evidence to the contrary of paragraph 264.

266.    For these reasons, Cloudflare is entitled to a declaration that it satisfies the safe harbor under 17 U.S.C. §512(b).

<b>PRAYER FOR RELIEF</b>

Cloudflare asks that this Court declare the rights and privileges of Cloudflare as Cloudflare has set forth above in its first through fifth causes of action; that the Court enter judgment in its favor and against Plaintiffs accordingly; that the Court award Cloudflare its attorneys' fees and full costs against both Plaintiffs jointly and severally pursuant to the Copyright Act, 17 U.S.C. §§ 505, and court rule; and that the Court grant all other relief as it deems proper.

<b><u>ANSWER TO COMPLAINT</u></b>

Cloudflare responds to all numbered paragraphs of the Complaint.  Cloudflare does not respond to the table of contents, headings, and subheadings of the Complaint as they are an outline of the Complaint that requires no response.  Cloudflare does not need to respond to paragraphs 117-126 of the Complaint because they are not directed to it, but it responds to them in an abundance of caution.

1.    Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 1.

2.    Cloudflare admits the allegations of paragraph 2.

36

3.      Cloudflare denies the first sentence of paragraph 3.  Cloudflare lacks knowledge to admit or deny whether the defendants whom Plaintiffs accuse of being "Infringing website Defendants" operate infringing websites and therefore denies the allegation implicit in the use of that phrase.  Cloudflare lacks knowledge to admit or deny the remaining allegations of paragraph 3 and therefore denies them.

4.      Cloudflare lacks knowledge to admit or deny whether the defendants whom Plaintiffs accuse of being "Infringing Website Defendants" operate infringing websites and therefore denies the allegation implicit in the use of that phrase.  Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 4.

5.      Cloudflare lacks knowledge to admit or deny whether the websites that Plaintiffs refer to as "Infringing Websites" are indeed infringing and therefore denies the allegation implicit in the use of that phrase.  Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 5.

6.      Cloudflare denies the allegations of paragraph 6.

7.      Cloudflare denies the first and third sentences of paragraph 7 of the Complaint.  Cloudflare further denies any "campaign of infringement" on its part, to the extent the second sentence implies Cloudflare is responsible for such a campaign.  Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 7.

8.      Cloudflare denies the first two sentences of paragraph 8.  Cloudflare lacks knowledge to admit or deny whether the websites that Plaintiffs refer to as "Infringing Websites" are indeed infringing and therefore denies the allegation implicit in the use of that phrase.  Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 8.

9.      Cloudflare denies the allegations of paragraph 9.

10.      Cloudflare admits that, on some occasions, its system stores static or dynamic content from its customers' websites by an automated process called "caching," to which 17 U.S.C. § 512(b) specifically refers.  Cloudflare admits that, on some occasions, Cloudflare's network may serve cached material to a requester from a data center closes to the requester. Cloudflare denies the remaining allegations of paragraph 10.

11.      Cloudflare denies the allegations of paragraph 11.

12.      Cloudflare denies the allegations of paragraph 12.

13.      Cloudflare denies that it has ever received a valid notification of claimed infringement from Plaintiffs that was appropriate for its services according to 17 U.S.C. § 512(b) and met the requirements of section 512(b)(2)(E) for the notifications.  Cloudflare admits that The Digital Millennium Copyright Act of 1998 ("DMCA"), 17 U.S.C. § 512, provides a "safe harbor" to internet service providers, such as Cloudflare, who have adopted and reasonably implemented policies for the termination, in appropriate circumstances, of subscribers of the service provider's system who are repeat infringers.  Cloudflare admits that it has adopted and reasonably implemented a policy for termination, in appropriate circumstances, of subscribers or account holders who are repeat infringers.  Cloudflare believes, and therefore admits, that it responded to every communication from Plaintiffs.  Cloudflare admits that, in response to each web form-based accusation of infringement from Plaintiffs, it had passed the accusation to its customer and to the hosting provider of its customer, depending on the direction of the Plaintiffs or their agent, because those entities—but not Cloudflare--had the ability to remove material from the customers' websites in response to the accusations.  Cloudflare denies the remainder of paragraph 13.

