# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | |
|---|---|
| AMERICAN CLOTHING EXPRESS, INC., D/B/A ALLURE BRIDALS AND JUSTIN ALEXANDER, INC., | Case No. 2:20-cv-02007-SHM-dkv |
| Plaintiffs, | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS/COUNTER-DEFENDANTS' MOTION TO DISMISS THE COUNTERCLAIMS FILED BY DEFENDANT/COUNTER-PLAINTIFF CLOUDFLARE, INC.** |
| v. | |
| CLOUDFLARE, INC. and DOES 1 - 200, inclusive, | |
| Defendants. | |
| CLOUDFLARE, INC. | |
| Counterclaimant, | |
| v. | |
| AMERICAN CLOTHING EXPRESS, INC., D/B/A ALLURE BRIDALS AND JUSTIN ALEXANDER, INC., | |
| Counterdefendants. | |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

BACKGROUND ................................................................................................... 3

  I. THE PARTIES.............................................................................................. 3

    a. The Plaintiffs – Counterclaim Defendants................................................ 3

    b. Cloudflare .............................................................................................. 3

    c. The Infringing Website Defendants........................................................ 4

  II. THE PLEADINGS ...................................................................................... 5

    a. THE COMPLAINT .................................................................................. 5

    b. CLOUDFLARE'S ANSWER TO THE COMPLAINT ............................... 5

    c. CLOUDFLARE'S COUNTERCLAIMS ...................................................... 6

LEGAL ARGUMENT.......................................................................................... 9

  I. THE STANDARD FOR FAILURE TO STATE A CLAIM................................. 9

  II. THE COUNTERCLAIMS FAIL TO ESTABLISH A PROPER BASIS FOR
  DECLARATORY JUDGMENT JURISDICTION ................................................ 10

    a. The Legal Standard................................................................................ 10

    b. The Counterclaims Are Redundant of the Complaint ...................... 12

  III. CLOUDFLARE'S ARTICULATED BASIS FOR THE COURT TO
  EXERCISE JURISDICTION OVER THE DECLARATORY JUDGMENT
  COUNTERCLAIMS IS FACTUALLY AND LEGALLY ERRONEOUS ............................. 13

CONCLUSION..................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*ALS Scan, Inc. v. Cloudflare, Inc.*, et al.,
   Case No. CV-16-5051 (C.D.Cal. Oct. 24, 2016) ........................................................... 2

*AmSouth Bank v. Dale*,
   386 F.3d 763, (6th Cir. 2004) ........................................................................................ 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................................... 9

*BMG Rights Mgmt (US) LLC v. Cox Communs., Inc.*,
   881 F.3d 293 (4th Cir. 2018) ....................................................................................... 2, 9

*Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*,
   508 F.3d 327 (6th Cir. 2007) ......................................................................................... 16

*Fed. Deposit Ins. Corp. v. Project Dev. Corp.*,
   819 F.2d 289 (6th Cir. May 27, 1987) .......................................................................... 11

*Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*,
   746 F.2d 323 (6th Cir. 1984) .................................................................................... 10, 11

*Int'l Outdoor, Inc. v. City of Southgate*,
   2012 U.S. Dist. LEXIS 85952 .......................................................................................... 5

*Internet Transaction Solutions, Inc. v. Intel Corp.*,
   2006 U.S. Dist. LEXIS 29532 (S.D. Ohio 2006) .......................................................... 11

*Lawrence v. Chancery Court of Tenn.*,
   188 F.3d 687 (6th Cir. 1999) ........................................................................................... 9

*Malibu Media, LLC v. Ricupero*,
   705 F. App'x 402 (6th Cir. 2017) ....................................................................... 10, 11, 12

*Mawdsley v. Kirkland's, Inc.*,
   2013 U.S. Dist. LEXIS 152262 (M.D. Tenn. Oct. 23, 2013) ........................................ 12

*Mon Cheri Bridals, LLC v. Cloudflare, Inc.*,
   2019 U.S. Dist. LEXIS 121851 (N.D.Cal. July 11, 2019) .............................................. 2

*Pearson Educ., Inc. v. C&N Logistics, Inc.*,
   2018 U.S. Dist. LEXIS 209649 (M.D. Tenn. Dec. 12, 2018) ........................................ 12

*SONY/ATV Music Publ'g LLC v. D.J. Miller Music Distribs.*,
   2011 U.S. Dist. LEXIS 116155 (M.D. Tenn. Oct. 7, 2011) ........................................... 12

*Spradlin v. Pryor Cashman LLP (In re Licking River Mining, LLC)*,
   565 B.R. 794 (Bankr. E.D. Ky. 2017) .............................................................................. 9

