# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| AMERICAN CLOTHING EXPRESS, INC., D/B/A ALLURE BRIDALS AND JUSTIN ALEXANDER, INC., <br><br>Plaintiffs,<br><br>v.<br><br>CLOUDFLARE, INC. and DOES 1 - 200, inclusive,<br><br>Defendants. | Case No. 2:20-cv-02007-SHM-dkv |
| CLOUDFLARE, INC.<br><br>Counterclaimant,<br><br>v.<br><br>AMERICAN CLOTHING EXPRESS, INC., D/B/A ALLURE BRIDALS AND JUSTIN ALEXANDER, INC.,<br><br>Counterdefendants. | |

**PLAINTIFFS-COUNTERDEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR LEAVE TO SERVE PROCESS BY <u>SUBSTITUTED SERVICE</u>**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL ALLEGATIONS ........................................................................................................3

    I.     THE PARTIES ........................................................................................................3

         A.   The Plaintiffs – Counterclaim Defendants ..................................................3

         B.   Defendant Counterclaim Plaintiff Cloudflare................................................3

         C.   The Infringing Website Defendants ..............................................................4

    II.    THE COMPLAINT..................................................................................................5

    III.   DISCOVERY REGARDING THE IDENTITIES OF
            THE INFRINGING WEBSITE DEFENDANTS ........................................................6

    IV.   THE CLUSTERS OF INFRINGING WEBSITES.........................................................8

LEGAL ARGUMENT ....................................................................................................................9

    I.     THE LEGAL STANDARDS FOR PERMITTING THE
          SERVICE OF PROCESS BY EMAIL ON FOREIGN
          INDIVIDUALS OR COMPANIES..............................................................................9

    II.    SERVICE BY EMAIL DOES NOT VIOLATE
           INTERNATIONAL AGREEMENT ..........................................................................11

    III.   SUBSTITUTED SERVICE IS PROPER UNDER RULE 4(F)(3) ...............................11

    IV.   SUBSTITUTED SERVICE VIA EMAIL COMPORTS
           WITH CONSTITUTIONAL NOTIONS OF DUE PROCESS....................................13

CONCLUSION.............................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**                                          **Page(s)**

*Chanel, Inc. v. He Zhizhong*,
   2010 U.S. Dist. LEXIS 36478 (W.D. Tenn. March 16, 2010) .......................................... 12, 13

*Chanel, Inc. v. Xu*,
   2010 U.S. Dist. LEXIS 6734 (W.D. Tenn. Jan. 27, 2010) ................................................ 11, 12

*Elcometer, Inc. v. Tqc-Usa, Inc.*,
   2013 U.S. Dist. LEXIS 19874, (E.D. Mich. February 14, 2013) .................................. 9, 10, 13

*FKA Distrib. Co., LLC v. Yisi Tech. Co., Ltd.*,
   2017 U.S. Dist. LEXIS 151679 .................................................................................................. 11

*Gaffigan v. Doe*,
   689 F. Supp.2d 1332 (S.D.Fla. Dec. 7, 2009) ............................................................................. 9

*Gamboa v. Ford Motor Co.*,
   414 F. Supp. 3d 1035 (E.D. Mich. 2019) ................................................................................... 11

*KPN B.V. v. Corcyra D.O.O.*,
   2009 U.S. Dist. LEXIS 20906, (S.D.N.Y. Mar. 16, 2009) ......................................................... 11

*NOCO Co. v. Khaustov*,
   2019 U.S. Dist. LEXIS 151413, (N.D. Ohio September 5, 2019) ............................................. 10

*Philip Morris USA, Inc. v. Veles Ltd.*,
   2007 U.S. Dist. LEXIS 19780, (S.D.N.Y. Mar. 12, 2007) ......................................................... 12

*Popular Enters., LLC v. Webcom Media Grp., Inc.*,
   225 F.R.D. 560 (E.D. Tenn. 2004) .............................................................................................. 2

*Slay v. IB Travelin, Inc.*,
   No. 2:18-cv-02728, 2019 U.S. Dist. LEXIS 22554, (W.D. Tenn. Feb. 12, 2019) .................... 10