14.     Cloudflare lacks knowledge to admit or deny whether the defendants whom Plaintiffs accuse of being "Infringing Website Defendants" operate infringing websites and therefore denies the allegation implicit in the use of that phrase.  Cloudflare further lacks knowledge to admit or deny allegations regarding Blueangelhost.com.  Cloudflare denies the remainder of paragraph 14.

15.     Cloudflare denies the first sentence of paragraph 15.  Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 15.

16.     Cloudflare admits that Plaintiffs are asserting claims against Cloudflare for alleged contributory copyright infringement.  Cloudflare denies the remainder of paragraph 16.

17.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 17.

18.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 18.

19.     Cloudflare admits the allegations of paragraph 19.

20.     Cloudflare lacks knowledge to admit or deny whether the defendants whom Plaintiffs accuse of being "Infringing Website Defendants" operate infringing websites and therefore denies the allegation implicit in the use of that phrase.  Cloudflare further lacks knowledge to admit or deny the first sentence of paragraph 20.  Cloudflare denies the second sentence of the paragraph.  No answer is necessary for the remainder of paragraph 20.

21.     Cloudflare lacks knowledge to admit or deny whether the defendants whom Plaintiffs accuse of being "Infringing Website Defendants" operate infringing websites and therefore denies the allegation implicit in the use of that phrase.  No further answer is necessary for paragraph 21.

22.     Cloudflare admits that Plaintiffs have attached three exhibits labeled Exhibit 3, Exhibit 4, and Exhibit 5 to the Complaint.  Cloudflare denies that Exhibit 3 contains communications that Plaintiffs sent to Cloudflare.  Cloudflare denies that it has ever received a notification of claimed infringement from Plaintiffs that met the requirements of 17 U.S.C. § 512(b).  Cloudflare denies that "one URL might contain . . . multiple infringing images of the same dress."  Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 22.

23.     Cloudflare admits that this is a civil action seeking damages and injunctive relief under the copyright laws of the United States, 17 U.S.C. § 101 et seq.  Cloudflare denies the remainder of paragraph 23.

24.     Cloudflare admits the allegations of paragraph 24.

25.     Cloudflare denies the allegations of paragraph 25.

26.     Cloudflare lacks knowledge to admit or deny whether the defendants whom Plaintiffs accuse of being "Infringing Website Defendants" operate infringing websites and therefore denies the allegation implicit in the use of that phrase.  Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 26.

27.     Cloudflare denies the allegations of paragraph 27.

28.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 28.

29.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 29.

30.     Cloudflare believes, and therefore admits, that Allure operates two websites, Madison-James.com and Allurebridals.com, where it promotes its products to consumers.

Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 30.

31.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 31.

32.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 32.

33.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 33.

34.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 34.

35.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 35.

36.     Cloudflare believes, and therefore admits, that Justin Alexander operates a website where it promotes its products to consumers at justinalexander.com and that it uses that website to display its entire catalog of product and to refer brides to stores in their local markets. Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 36.

37.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 37.

38.     Cloudflare believes, and therefore admits, that Plaintiffs create photoshoots with multiple views of each of their dresses to be displayed to consumers on Plaintiffs' websites. Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 38.

39.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 39.

40.     Cloudflare believes, and therefore admits, that Plaintiffs display images on their websites.  Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 40.

41.     Cloudflare believes, and therefore admits, that the Plaintiffs' websites display their entire catalogues of their products, as shown in the Plaintiffs' images, and to refer brides to stores in their local markets.  Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 41.

42.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 42.

43.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 43.

44.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 44.

45.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 45.

46.     Cloudflare lacks knowledge to admit or deny whether the defendants whom Plaintiffs accuse of being "Infringing Website Defendants" operate infringing websites and therefore denies the allegation implicit in the use of that phrase.  Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 46.

47.     Cloudflare lacks knowledge to admit or deny whether the defendants whom Plaintiffs accuse of being "Infringing Website Defendants" operate infringing websites and

therefore denies the allegation implicit in the use of that phrase.  Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 47.

48.    Cloudflare lacks knowledge to admit or deny whether the websites that Plaintiffs refer to as "Infringing Websites" are indeed infringing and therefore denies the allegation implicit in the use of that phrase.  Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 48.