*UMG Recordings, Inc. v. Grande Communications Networks, LLC*,
   384 F. Supp. 3d 743 (W.D.Tex. Mar. 15, 2019) .............................................................. 2

*Varsity Brands, Inc. v. Star Athletica, LLC*,
    2017 U.S. Dist. LEXIS 126716 (W.D. Tenn. 2017) ................................................. 11

*Weiner v Klais & Co.*,
    108 F.3d 86 (6th Cir. 1997) ....................................................................................... 16

*Williams v. CitiMortgage, Inc.*,
    498 F. App'x 532 (6th Cir. 2012) ........................................................................ 9, 17

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) ................................................................................................. 10

**Statutes and Rules**

Fed. R. Civ. P. Rule 12(b)(6) ............................................................................... 1, 6, 9

17 U.S.C.§505 ......................................................................................................... 6, 12

17 U.S.C. §512 .................................................................................................... 2, 8, 9

17 U.S.C. §512(a) ....................................................................................................... 2, 8

17 U.S.C. §512(b) .......................................................................................................... 8

17 U.S.C. §512(b)(2)(E) …………………………………………………………………8

17 U.S.C. §512(i) ....................................................................................................... 8, 9

17 U.S.C. §512(i)(1)(a) .................................................................................................. 9

28 U.S.C. § 2201 ......................................................................................................... 10

Plaintiffs-Counterdefendants American Clothing Express, Inc. d/b/a Allure Bridals ("Allure") and Justin Alexander, Inc. ("Justin," combined with Allure, "Plaintiffs") file this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. Rule 12(b)(6) to dismiss the Counterclaims filed by Defendant-Counterclaimant Cloudflare, Inc. ("Cloudflare").

## INTRODUCTION

Plaintiff wedding and prom dress manufacturers filed suit against Cloudflare claiming that Cloudflare's content delivery network ("CDN") and domain name services ("DNS") materially aid counterfeiters ("Infringing Website Defendants") engaged in the systematic misappropriation of Plaintiffs' product images to display infringing copies of them on websites used to sell knock-off dresses ("Infringing Websites"). Plaintiffs contend that Cloudflare materially aids the infringement by speeding up the delivery of the images from the Infringing Websites hosted thousands of miles away to internet users in the United States. When Cloudflare receives notifications that certain subscribers are repeatedly transmitting specific infringing material through its network, Cloudflare simply passes on the notice of infringement to the infringer, and the company hosting the infringement, even when Cloudflare knows that these parties will not respect copyrights.

Because the Infringing Websites are hosted in far-flung jurisdictions where enforcement by Plaintiffs of their copyrights at a minimum is difficult, Plaintiffs allege that their notifications of infringement sent to the hosts of the Infringing Websites or the Infringing Website Defendants themselves often are disregarded. Thus, Plaintiffs are pitted in this hopeless game of whack-a-mole against the Infringing Website Defendants, who simply duplicate an infringing website with a new domain name upon Plaintiffs investing time and resources to obtain a judgment against one of the infringing sites.

1

Plaintiffs allege that Cloudflare materially contributes to the ongoing infringement because: i) it knows of specific infringement due to its receipt of Plaintiffs' complaints of infringement; ii) it materially assisted that infringement by enabling the Infringing Website Defendants to cache on Cloudflare's domestic servers the Infringing Images and by significantly speeding up the load-times of the Infringing Websites; and iii) it refused to take the simple measure of terminating its service provided to the infringers.

Cloudflare and other Internet Service Providers ("ISPs") unsuccessfully have sought to dismiss similar claims of contributory copyright infringement by raising "wrong" arguments about the standards for showing contributory copyright infringement, or their entitlement to the safe harbor protections under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §512. *Mon Cheri Bridals, LLC v. Cloudflare, Inc.*, 2019 U.S. Dist. LEXIS 121851 (N.D.Cal. July 11, 2019)(denying Cloudflare's motion to dismiss a dress manufacturer's contributory copyright infringement claim based upon erroneous articulations of the standards for demonstrating contributory infringement); *ALS Scan, Inc. v. Cloudflare, Inc.*, et al., Case No. CV-16-5051 (C.D.Cal. Oct. 24, 2016)(denying Cloudflare's motion to dismiss the complaint because the plaintiff had "sufficiently alleged contributory liability against Cloudflare pursuant to a material contribution theory"); *BMG Rights Mgmt (US) LLC v. Cox Communs., Inc.*, 881 F.3d 293 (4th Cir. 2018)(upholding a finding that an internet service provider, who equated a "repeat infringer" with an "adjudicated infringer," was not entitled to the DMCA defense); *UMG Recordings, Inc. v. Grande Communications Networks, LLC*, 384 F. Supp. 3d 743 (W.D.Tex. Mar. 15, 2019)(holding that i) the assertion that a cause of action for material contribution to copyright infringement is not recognized in the law is misplaced and ii) that the ISP was not entitled to the DMCA safe harbor under §512(a) due to its failure to respond to complaints of infringement).