*Sulzer Mixpac AG v. Medenstar Indus. Co.*,
   312 F.R.D. 329 (S.D.N.Y. Nov. 27, 2015) ................................................................................. 11

**Statutes and Rules**

Federal Rule of Civil Procedure 4(d)(1) ........................................................................................ 8
Federal Rule of Civil Procedure 4(f) .............................................................................. 1, 9, 10, 11
Federal Rule of Civil Procedure 4(f)(1) ...................................................................................... 10
Federal Rule of Civil Procedure 4(f)(2) ...................................................................................... 10
Federal Rule of Civil Procedure 4(f)(3) ............................................................................ 1, 10, 11

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiffs-Counterdefendants American Clothing Express, Inc. d/b/a Allure Bridals ("Allure") and Justin Alexander, Inc. ("Justin," together with Allure, "Plaintiffs") submit this memorandum of law in support of their Motion for Leave to Serve Process by Substituted Service via email upon the ninety-six ("96") Infringing Website Defendants identified in Exhibit 1, attached to the Declaration of Russell Bogart ("RB Decl."), at the email addresses identified therein.

## PRELIMINARY STATEMENT

Plaintiff wedding and prom dress manufacturers are pitted in a seemingly hopeless match of "whack-a-mole" against foreign infringers and counterfeiters who have engaged in the systematic misappropriation of Plaintiffs' product images to display infringing copies of them on websites used to sell knock-off dresses ("Infringing Websites"). These offshore Internet store operators typically provide incomplete and/or false names and physical addresses in internet registrars to conceal their identities and to avoid liability for their misconduct. Because the Infringing Websites are hosted in far-flung jurisdictions where enforcement by Plaintiffs of their copyrights at a minimum is difficult, Plaintiffs' notifications of infringement sent to the hosts of the Infringing Websites or the Infringing Website Defendants themselves often are disregarded.

With the permission of the Court, Plaintiffs have engaged in early discovery to uncover the identity of these infringers, and at least to develop sufficient information to effectuate service of process upon them. Plaintiffs' investigation has uncovered the following information:

***First***, Plaintiffs have learned that many of the 96 websites listed in Exhibit 1 had provided the *same* email addresses and/or physical addresses to the defendant Cloudflare, Inc. ("Cloudflare"). Thus, while the 96 websites ostensibly appear to be distinct fronts for different online stores – with each distinct website individually being a repeat infringer who has repeatedly

1

ignored complaints of infringement – in actuality the majority of the websites are parts of clusters controlled by the same group of persons, as confirmed by Cloudflare's own records.

***Second***, Plaintiffs have determined that each of the physical addresses provided by the 96 websites to Cloudflare – to the extent any address was provided – constitutes a phony physical address in China.

***Third***, subscription, header and "ip log" information for some of the email addresses associated with these websites, indicate that some of the email accounts apparently have been accessed within the United States and Western European countries at points in time.  In other words, although many of the websites appear to be hosted on servers located within in China and other South East Asian countries, there is evidence that the still unidentified persons involved with the operation and/or control of at least some of the websites, at the least, travel to Western Europe or the United States.  In short, while the Infringing Websites appear to be hosted mainly on servers located within China or South Eastern Asia, it is questionable as to whether the persons operating and controlling the Infringing Websites, and the entire counterfeiting operations, are truly or exclusively residents of China or other South East Asian countries.

"When faced with an international e-business scofflaw, playing hide-and-seek with the federal court, e-mail may be the only means of effecting service of process." *Popular Enters., LLC v. Webcom Media Grp., Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004).  For the reasons expanded upon below, electronic service upon the 96 e-business scofflaws identified in Exhibit 1 is proper.

# FACTUAL ALLEGATIONS

## I. THE PARTIES

### A. The Plaintiffs – Counterclaim Defendants

Plaintiffs manufacture wedding and prom dresses. Plaintiffs invest hundreds of thousands of dollars per year on photoshoots of models wearing their dresses (the "Plaintiffs' Images") and on the advertisement of the Plaintiffs' Images (CMP ¶ 37, 42).[1] Plaintiffs' websites serve to display their entire catalog of product, as shown in the Plaintiffs' Images, and to refer brides to stores in their local markets, as Plaintiffs' wedding dresses are not available for sale online (CMP ¶ 41). The Plaintiffs' Images constitute an integral part of their brand identity (CMP ¶ 44).