49.    Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 49.

50.    Cloudflare lacks knowledge to admit or deny whether the websites that Plaintiffs refer to as "Infringing Websites" are indeed infringing and therefore denies the allegation implicit in the use of that phrase.  Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 50.

51.    Cloudflare lacks knowledge to admit or deny whether the defendants whom Plaintiffs accuse of being "Infringing Website Defendants" operate infringing websites and therefore denies the allegation implicit in the use of that phrase.  Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 51.

52.    Cloudflare denies the allegations of paragraph 52.

53.    Cloudflare admits the allegations of paragraph 53.

54.    Cloudflare admits the allegations of paragraph 54.

55.    Cloudflare admits the quotation in the body of the paragraph except that it denies that a CDN always serves a client (Internet user requesting content) with content from the closest data center.  Cloudflare denies that the quotation is at the link stated in the paragraph.  Cloudflare admits that "static content" refers to content that normally does not change over time.  Cloudflare

denies the definition of "dynamic content" in footnote 2.  Cloudflare denies the remainder of paragraph 55.

56.     Cloudflare admits that the first two sentences accurately describe caching services at a high level of generalization.  Cloudflare otherwise denies the allegations of paragraph 56.

57.     Cloudflare admits the authenticity of the quotation but denies the remaining allegations of paragraph 57.

58.     Cloudflare admits that the allegation of paragraph 58 was accurate at some point in the past but otherwise denies the allegation.

59.     Cloudflare denies that it proclaims the quotation in the paragraph but admits the remaining allegations of paragraph 59.

60.     Cloudflare admits the allegations of paragraph 60.

61.     Cloudflare admits the allegations of paragraph 61.

62.     Cloudflare lacks knowledge to admit or deny whether the websites that Plaintiffs refer to as "Infringing Websites" are indeed infringing and therefore denies the allegation implicit in the use of that phrase.  Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 62.

63.     Cloudflare lacks knowledge to admit or deny whether the websites that Plaintiffs refer to as "Infringing Websites" are indeed infringing and therefore denies the allegation implicit in the use of that phrase.  Cloudflare admits that, when Cloudflare provides authoritative nameserver service for a customer's website, Cloudflare's system generally uses a network technology called "Anycast" to cause Internet Service Providers (ISPs) to route initial domain name system (or DNS) lookups for that website domain to a Cloudflare data center, as opposed

to the host server for the customer's website.  Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 63.

64.     Cloudflare lacks knowledge to admit or deny whether the websites that Plaintiffs refer to as "Infringing Websites" are indeed infringing and therefore denies the allegation implicit in the use of that phrase.  Cloudflare admits that, once a customer designates a Cloudflare nameserver as the authoritative nameserver for its website, later requests from Internet users for that website will generally pass through Cloudflare's automated network of data centers, and Cloudflare admits that this function is known as "reverse proxying."  Cloudflare further admits that, for websites of customers that use Cloudflare's services, the initial DNS lookup for a domain that an Internet user seeks to reach will generally automatically return the IP address of a Cloudflare data center.  Cloudflare denies the remainder of paragraph 64.

65.     Cloudflare lacks knowledge to admit or deny whether the websites that Plaintiffs refer to as "Infringing Websites" are indeed infringing and therefore denies the allegation implicit in the use of that phrase.  Cloudflare denies the remainder of paragraph 65.

66.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 66.

67.     Cloudflare denies the allegations of paragraph 67.

68.     Cloudflare denies the allegations of paragraph 68.

69.     Cloudflare lacks knowledge to admit or deny whether the websites that Plaintiffs refer to as "Infringing Websites" are indeed infringing and therefore denies the allegation implicit in the use of that phrase.  Cloudflare admits that it assists copyright owners by forwarding to its customers and their hosting providers, as an accuser may direct, notifications of claimed infringement, with information appropriate for hosting services, that come to Cloudflare

through its web form abuse complaint process.  Cloudflare denies that it has received any notifications of claimed infringement from Plaintiffs that comply with the requirements of 17 U.S.C. § 512(b).  Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 69.