In response, Cloudflare has pursued a different tactic here. Instead, Cloudflare recasts these same failed legal arguments in the form of Counterclaims seeking declaratory judgments that Cloudflare did not infringe and it is entitled to the protection of several DMCA safe harbors.

However, under controlling Sixth Circuit Court of Appeals precedent, the court should exercise its discretion to decline to hear Cloudflare's counterclaims seeking declaratory relief. Cloudflare's Counterclaims are simply a mirror of Plaintiffs' Complaint and Cloudflare's defenses thereto as both involve precisely the same legal and factual issues. Federal courts within the Sixth Circuit consistently decline to hear a defendant's declaratory judgment counterclaim which is simply a mirror image of the plaintiff's copyright infringement claim. For the reasons set forth below, this Court should decline to exercise jurisdiction over Cloudflare's declaratory judgment counterclaims which will be rendered moot by the resolution of Plaintiffs' case.

## BACKGROUND

I.    **THE PARTIES**
      **a.  The Plaintiffs - Counterclaim Defendants**

Plaintiffs design and manufacture wedding and prom dresses (CC ¶123). [1]  Plaintiffs display on their websites their copyrighted images of models wearing their dresses ("Plaintiffs' Images") (CC ¶¶ 135-136).

      **b.  Cloudflare**

Cloudflare is a web performance and security company that provides a Content Delivery Network ("CDN"), web content optimization, website security, denial of service protection, and a managed domain name system network ("DNS")(A ¶52). A CDN refers to a geographically distributed group of servers which work together to provide the fast delivery of Internet content

---

[1] "CC" followed by "¶" refers to paragraphs of the Counterclaims; "A" followed by ¶ refers to paragraphs of the Answer and "CMP" followed by ¶ refers to paragraphs of the Complaint.

(A ¶2).  Cloudflare's marketing materials explain how Cloudflare's CDN improves the speed of the delivery of images from websites hosted in far-flung places to the United States (A ¶¶96-99).

A CDN improves the latency of a website "by pulling static content files from the origin server into the distributed CDN network in a process called caching" (A ¶54).  Once the data is cached, the CDN may serve the content to the customer from the closest CDN data center instead of the origin server, which could be located thousands of miles away (A ¶¶53-54).

Cloudflare also provides a managed "domain name system" to its clients (A ¶2). Cloudflare requires its customers to name two Cloudflare nameservers as the authoritative nameservers for their website domain (A ¶61).  When Cloudflare provides authoritative name server service for a customer's website, Cloudflare causes ISPs to route initial DNS lookups for that website to a Cloudflare data center, as opposed to the host server for the customer's website (A ¶63).  For Cloudflare's customers, the initial DNS lookup for a domain that an Internet user seeks to reach will generally automatically return the IP address of a Cloudflare data center (A ¶64).

### c.   The Infringing Website Defendants

Plaintiffs allege that the Infringing Website Defendants misappropriate the Plaintiffs' Images and post them, or slight alterations thereof, on websites hosted in foreign jurisdiction for the purpose of selling cheap imitations of Plaintiffs' gowns through the internet (CMP ¶46-51). Each of the Infringing Websites are optimized by Cloudflare's services (CMP ¶5).  Plaintiffs do not know the identities of the Infringing Website Defendants, who manufacture the knock-off dresses, and operate the Infringing Websites at issue (CMP ¶20).

## II.     THE PLEADINGS
### a.  THE COMPLAINT

Plaintiffs' Complaint contains two claims for relief.  The First Claim for Relief consists of a claim of direct copyright infringement against the Infringing Website Defendants.  The Second Claim for Relief asserts a claim of contributory copyright infringement against Cloudflare.

Plaintiffs' Complaint contains factual allegations describing: the Plaintiffs' businesses and intellectual property rights (CMP pp. 8-10); the illegal conduct of the Infringing Website Defendants (CMP pp. 11-13); the technical operation of Cloudflare's CDN and DNS service and how they materially aid the direct infringement (CMP pp. 16-25); Plaintiffs' efforts to notify Cloudflare of the ongoing infringement (CMP pp. 27-29), including through providing side by side depictions of each infringing image matched with the copyrighted image along with detailed spreadsheets identifying the reports submitted to Cloudflare (Exhibits 3-5 to the Complaint) and Cloudflare's deficient procedures for responding to Plaintiffs' complaints of infringement (CMP ¶¶ 107-115).