### B. Defendant Counterclaim Plaintiff Cloudflare

The 98 Infringing Website Defendants sued here – as identified in Schedule A to the Complaint – all were optimized by Cloudflare's content delivery network during the relevant time period.[2]

Cloudflare is a web performance and security company that provides a Content Delivery Network ("CDN"), web content optimization, website security, denial of service protection, and a managed domain name system network ("DNS"). A CDN refers to a geographically distributed group of servers which work together to provide the fast delivery of Internet content. Cloudflare's marketing materials explain how Cloudflare's CDN improves the speed of the delivery of images from websites hosted in far-flung places to the United States (CMP ¶¶ 96-99).

---

[1] "CC" followed by "¶" refers to paragraphs of the Counterclaims; "A" followed by ¶ refers to paragraphs of the Answer and "CMP" followed by ¶ refers to paragraphs of the Complaint.

[2] These 98 websites are a subset of the infringing websites that Plaintiffs have identified using Cloudflare's services over the last four years, much less the universe of such infringing websites. The website bride2bride.co.uk returned the request to waive service of process and therein agreed to accept service of process. Additionally, Plaintiffs are serving process upon a director for an entity identified on the domain dresseshop.co.uk. Hence, Plaintiffs only need to effectuate service of process with respect to 96 of the 98 websites originally identified in Schedule A to the Complaint.

A CDN improves the latency of a website "by pulling static content files from the origin server into the distributed CDN network in a process called caching" (A ¶ 54). Once the data is cached, the CDN may serve the content to the customer from the closest CDN data center instead of the origin server, which could be located thousands of miles away.

Cloudflare also provides a managed "domain name system" to its clients. Cloudflare requires its customers to name two Cloudflare nameservers as the authoritative nameservers for their website domain. When Cloudflare provides authoritative name server service for a customer's website Cloudflare causes ISPs to route initial DNS lookups for that website to a Cloudflare data center, as opposed to the host server for the customer's website (A ¶ 63). For Cloudflare's customers, the initial DNS lookup for a domain that an Internet user seeks to reach will generally automatically return the IP address of a Cloudflare data center (A ¶ 64).

Cloudflare refuses to terminate the accounts of infringers absent the presentment of a judicial order adjudicating the accountholder to be an infringer. Thus, when Cloudflare receives notifications that certain subscribers are repeatedly transmitting specific infringing material through its network, Cloudflare simply passes on the notice of infringement to the infringer, and the company hosting the infringement, even when Cloudflare knows that these parties will not respect copyrights.

### C. The Infringing Website Defendants

Plaintiffs have been victimized by a massive and unrelenting copyright infringement and counterfeiting scheme perpetrated by the Infringing Website Defendants who are exploiting the Plaintiffs' Images to sell cheap imitations of Plaintiffs' gowns through the internet (CMP ¶ 46). The Infringing Website Defendants infringe the Plaintiffs' Images for the purpose of knowingly and willfully manufacturing, importing, distributing, offering for sale and selling grossly inferior

"knock-offs" of the Plaintiffs' dresses which the Infringing Website Defendants pass off as the Plaintiffs' authentic dresses (CMP ¶ 47). The Infringing Websites prominently post the Infringing Images on the home page of the Infringing Websites and/or in galleries of dresses available for sale, along with providing a detailed product description to pose as authorized online retailers, outlet stores or wholesalers selling genuine Plaintiffs' products (CMP ¶ 48).

The vast majority of the Infringing Websites are hosted on servers located in the People's Republic of China, or in other foreign jurisdictions located in South East Asia, or on offshore servers that advertise their non-compliance with U.S. copyright laws. All of the Infringing Websites have been and/or are optimized by Cloudflare's services to make the website accessible to consumers in the United States, including within the State of Tennessee.

The full list of Infringing Websites sued by Plaintiffs is contained in Schedule A annexed to the Complaint. Additionally, Exhibit 5 to the Complaint sets forth for each domain, a side-by-side display of each of the Plaintiffs' copyrighted images with the corresponding Infringing Image that had been reported to Cloudflare, along with the copyright registration, URL and DMCA reporting information.