70.     Cloudflare denies the allegations of paragraph 70.

71.     Cloudflare lacks knowledge to admit or deny whether the websites that Plaintiffs refer to as "Infringing Websites" are indeed infringing and therefore denies the allegation implicit in the use of that phrase.  Cloudflare believes, and therefore admits, that, when a US consumer wants to visit the website of a Cloudflare customer, the U.S. consumer's Internet access provider will route the traffic to a Cloudflare data center.  By automated processes, the Cloudflare data center may transmit some temporarily cached static content if the consumer seeks it and it is available at the data center.  Cloudflare denies the remainder of paragraph 71.

72.     Cloudflare admits that, *speaking at a high level of generalization*, Cloudflare's CDN takes static content, such as static image files in formats such as .jpg, and stores static content closer for visitors to the websites.  Cloudflare otherwise denies the allegations of paragraph 72.

73.     Cloudflare denies the first sentence of paragraph 73.  Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 73.

74.     Cloudflare lacks knowledge to admit or deny whether the websites that Plaintiffs refer to as "Infringing Websites" are indeed infringing and therefore denies the allegation implicit in the use of that phrase.  Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 74.

75.     Cloudflare denies the allegations of paragraph 75.

76.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 76.

77.     Cloudflare denies the allegations of paragraph 77.

78.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 78.

79.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 79.

80.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 80.

81.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 81.

82.     Cloudflare admits that it emphasizes Cloudflare's ability to improve website load-times.  Cloudflare denies the remainder of paragraph 82.

83.     Cloudflare admits that the quotations in paragraph 83 are authentic.  Cloudflare denies the remainder of paragraph 83.

84.     Cloudflare admits that the block quote in paragraph 84 is authentic.  Cloudflare denies the remainder of paragraph 84.

85.     Cloudflare admits the allegations of paragraph 85.

86.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 86.

87.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 87.

88.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 88.

89.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 89.

90.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 90.

91.     Cloudflare denies the allegations of paragraph 91.

92.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 92.

93.     Cloudflare lacks knowledge to admit or deny whether the websites that Plaintiffs refer to as "Infringing Websites" are indeed infringing and therefore denies the allegation implicit in the use of that phrase.  Cloudflare lacks knowledge to admit or deny that it improves performance of the websites of Does 1-200.  Cloudflare denies that it materially aids infringements and further denies the remainder of paragraph 93.

94.     Cloudflare lacks knowledge to admit or deny whether the websites that Plaintiffs accuse of being "Infringing Sites" are infringing and therefore denies the allegation implicit in the use of that phrase.  Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 94.

95.     Cloudflare admits the allegations of paragraph 95.

96.     Cloudflare admits the authenticity of the block quotation in paragraph 96. Cloudflare denies the remainder of paragraph 96.

97.     Cloudflare admits the allegations of paragraph 97.

98.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 98.

99.     Cloudflare admits the authenticity and accuracy of the quotation in paragraph 99. Cloudflare denies the remainder of paragraph 99.

100.    Cloudflare lacks knowledge to admit or deny whether the websites that Plaintiffs refer to as "Infringing Websites" are indeed infringing and therefore denies the allegation implicit in the use of that phrase.  Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 100.

101.    Cloudflare lacks knowledge to admit or deny whether the websites that Plaintiffs refer to as "Infringing Websites" are indeed infringing and therefore denies the allegation implicit in the use of that phrase.  Cloudflare denies the remainder of paragraph 101.

102.    Cloudflare denies the allegations of paragraph 102.

103.    Cloudflare lacks knowledge to admit or deny whether the websites that Plaintiffs refer to as "Infringing Websites" are indeed infringing and therefore denies the allegation implicit in the use of that phrase.  Cloudflare lacks knowledge to admit or deny the other allegations and therefore denies the remainder of paragraph 103.

104.    Cloudflare admits the allegations relating to Railgun, although it denies that Railgun has any relevance to the Plaintiffs, their claims, or any facts in this lawsuit.  Cloudflare further denies that Argo Smart Routing or Load Balancing have any relevance to the Plaintiffs, their claims, or any facts in this lawsuit.  Cloudflare denies that the other language apart from the reference to Railgun Integration accurately represents and describes the sources indicated in the paragraph and accordingly denies the remainder of paragraph 104.