### b.  CLOUDFLARE'S ANSWER TO THE COMPLAINT

Cloudflare' answer asserts seventeen affirmative defenses in a wholly conclusory fashion. *See, Int'l Outdoor, Inc. v. City of Southgate*, 2012 U.S. Dist. LEXIS 85952, n. 15 ("This clarification by the Supreme Court that a plaintiff must plead sufficient facts to demonstrate a plausible claim… must also apply to defendants in pleading affirmative defenses otherwise a court could not make a Rule 12(f) determination whether an affirmative defense is adequately pleaded under Rule 8(a) and/or 9 and could not determine whether the affirmative defense would withstand

a Rule 12(b)(6) challenge.  Thus, a wholly conclusory affirmative defense is not sufficient").[2]
Significantly, Cloudflare's first affirmative defense, that "the Complaint fails to state a cause of
action against Cloudflare" is redundant of Cloudflare's counterclaims seeking a declaration of non-
infringement.  Additionally, Cloudflare's third affirmative defense, asserting that the DMCA's
safe harbors limit Plaintiffs' remedies is duplicative of Cloudflare's counterclaims seeking a
declaration of its entitlement to the same safe harbors.

Cloudflare's answer also contains a Prayer for Relief which duplicates the Relief sought in
the Counterclaims:

> Cloudflare asks that the Court dismiss the action with prejudice and enter judgment in its
> favor and against Plaintiffs; that the Court adjudge that Cloudflare has not infringed upon
> Plaintiffs' copyrights or otherwise violated Plaintiffs' rights; that the Court adjudge that
> Cloudflare has no liability to either Plaintiff; that the Court adjudge that Cloudflare is not
> liable for any monetary relief or for any injunctive relief beyond the scope of section 512(j)
> authorizes, even in the case of a finding of infringement; that the Court award Cloudflare
> its attorneys' fees and full costs against both Plaintiffs jointly and severally pursuant to the
> Copyright Act, 17 U.S.C. §§505 and court rule; and that the Court grant all other relief as
> it deems proper.

### c.  CLOUDFLARE'S COUNTERCLAIMS

Cloudflare has asserted five Counterclaims all seeking a declaratory judgment that
Cloudflare is not liable for the contributory infringement alleged in the Plaintiffs' Complaint or is
protected by two of the DMCA safe harbors.

The first section of Cloudflare's Counterclaims, titled "Cloudflare and Its Services,"
describes how Cloudflare's security services purportedly protect Cloudflare's subscribers against
cyberattacks.  The second section of Cloudflare's Counterclaims titled "Cloudflare's Technical
Operations," describes the operation of Cloudflare's CDN and DNS service.

---

[2] Cloudflare undoubtedly will respond that much of the required facts were contained in the
Counterclaims, addressing the same subject matters, which were placed in front of its answer.  This
excuse further confirms that the Counterclaims are duplicative.

The third section in Cloudflare's Counterclaims is titled "Cloudflare's Policies and Practices Regarding Accusations of Abuse of Cloudflare's System and Services by Its Customers." Herein, Cloudflare asserts that it has "adopted a policy for terminating, in appropriate circumstances, subscribers or account holders who are repeat infringers" (CC ¶70).

The fourth section in the Counterclaims, titled "Communications between Plaintiffs' Age**nt** and Cloudflare")(emphasis added) asserts that Plaintiffs *solely* relied upon a company called XML Shop, LLC d/b/a Counterfeit Technologies ("Counterfeit") to send defective notifications of the infringement to Cloudflare.  (*See* CC ¶¶ 84-122).  Instead of using Cloudflare's web form to report infringement, Counterfeit sometimes sent emails to Cloudflare that purportedly invoked the wrong provisions of the DMCA and which purportedly reflected Counterfeit's lack of understanding of the DMCA and Cloudflare's technical operations (*Id*.).  Cloudflare attached to its Counterclaims as Exhibits emails transmitted by Plaintiffs' agent Counterfeit to Cloudflare which purportedly are "typical" of Plaintiffs' alleged notifications to Cloudflare of infringement.  According to Cloudflare, these defective "accusations of infringement" are insufficient to demonstrate Cloudflare's knowledge of infringement.

In the fifth, sixth and seventh sections of the Counterclaims, Cloudflare makes various assertions about the Plaintiffs' businesses, the Doe Defendants, and the purported lack of harms to Plaintiffs from the infringement, mostly based upon information and belief.

The First Cause of Action in the Counterclaims, titled "Declaration of Non-Infringement by Cloudflare," seeks a "declaration that it has not infringed upon any of the Plaintiffs' copyright rights" (CC ¶218).  Herein, Cloudflare makes various assertions as to why Plaintiffs cannot establish the elements of a claim of contributory infringement as set forth in their Complaint.  For instance, Cloudflare alleges that "Plaintiffs do not assert or claim that Cloudflare has intentionally

induced infringement of the Plaintiffs' works," "by the time of these Counterclaims and Answer Plaintiffs had not provided Cloudflare with any court decisions finding infringement by Cloudflare customers" and that "Plaintiffs do not allege or claim that, but for Cloudflare's services, the infringements by Does 1-200 would have been immaterial" (CC ¶¶ 187, 193 & 208).