## II. THE COMPLAINT

Plaintiff wedding and prom dress manufacturers filed suit against Cloudflare claiming that Cloudflare's content delivery network ("CDN") and domain name services ("DNS") materially aid counterfeiters ("Infringing Website Defendants") engaged in the systematic misappropriation of Plaintiffs' product images to display infringing copies of them on websites used to sell knock-off dresses ("Infringing Websites"). Plaintiffs contend that Cloudflare materially aids the infringement by speeding up the delivery of the images from the Infringing Websites hosted thousands of miles away to internet users in the United States. When Cloudflare receives

notifications that certain subscribers are repeatedly transmitting specific infringing material through its network, Cloudflare simply passes on the notice of infringement to the infringer, and the company hosting the infringement, even when Cloudflare knows that these parties will not respect copyrights.

Plaintiffs allege that Cloudflare materially contributes to the ongoing infringement because: i) it knows of specific infringement due to its receipt of Plaintiffs' complaints of infringement; ii) it materially assisted that infringement by enabling the Infringing Website Defendants to cache on Cloudflare's domestic servers the Infringing Images and by significantly speeding up the load-times of the Infringing Websites; and iii) it refused to take the simple measure of terminating its service provided to the infringers.

Specifically, Plaintiffs' Complaint contains two claims for relief. The First Claim for Relief consists of a claim of direct copyright infringement against the Infringing Website Defendants. The Second Claim for Relief asserts a claim of contributory copyright infringement against Cloudflare.

### III. DISCOVERY REGARDING THE IDENTITIES OF THE INFRINGING WEBSITE DEFENDANTS

On April 10, 2020, the parties filed a joint motion: i) for an extension of time for the Plaintiffs to respond to Cloudflare's Counterclaims; ii) for leave for Plaintiffs to conduct limited early discovery to gain contact information regarding Does 1-200 for purposes of service of process, and for special treatment of interrogatories pertaining to multiple Doe defendants; and iii) for limited relief from case management activities until Plaintiffs answer Cloudflare's Counterclaims.

The Joint Motion provided that Plaintiffs may serve an interrogatory seeking that Cloudflare disclose the last-known name, physical address and email address (to the extent known

by Cloudflare) for each of the ninety-eight (98) websites identified in Schedule A to the Complaint. Cloudflare agreed within "21 days of receipt said interrogatories [to] use reasonable efforts to prove notice of the relevant interrogatory to each of the Does 1-200, by email to the last known contact email address of each that Cloudflare has, and indicate Cloudflare's intent to produce the requested information for each Doe unless the Doe seeks a protective order preventing disclosure within 14 days of the notice from Cloudflare (or within any further time the Court may grant)." Cloudflare also agreed to produce the requested contact information in its possession within sixty days from Cloudflare's receipt of the interrogatory as to any Doe that did not timely seek a protective order.

With respect to the Confidentiality of the responses provided, the Joint Motion provided:

10. In the event that no protective order generally governing confidential information has been entered in the case by the time of Cloudflare's production of information pursuant to paragraphs 8 and/or 9 of this Stipulation, any information designated as "Confidential" by Cloudflare shall be treated as "Confidential" in accordance with the terms of the proposed protective order circulated by counsel for Cloudflare on April 2, 2020 until the Court enters a protective order generally governing confidential information in this case. Upon the entry of a protective order generally governing confidential information in this case, that protective order shall govern the use of any information produced by Cloudflare that has been designated as "Confidential.

On June 23, 2020, Cloudflare answered Interrogatory Number 1 by providing a list of the emails and physical addresses provided to Cloudflare in association with each of the websites identified in Schedule A. On July 16, 2020, Cloudflare agreed to "downgrade the response to Interrogatory No. 1 to confidential." Consequently, Plaintiffs must file under seal, the service of process information to be used for these websites, unless the Court rules that the email addresses should not be confidential.