105.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 105.

106.     Cloudflare denies that the Digital Millennium Copyright Act places any requirements on online service providers: it is an *optional* limitation on remedies (if a service provider is an infringer subject to remedies to begin with) that a service provider may obtain by fulfilling various statutory conditions.  Cloudflare admits that the DMCA provides a series of safe harbors for providers of different types of online services.  Cloudflare denies the remainder of paragraph 106.

107.     Cloudflare admits that the quoted language appears as a very small part of a House Committee report on the Digital Millennium Copyright Act, but Cloudflare denies that the quotation is accurate in context or describes the application of the safe harbors of the DMCA to Cloudflare.  The Plaintiffs' quotation omits the immediately preceding language saying that the Committee did not mean to suggest that "a provider must investigate possible infringements, monitor its service, or make difficult judgments as to whether conduct is or is not infringing." H.R. Rep. No. 105-551, pt. 2, at 61.  Cloudflare therefore denies the remainder of paragraph 107.

108.     Cloudflare denies the allegations of paragraph 108.

109.     Cloudflare denies the allegations of paragraph 109.

110.     Cloudflare denies the allegations of paragraph 110.

111.     Cloudflare denies the allegations of paragraph 111.

112.     Cloudflare denies the allegations of paragraph 112.

113.     Cloudflare admits that it passed accusations from Plaintiffs to its customers and/or their hosting providers, as Plaintiffs' agent may have directed.  Cloudflare specifically denies that any of Plaintiffs' communications met the requirements for valid notifications of claimed

infringement.  Cloudflare further specifically denies that Cloudflare took only those actions. Cloudflare denies the remaining allegations of paragraph 113.

114.    Cloudflare admits that it has the capability of terminating services to subscribers or account holders.  Cloudflare denies that it has the capability of adjudicating which subscribers or account holders are, in fact, copyright infringers.  For that reason, Cloudflare denies the remainder of paragraph 114.

115.    Cloudflare denies the allegations of paragraph 115.

116.    Cloudflare denies the allegations of paragraph 116.

117.    Cloudflare incorporates here by reference and restates its earlier responses.

118.    Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 118.

119.    Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 119.

120.    Cloudflare denies the allegations of paragraph 120.

121.    Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 121.

122.    Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 122.

123.    Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 123.

124.    Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 124.

125.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 125.

126.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 126.

127.     Cloudflare lacks knowledge to admit or deny the allegations and therefore denies the allegations of paragraph 127.

128.     Cloudflare denies the allegations of paragraph 128.

129.     Cloudflare denies the allegations of paragraph 129.

130.     Cloudflare denies the allegations of paragraph 130.

131.     Cloudflare denies the allegations of paragraph 131.

132.     Cloudflare denies the allegations of paragraph 132.

133.     Cloudflare denies the allegations of paragraph 133.

134.     Cloudflare denies the allegations of paragraph 134.

135.     Cloudflare denies the allegations of paragraph 135.

136.     Cloudflare denies the allegations of paragraph 136.  Termination of service is not a "simple measure" within the meaning of that phrase in contributory infringement case law, which uses it in the fuller phrase "simple measures to prevent further damage to copyrighted works."  Cloudflare cannot prevent further damage to any copyrighted works, and termination of its service would not have that effect.

137.     Cloudflare denies the allegations of paragraph 137.  Cloudflare does not make websites accessible.  It prevents malicious cyberattacks on websites that threaten harm across the Internet or to targeted websites.

138.     Cloudflare denies the allegations of paragraph 138.

139.     Cloudflare denies the allegations of paragraph 139.

140.     Cloudflare denies the allegations of paragraph 140.

141.     Cloudflare denies the allegations of paragraph 141.

142.     Cloudflare denies all allegations of the Complaint that it has not specifically admitted in its responses above.  Cloudflare denies that it is liable for any matters that the Complaint alleges or that Plaintiffs are entitled to any relief they seek in the Complaint, including its prayer for relief.