The Second Counterclaim asks that the Court award to Cloudflare a "Declaration of No Proof of Direct Infringement by Does 1-200 by the Time of the Complaint." Specifically, Cloudflare asserts that: i) Plaintiffs have not proved the infringement against the Does 1-200; ii) "the purpose of this lawsuit is to prove the infringement"; iii) the mere filing of the Complaint did not constitute proof of such direct infringement; and iv) Plaintiffs never provided to Cloudflare any adjudication establishing the direct infringement before filing this complaint (CC ¶¶219-224).

Cloudflare's Third, Fourth and Fifth Counterclaims ("DMCA Claims") are designed to show its entitlement to the safe harbor protections of the DMCA, 17 U.S.C. §512. Specifically, Section 512 provides four distinct safe harbors, or limitations on liability for damages, for four distinct types of technical services. Cloudflare here seeks the protection of Section 512(a), which pertains to the transmission or routing of data through a network, and Section 512(b), which pertains to the caching or temporary storage of material on a system and network. Cloudflare's Fourth and Fifth Counterclaims assert that Cloudflare satisfied the technical requirements of Sections 512(a) and (b). Cloudflare's Third Counterclaim alleges that none of the notifications sent by Plaintiffs to Cloudflare complied with Section 512(b)(2)(E)'s requirements to demand the removal of infringing images from Cloudflare's cache servers.

Before Cloudflare can avail itself of any of the safe harbors contained in §512(a) – (d), it must demonstrate its satisfaction of the threshold requirements contained in §512(i) to avail itself of any of the safe harbors. *See, e.g., BMG*, 881 F.3d at 301 (to avail itself of the §512(a) safe

harbor, the defendant "must show that it meets the threshold requirement, common to all §512 safe harbors," that it has complied with §512(i)(1)(a)). Section 512(i) titled "Conditions for Eligibility" explicitly states that "the limitations on liability established by this section shall apply to a service provider only if the service provider (A) has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers." §512(i)(1)(A). Strikingly, Cloudflare does not seek a declaration that Cloudflare complies with the requirements of §512(i).

## LEGAL ARGUMENT

### I.    THE STANDARD FOR FAILURE TO STATE A CLAIM.

The United States Supreme Court has stated that to survive a motion to dismiss the complaint filed under Fed. R. Civ. P. Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether a complaint, or here counterclaim, contains sufficient factual matter as to each element necessary to state a claim for relief that is plausible on its face, "the Court accepts all well-pleaded factual allegations in the [pleading] as true and construes them liberally in the Plaintiff's favor" or here in the favor of the Counterclaim Plaintiff. *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999). The court "may consider the allegations in the pleadings, documents attached to or incorporated by reference in the pleadings, and adjudicative facts about which the Court may take judicial notice under Federal Rule of Evidence 201." *Spradlin v. Pryor Cashman LLP (In re Licking River Mining, LLC)*, 565 B.R. 794, 801 (Bankr. E.D. Ky. 2017). Although a court must accept all well-pled facts as true, if a document referenced in the complaint contradicts the allegations in the complaint, the document "trumps the allegations." *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012).

9

## II.     THE COUNTERCLAIMS FAIL TO ESTABLISH A PROPER BASIS FOR DECLARATORY JUDGMENT JURISDICTION.

For the reasons set forth below, this Court should decline, under the discretion vested in it under the Declaratory Judgments Act, 28 U.S.C. §§ 2201 et seq., to exercise jurisdiction over Cloudflare's counterclaims.  Pursuant to Sixth Circuit precedent, this Court should dismiss the Counterclaims as redundant of the issues presented by the Plaintiffs' Complaint.  As the Counterclaims will be rendered moot by resolution of the Plaintiffs' case, the Counterclaims do not serve a useful purpose.

### a.  The Legal Standard

"District courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act," 28 U.S.C. §§ 2201 et seq., "even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 325 (6th Cir. 1984)(It is "well-settled that jurisdiction to grant relief under the Declaratory Judgment Action, 28 U.S.C. §§ 2201 et seq., is discretionary.").  The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *AmSouth Bank v. Dale*, 386 F.3d 763, 784-785 (6th Cir. 2004).