An investigator for Plaintiffs has determined that each of the physical addresses provided by the Infringing Website Defendants to Cloudflare was either fictitious, or so incomplete to be useless in identifying the operator of the website.  *See* RB Decl. ¶¶ 17-18.

Plaintiffs subsequently served document subpoenas upon Microsoft and Google to obtain "all reasonably available subscriber and login IP address information" and "all non-content email header information" pertaining to various Gmail and Hotmail email addresses associated with the Infringing Websites.  *See* RB Decl. ¶¶ 40.  Google and Microsoft responded to these document subpoenas on or about September 14, 2020 and October 15, 2020.

On August 12, 2020, pursuant to Fed. Rule. Civ. Pro. 4(d)(1), Plaintiffs sent notices requesting that the owners of the infringing websites waive service of process to every email provided by Cloudflare. 44 of these email addresses (the "Cloudflare Email Addresses"), corresponding to 93 Infringing Domains, were not returned as undeliverable, thus confirming that these email addresses remain active.  Significantly, before Plaintiffs had confirmed that the Cloudflare email addresses were still active, Cloudflare had sent a notification to each of the Cloudflare email addresses to forewarn that Cloudflare was required to disclose the email and physical addresses related to the Infringing Websites.

## IV. THE CLUSTERS OF INFRINGING WEBSITES

Thirty-five (35) of the 98 websites sued by Plaintiffs provided to Cloudflare the "3975" email address.  In other words, while these thirty five website ostensibly appear to be unrelated, Cloudflare's records showed that each of them was operated or controlled by the same person or entity.  *See* RB Decl. ¶¶ 19-24.

Another 11 websites of just the 98 sued, are part of the "Bethany" Cluster.  According to Plaintiffs' investigation, the Bethany Cluster consists of more than 30 infringing websites in

8

total, based upon the common layout of the websites, registrant information and email addresses used.  *See* RB Decl. ¶¶ 25-32.

Cloudflare's Interrogatory Answer also reveals that another six websites – of just the 98 sued by Plaintiffs – are part of what Plaintiffs refer to as the "Diamond Hill Cluster."  These six websites are part of a cluster of more than twenty websites many of which have been traced to an IP Address whose owner is listed in registrars as "HK Diamond Hill."  In addition to seeking to effectuate service upon the six Diamond Hill websites through the active email address provided by Cloudflare, Plaintiffs also seek to effectuate service upon them through active email addresses displayed by Diamond Hill Cluster websites.  *See* RB Decl. ¶¶ 33-39.

## LEGAL ARGUMENT

### I. THE LEGAL STANDARDS FOR PERMITTING THE SERVICE OF PROCESS BY EMAIL ON FOREIGN INDIVIDUALS OR COMPANIES

Plaintiffs seek to serve the Doe(s) responsible for the operation of each of the Infringing Websites identified in Exhibit 1.  Plaintiffs do not know the true names of the individuals or entities operating the Infringing Websites, much less their true physical addresses, due to their use of fictitious names and addresses to conceal their true identities.  However, for 96 Infringing Websites identified in Exhibit 1, Plaintiffs have obtained valid, active and reliable email addresses used by these Does to operate the Infringing Websites.  *See, e.g., Gaffigan v. Doe*, 689 F. Supp.2d 1332 (S.D. Fla. Dec. 7, 2009) (suit brought against the owners, whose names are currently unknown, of various websites engaged in infringement).

Service here must comport with the requirements of Rule 4(f) whether the Does are considered to be entities or individuals because Rule 4(h)(2) of the Federal Rules of Civil Procedure authorizes service of process on a foreign business entity in the manner prescribed by

9

Rule 4(f) for individuals. *Elcometer, Inc. v. Tqc-Usa, Inc.*, 2013 U.S. Dist. LEXIS 19874, *4 (E.D. Mich. February 14, 2013). In relevant part, Rule 4(f) states:

> Unless federal law provides otherwise, an individual . . . may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice…; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

*NOCO Co. v. Khaustov*, 2019 U.S. Dist. LEXIS 151413, *4, (N.D. Ohio September 5, 2019).