## DEFENSES

Cloudflare asserts the following defenses, whether affirmative or otherwise, that bar or limit some or all of Plaintiffs' claims:

1.     The Complaint fails to state a cause of action against Cloudflare.

2.     This Court lacks personal jurisdiction over Cloudflare and venue in this District is improper.

3.     The Online Copyright Infringement Liability Limitation Act, 17 U.S.C. § 512, limits the remedies available to Plaintiffs against Cloudflare: it precludes any monetary relief and any broad injunction.

4.     Plaintiffs' claims against Cloudflare are moot because they cannot establish any right to a monetary remedy or to any injunction requiring conduct beyond what Cloudflare already does in the ordinary course of its business.

5.     Plaintiffs lack standing to the extent they have not received registrations for their alleged copyrights as 17 U.S.C. § 411 requires; in the alternative, Plaintiffs lack standing to the extent they seek to enforce copyright registrations that contain misstatements or omissions that were material to the registrations and material to the purpose for which Plaintiffs invoke the registrations in this action.

6.      The doctrine of fair use bars or limits Plaintiffs' claims.

7.      The statute of limitations bars or limits Plaintiffs' claims.

8.      Laches bars Plaintiffs' or limits claims.

9.      Plaintiffs have suffered no injury or recoverable damages; in the alternative, Plaintiffs' failure to mitigate damages bars or limits their claims.

10.     Cloudflare's innocence limits any damages claims against it.

11.     The First Amendment to the United States Constitution bars or limits Plaintiffs' claims.

12.     The doctrine of estoppel bars or limits Plaintiffs' claims.

13.     The doctrines of consent, acquiescence, and license bar or limit Plaintiffs' claims.

14.     The doctrine of unclean hands bars or limits Plaintiffs' claims.

15.     The doctrine of copyright misuse bars or limits Plaintiffs' claims.

16.     17 U.S.C. § 412 bars Plaintiffs' claims for statutory damages and attorney's fees to the extent their copyright registrations were untimely.

17.     The United States Constitution bars or limits Plaintiffs' claims for damages.

## PRAYER FOR RELIEF

Cloudflare asks that the Court dismiss the action with prejudice and enter judgment in its favor and against Plaintiffs; that the Court adjudge that Cloudflare has not infringed upon Plaintiffs' copyrights or otherwise violated Plaintiffs' rights; that the Court adjudge that Cloudflare has no liability to either Plaintiff; that the Court adjudge that Cloudflare is not liable for any monetary relief or for any injunctive relief beyond the scope that section 512(j) authorizes, even in the case of a finding of infringement; that the Court award Cloudflare its attorneys' fees and full costs against both Plaintiffs jointly and severally pursuant to the

Copyright Act, 17 U.S.C. §§ 505 and court rule; and that the Court grant all other relief as it deems proper.

## <u>DEMAND FOR JURY TRIAL</u>

Cloudflare demands trial by jury.


Dated:  March 20, 2020                          Respectfully submitted,

                                                By: <u>*/s/ Andrew P. Bridges (by RSH w/ permission)*</u>
                                                Andrew P. Bridges
                                                Fenwick & West LLP
                                                Silicon Valley Center
                                                801 California Street
                                                Mountain View, CA  94041
                                                Telephone:  650.988.8500
                                                Email:  abridges@fenwick.com
                                                (application for admission to W.D. Tenn has been
                                                submitted)

                                                By: <u>*/s/ Robb S. Harvey*</u>
                                                Robb S. Harvey
                                                Waller Landsen Dortch & Davis LLP
                                                511 Union Street, Suite 2700
                                                Nashville, TN  37219
                                                Telephone:  615.850.8859
                                                Email:  robb.harvey@wallerlaw.com

                                                Attorneys for Defendant Cloudflare, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 20, 2020, the foregoing was

electronically filed through the CM/ECF system, which will send Notifications of Electronic

Filing to the following:

> Nicole D. Berkowitz
> Grady M. Garrison
> Baker Donelson Bearman Caldwell & Berkowitz, P.C.
> 165 Madison Avenue, Suite 2000
> Memphis, TN  38103
>
> Stuart Kagen
> Russell L. Bogart
> Kagen & Caspersen PLLC
> 757 Third Avenue, 20th Floor
> New York, NY  10017

_/s/ Robb S. Harvey_
Robb S. Harvey