In *Grand Trunk*, 746 F. 2d 323, 326, the Sixth Circuit identified five factors for evaluating whether to assert jurisdiction over a declaratory judgment action: "whether the declaratory judgment (1) would settle the controversy; (2) would serve a useful purpose in clarifying the legal relations at issue; (3) is being used merely for "procedural fencing" or to "provide an arena for a race to res judicata"; (4) would increase friction between state and federal courts and improperly encroach on state jurisdiction; and (5) whether there is a more effective, alternative remedy." *Malibu Media, LLC v. Ricupero*, 705 F. App'x 402, 406-407 (6th Cir. 2017)(affirming the dismissal

of a counterclaim seeking a declaration of non-infringement of plaintiff's copyright where the resolution of the plaintiff's infringement claim would render the counterclaim moot).

When confronted with counterclaims seeking a declaration of no infringement which have been interposed in response to a complaint of infringement, the Sixth Circuit has "evaluated whether such a 'useful purpose' exists by looking specifically at the issue of redundancy and may appropriately do so without relying on the [other] *Grand Trunk* factors." *Malibu Media, LLC v. Ricupero*, 705 F. App'x 402, 406-407, *citing to*, *Fed. Deposit Ins. Corp. v. Project Dev. Corp.*, 819 F.2d 289 (6ᵗʰ Cir. May 27, 1987)(unpublished table decision)(upholding the denial of a motion to add a counterclaim because "when a counterclaim merely restates the issue as a "mirror image" to the complaint, the counterclaim serves no purpose").

The "applicable factors," with respect to a counterclaim seeking a declaration of non-infringement, "all counsel against the exercise of jurisdiction over the counterclaims for declaratory judgment." *Varsity Brands, Inc. v. Star Athletica, LLC*, 2017 U.S. Dist. LEXIS 126716 (W.D. Tenn. 2017)(dismissing counterclaims seeking a declaratory judgment on various grounds relating to the plaintiff's affirmative copyright infringement claims).  Courts find to be dispositive the application of the second factor – i.e., "whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue."  *Id*.  This is true because "[D]eclaratory judgments do not serve a useful purpose where there is a pending coercive action, filed by the natural plaintiff, which encompasses all of the same issues as the declaratory judgment action." *Id*.  Such a counterclaim is not tailored to achieve the "purpose" of the Declaratory Judgment Act which "is to relieve potential defendants from the threat of impending litigation."  *Internet Transaction Solutions, Inc. v. Intel Corp.*, 2006 U.S. Dist. LEXIS 29532 *4 (S.D. Ohio 2006).

Pursuant to this precedent, courts within this Circuit consistently dismiss counterclaims seeking a declaratory judgment of non-infringement which are "redundant, mirror images" of the plaintiff's claims of infringement.  *Pearson Educ., Inc. v. C&N Logistics, Inc.*, 2018 U.S. Dist. LEXIS 209649 *10 (M.D. Tenn. Dec. 12, 2018)(dismissing counterclaims seeking a declaration that the defendant is not infringing as redundant of the plaintiff's copyright infringement claim); *Mawdsley v. Kirkland's, Inc.*, 2013 U.S. Dist. LEXIS 152262 (M.D. Tenn. Oct. 23, 2013)(dismissing defendant's counterclaim seeking a declaratory judgment for non-infringement because it was a mirror of plaintiff's claim for copyright infringement).

Notably, Cloudflare pleads that the exercise of jurisdiction over the Counterclaims is proper because of Cloudflare's need to "clarify matters in the pleadings" (CC ¶181).  Thus, Cloudflare simply proves that the resolution of the Plaintiffs' copyright infringement suit would render the Counterclaims moot.

Moreover, Cloudflare's demand for an award of its attorneys' fees as part of its demand for relief in its Counterclaims does not transform the Counterclaims into serving a "useful purpose."  Rather, the "fee-shifting provision of the Copyright Act, 17 U.S.C. §505, awards attorney's fees to the prevailing party in a copyright infringement action without regard to whether the defendant has asserted a counterclaim."  *Malibu Media*, 705 F. App'x 402, 407; *SONY/ATV Music Publ'g LLC v. D.J. Miller Music Distribs.*, 2011 U.S. Dist. LEXIS 116155 (M.D. Tenn. Oct. 7, 2011)(dismissing counterclaim seeking a declaration of non-infringement based on a similar rationale).  Indeed, this demand for attorneys' fees is redundant of the attorney fee demand contained in Cloudflare's answer.

**b.  The Counterclaims Are Redundant of the Complaint.**

Here, Cloudflare's five total Counterclaims must be dismissed as redundant of the Complaint as both involve precisely the same factual and legal issues. *Malibu*, 705 F. App'x 402, 406-407.