Rule 4(f)(3) provides the only means by which the Does can be served here, because Rule 4(f)(1) and (2) are inapplicable here. "[S]ervice under Rule 4(f)(3) is permissible if (1) directed by the Court; and (2) not prohibited by international agreement. *Elcometer, Inc. v. Tqc-Usa, Inc.*, 2013 U.S. Dist. LEXIS 19874, *4, (E.D. Mich. February 14, 2013). Service cannot be made pursuant to Rule 4(f)(1) – which permits service by any "internationally agreed means of service…" – because the Does' country of residence much less physical addresses are not known. *See* Hague Convention, November 15, 1965, Article I. Hague Convention Art. I, Nov. 15, 1965, 20 U.S.T. 361 (stating that the "Convention shall not apply where the address of the person to be served with the document is not known"). Likewise, Rule 4(f)(2) is inapplicable because it is not possible to serve process via means "prescribed by the foreign country's law" without knowing where the Infringing Website Defendants reside. *See* Fed. R. Civ. P. 4(f)(2).

"There is no hierarchy or preference among Rule 4(f)'s methods of service," and the rule does not require plaintiffs to engage in attempts at service that would prove futile. *Slay v. IB Travelin, Inc.*, No. 2:18-cv-02728, 2019 U.S. Dist. LEXIS 22554, at *5-7 (W.D. Tenn. Feb. 12,

10

2019). Service by alternate means under Rule 4(f)(3) "is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant." *KPN B.V. v. Corcyra D.O.O.*, 2009 U.S. Dist. LEXIS 20906, *3 (S.D.N.Y. Mar. 16, 2009); *Gamboa v. Ford Motor Co.*, 414 F. Supp. 3d 1035, 1039 (E.D. Mich. 2019) (finding that substituted service under Rule 4(f)(3) is neither a last resort nor extraordinary relief).

## II. SERVICE BY EMAIL DOES NOT VIOLATE INTERNATIONAL AGREEMENT

Rule 4(f)(3) requires that the proposed means of service are "not prohibited by international agreement." The Hague Convention on the Service Abroad of Judicial and Extrajudicial documents in Civil or Commercial Matters ("Hague Convention") is commonly cited as such an international agreement. However, Article I provides that the Hague Convention does "not apply where the address of the person to be served with the document is not known," as here. *Chanel, Inc. v. Xu*, 2010 U.S. Dist. LEXIS 6734, *9 (W.D. Tenn. Jan. 27, 2010). Here, Plaintiffs attempted to verify the physical addresses that each of the domains provided to Cloudflare and determined them to be fraudulent. Because the addresses of Defendants are not known, the Hague Service Convention does not apply to the present suit. *Id*.

Additionally, even if the Hague Convention applied – which it does not – multiple courts have generally "held that the Hague Convention allows service by email." *FKA Distrib. Co., LLC v. Yisi Tech. Co., Ltd.*, 2017 U.S. Dist. LEXIS 151679, *4 (allowing service by email upon a defendant in China), *citing approvingly to*, Sulzer Mixpac AG v. Medenstar Indus. Co., 312 F.R.D. 329, 332, (S.D.N.Y. Nov. 27, 2015) ("China's objection to service by postal mail in the Hague Convention does not cover service by email").

## III. SUBSTITUTED SERVICE IS PROPER UNDER RULE 4(F)(3)

"By design, Rule 4(f)(3) was adopted in order to provide flexibility and discretion to the federal courts" regarding methods of substituted service on foreign defendants. *Philip Morris*

11

*USA, Inc. v. Veles Ltd.*, 2007 U.S. Dist. LEXIS 19780, at *8 (S.D.N.Y. Mar. 12, 2007). "As e-mail has become more prevalent, courts have not hesitated to allow service by e-mail, especially when the defendant lives abroad and is avoiding service." *Chanel, Inc. v. He Zhizhong*, 2010 U.S. Dist. LEXIS 36478, *3 (W.D. Tenn. Mar. 16, 2010). "Service by e-mail is especially appropriate in this case, as it appears Defendants conduct most or all of their business over the internet and deal with customers via e-mail." *Chanel, Inc. v. He Zhizhong*, 2010 U.S. Dist. LEXIS 36478, *4.