Both the Counterclaims and Complaint address the same topics such as: the technical operation of Cloudflare's CDN and DNS services (CMP ¶¶52-205; CC ¶¶ 21-39); Plaintiffs' businesses (CMP ¶¶28-45; CC ¶¶123-146); Cloudflare's policies for responding to complaints of infringement (CMP ¶¶107-115; CC ¶¶40-83); the infringement being perpetrated upon Plaintiffs by the Infringing Website Defendants (CMP ¶¶46-51; CC ¶¶147-169); and the Plaintiffs' reports of infringement to Cloudflare (CMP ¶¶105-116 & Exhibits 3-5; CC ¶¶84-122).

The Counterclaims and the Complaint present precisely the same legal issues as well. For example, Cloudflare's third affirmative defense that Cloudflare is entitled to the DMCA safe harbors mirrors Cloudflare's third through fifth Counterclaims seeking to establish its entitlement to the same DMCA safe harbors. Additionally, Cloudflare's first two Counterclaims redundantly seek to establish its lack of liability for the Plaintiffs' infringement claims. Thus, these first two counterclaims will be rendered "moot" by a finding of liability, or the lack thereof on Plaintiff's infringement claim, and should accordingly be dismissed. *Id*.

Moreover, Cloudflare's "Prayer for Relief" in its Answer seeks the same relief as Cloudflare's Counterclaims. Both pleadings seek adjudications that Cloudflare did not infringe and is entitled to the DMCA safe harbors and an award of attorneys' fees.

### III. CLOUDFLARE'S ARTICULATED BASIS FOR THE COURT TO EXERCISE JURISDICTION OVER THE DECLARATORY JUDGMENT COUNTERCLAIMS IS FACTUALLY AND LEGALLY ERRONEOUS.

In Point VIII of the Counterclaims, titled "Declaratory Judgment Jurisdiction," Cloudflare explains why this Court should exercise jurisdiction over its claims for declaratory judgment. The

Counterclaims assert, in relevant part, that the Court should exercise jurisdiction over the Counterclaims because:

> This lawsuit involves a dispute between the Plaintiffs and Cloudflare under the Copyright Act. There is a real and continuing controversy among the parties, as the lawsuit evidences. But Plaintiffs artfully omitted from their Complaint their defective alleged notifications of claimed infringement to which they have referred, and there are also matters beyond the face of the Complaint that justify judgment for Cloudflare. For that reason, Cloudflare brings these counterclaims for declaratory relief both to clarify matters in the pleadings and to declare the parties' respective rights, obligations, immunities and privileges.

(CC ¶181).

Unmistakably, Cloudflare primarily contends that the Court should exercise its discretion to hear its Counterclaims to provide Cloudflare with an opportunity to clarify its position regarding the purportedly defective notices of infringement filed by Counterfeit Technologies as the Plaintiffs' purported sole agent (CC ¶¶ 84-122, 167-168). Cloudflare contends that Plaintiffs cannot establish a contributory infringement claim, in part, because Plaintiffs cannot satisfy their burden of showing Cloudflare's "actual knowledge" of the underlying infringement due to Counterfeit Technologies' defective notifications. Further, Cloudflare claims that it should be entitled to the safe harbor protections under the DMCA because its policies for responding to such "defective" notifications of infringement were reasonable.[3]

Cloudflare's basis for filing the Counterclaims is legally defective because Cloudflare's justification powerfully confirms that resolution of the Plaintiffs' Complaint will render the Counterclaims moot. Further, the information that Cloudflare alleges about Counterfeit Technologies is duplicative of Cloudflare's defenses to the Complaint despite Cloudflare's

---

[3] Plaintiffs disagree with Cloudflare's contentions regarding the reporting that was done by Counterfeit Technologies but acknowledges that the Court should assume them to be true at the motion to dismiss stage.

decision to primarily insert this simple factual detail in the text of its Counterclaim as opposed to its Answer. For example, Cloudflare's answer to the Complaint does set forth Cloudflare's process for responding to complaints of infringement (A ¶¶13, 69, 113) and asserts that Plaintiffs' complaints of infringement purportedly were defective (A ¶22 ).

Additionally, Cloudflare's representations regarding Counterfeit serving as Plaintiffs' *sole* agent, and Counterfeit's email submissions being *typical* of Plaintiff's reports of infringement, are false (CC ¶¶84-122).  Rather, Plaintiffs replaced Counterfeit Technologies with a company called Incopro, Ltd. ("Incopro"), which filed reports of infringement on behalf of Plaintiffs through Cloudflare's web form.  Attached to Plaintiffs' submissions are but a few examples of screenshots of Incopro's reporting through Cloudflare's web form and Cloudflare's emails acknowledging that Cloudflare has processed the report of infringement.[4]