*Chanel, Inc. v. Xu* proves instructive. No. 2:09-cv-02610-cgc, 2010 U.S. Dist. LEXIS 6734 (W.D. Tenn. Jan. 27, 2010). In *Chanel*, plaintiff alleged that a number of Chinese defendants committed trademark and copyright infringement by promoting and selling replicas of plaintiff's products online. Through private investigation, plaintiffs uncovered a number of emails and fragments of physical addresses associated with the defendants, though it was determined that the physical addresses were invalid and fraudulent. Plaintiff thereafter sent pretextual emails to email addresses associated with the websites, and as the emails were not returned as undeliverable it was determined that the email addresses were a valid means of communication with defendants. Ultimately, as these emails constituted the most likely means of communicating with the defending online retailers, the Court found that substituted service via email comported with due process of law and ordered that Defendants be served via email. *Id.*

The case at hand follows the exact same pattern, merely with a larger number of infringing Defendants. Plaintiffs have identified a number of websites that have committed copyright infringement by promoting and selling replicas of its products online. Through information produced by Cloudflare, Plaintiffs have developed a list of email addresses used by the Infringing Domains to conduct their online businesses. This list of emails has been further supplemented by

Plaintiffs' own investigation to add additional emails associated with the Infringing Domains. Plaintiffs have further investigated the fragments of physical addresses provided by Cloudflare and have found them to be incomplete and unusable. Finally, Plaintiffs have confirmed that the email addresses are still active through their request for the Infringing Domains to waive service. Taken as a whole, the active email addresses used by the Infringing Domains constitutes the most likely means of apprising Defendants of this action, and thereby comports with the due process requirements of service.

### IV. SUBSTITUTED SERVICE VIA EMAIL COMPORTS WITH CONSTITUTIONAL NOTIONS OF DUE PROCESS

A method of service of process must also comport with constitutional notions of due process. "To meet this requirement, the method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Chanel, Inc. v. He Zhizhong*, 2010 U.S. Dist. LEXIS 36478, *4 (W.D. Tenn. March 16, 2010).

Here, Plaintiffs seek permission to serve process upon 96 of the Does per the Cloudflare Email Addresses. Significantly, these are the email addresses that these Does used to operate their websites on Cloudflare. Moreover, before Plaintiffs confirmed that these email addresses were active, Cloudflare had sent a notification to the Cloudflare Email Addresses forewarning that Cloudflare had been required to turnover this contact information. Accordingly, service via these emails is therefore reasonably calculated to provide notice of this litigation. *Elcometer, Inc. v. Tqc-Usa, Inc.*, No. 12-cv-14628, 2013 U.S. Dist. LEXIS 19874, at *7 (E.D. Mich. Feb. 14, 2013) (finding that service via email was appropriate where defendants conducted their business on the internet and plaintiffs emails regarding the waiver of service were not returned as undeliverable).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Leave to Serve Process by Substituted Service.

DATED: October 29, 2020

        Respectfully submitted,

        s/ Nicole D. Berkowitz
        Russell Bogart (NY #2856078)
        Stuart Kagen (NY #SK6496)
        (Admitted *Pro Hac Vice*)
        **KAGEN, CASPERSEN & BOGART, PLLC**
        757 Third Avenue, 20th Floor
        New York, NY 10017
        Telephone: (212) 880-2045
        Facsimile: (646) 304-7879
        Email: rbogart@kcbfirm.com
        Email: skagen@kcbfirm.com

        Grady M. Garrison (TN #8097)
        Nicole D. Berkowitz (TN #35046)
        **BAKER, DONELSON, BEARMAN,**
        **CALDWELL & BERKOWITZ, P.C.**
        165 Madison Avenue, Suite 2000
        Memphis, TN 38103
        Telephone: (901) 526-2000
        Facsimile: (901) 577-2303
        Email: ggarrison@bakerdonelson.com
        Email: nberkowitz@bakerdonelson.com

        *Attorneys for Plaintiffs-Counterdefendants*
        *American Clothing Express, Inc. d/b/a Allure*
        *Bridals and Justin Alexander, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2020, a true and correct copy of the foregoing was filed via the Court's CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record.

s/ Nicole D. Berkowitz<br>Nicole D. Berkowitz