Cloudflare's counterclaims, which "artfully" disregard Incopro's role, do not provide a compelling basis for this Court to disregard the 6th Circuit precedent requiring the dismissal of such redundant, useless counterclaims.  Rather, Cloudflare's attacks on Counterfeit Technologies' reports, at most could show that: i) Counterfeit Technologies' reports failed to provide it with actual knowledge of the infringement and ii) Cloudflare's response to any reports filed by Counterfeit Technologies was reasonable.  However, Cloudflare's attacks against Counterfeit Technologies' practices do not establish that: i) Incopro's reports of infringement did not provide Cloudflare with actual knowledge of the fraud and ii) that Cloudflare's response to Incopro's

---

[4] Plaintiffs do not want to overburden the Court by submitting comprehensive documentation regarding the thousands of infringing images that Incopro had reported to Cloudflare at the motion to dismiss stage. Rather, at this stage, it suffices to show that Cloudflare's own records will confirm that a very substantial portion of Plaintiffs' reporting was done by Incopro.

reports entitles Cloudflare to any of the DMCA safe harbors. Thus, the Counterclaims as alleged would not grant full relief due to their "artful" failure to address Incopro's role.

Cloudflare cannot avoid the consequences of its omission of Incopro's reports by arguing that Incopro's reports constitute matter outside the pleadings.  At the motion to dismiss stage, a court can consider documents referenced in the pleadings that are "integral to the claims." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007).  Further, the district court even can consider documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference.  *Weiner v Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)(considering on a motion to dismiss plan documents that were not specifically mentioned in a complaint but which governed the parties' rights).

Here, the Complaint specifically incorporates all of Plaintiffs' notifications of infringement to Cloudflare by reference through the provision of Exhibit 3 (which consists of a listing of the number of DMCA notices sent by Plaintiffs' agent**s**), Exhibit 4 (which provides a "listing of the dates of each notice sent by Plaintiffs' agent**s** to Cloudflare along with the specific uniform resource locator ("URL") for the Infringing Image reported in each notice for each domain) and Exhibit 5 (which provides for each domain, a side-by-side display of each of the Plaintiffs' copyrighted images with the corresponding Infringing Image that had been reported to Cloudflare, along with the copyright registration, URL and DMCA reporting information).  The Counterclaims also specifically incorporate the Plaintiffs' reports of infringement, including those filed by Incopro, by repeatedly contending that all of Plaintiffs' notice of infringement were defective and failed to provide Cloudflare with actual knowledge of infringement.  *See, e.g.*, CC ¶181 ("Plaintiffs have artfully omitted from their Complaint their defective alleged notifications of infringement to which they have referred"); ¶105 ("Plaintiff Allure Bridals had not sent Cloudflare any

notifications of claimed copyright infringement that contained all necessary elements of a valid notification under Section 512(c)"); ¶107 ("Plaintiff Justin Alexander had not sent Cloudflare any notifications of claimed copyright infringement that contained all necessary elements of a valid notification under Section 512(c)"); ¶207 ("Cloudflare has no actual knowledge of infringement of Plaintiffs' works by Does 1-200 based upon the accusations by Plaintiffs").

Here, Incopro's notices of infringement to Cloudflare, which are incorporated by reference into the Counterclaims, "trump" the misleading allegations contained in the Counterclaims regarding Plaintiffs' exclusive reliance upon Counterfeit Technologies. *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012). Hence, Cloudflare's professed basis for this Court to exercise jurisdiction over the Counterclaims is premised upon demonstrably untrue assertions of fact.

## CONCLUSION

For the above stated reasons, Plaintiffs' motion to dismiss the Counterclaims should be granted, and Plaintiffs afforded all additional relief that is proper.

DATED:  May 26, 2020

Respectfully submitted,

s/ Russell Bogart
Russell Bogart (NY #2856078)
Stuart Kagen (NY #SK6496)
(Admitted *Pro Hac Vice*)
**KAGEN & CASPERSEN, PLLC**
757 Third Avenue, 20th Floor
New York, NY 10017
Telephone: (212) 880-2045
Facsimile: (646) 304-7879
Email:  rbogart@kagencaspersen.com
Email:  skagen@kagencaspersen.com

Grady M. Garrison (TN #8097)
Nicole D. Berkowitz (TN #35046)
**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, P.C.**
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Telephone: (901) 526-2000
Facsimile: (901) 577-2303
Email:  ggarrison@bakerdonelson.com
Email:  nberkowitz@bakerdonelson.com

*Attorneys for Plaintiffs-Counterdefendants*
*American Clothing Express, Inc. d/b/a Allure*
*Bridals and Justin Alexander, Inc.*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 26, 2020, a true and correct copy of the foregoing was filed via the Court's CM/ECF system.  Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record.

s/ Russell Bogart_____

Russell Bogart
