# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| AMERICAN CLOTHING EXPRESS, INC., D/B/A ALLURE BRIDALS AND JUSTIN ALEXANDER, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CLOUDFLARE, INC. and DOES 1 - 200, inclusive, <br><br> Defendants. <br><br> CLOUDFLARE, INC. <br><br> Counterclaimant, <br><br> v. <br><br> AMERICAN CLOTHING EXPRESS, INC., D/B/A ALLURE BRIDALS AND JUSTIN ALEXANDER, INC., <br><br> Counterdefendants. | **Case No. 2:20-cv-02007-SHM-atc** <br><br> **CLOUDFLARE'S RESPONSE TO PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST NINETY-FOUR WEBSITE DEFENDANTS** |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ........................................................................................................................ 5

I. Entering Default Judgment Against the Website Defendants Would Be Inappropriate Because It Would Create the Risk of Inconsistent Results. ................................. 5

II. Denial of Plaintiff's Motion for Default Judgment Would Not Limit Plaintiffs' Stated Goal of Obtaining Provisional Relief Against Doe Defendants. ....................... 9

III. If the Court Decides to Issue a Default Judgment, The Judgment Should State Expressly That It Has No Preclusive Effect on Cloudflare. ............................................. 10

CONCLUSION ................................................................................................................... 11

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Bonds v. Tennessee*,
 2:21-CV-02213-MSN-cgc, 2021 WL 3713059 (W.D. Tenn. Aug. 20, 2021) ........................ 6, 7

*Est. of Lockner v. Clouse*,
 No. 2:19-CV-220, 2021 WL 2154163 (E.D. Tenn. May 5, 2021) ........................................... 5

*Est. of Lockner v. Washington Cty.*,
 No. 2:19-CV-220-DCLC-CRW, 2021 WL 2143128 (E.D. Tenn. May 26,
 2021) ..................................................................................................................................... 5

*Fabric Selection, Inc. v. NNW Import, Inc.*,
 No. 2:16-CV-08558-CAS(MRWx), 2017 WL 10378499 (C.D. Cal. Aug. 21,
 2017) ..................................................................................................................................... 8

*Feist Publications, Inc. v. Rural Telephone Serv.*,
 499 U.S. 340 (1991) ............................................................................................................ 10

*Frow v. De La Vega*,
 82 U.S. 552 (1872) ............................................................................................................ 6, 7

*In re Uranium Antitrust Litigation*,
 617 F.2d 1248, 1257 (7th Cir. 1980) .................................................................................... 7

*Kimberly v. Coastline Coal Corp.*,
 857 F.2d 1274, 1988 WL 93305 (6th Cir. 1988) .................................................................. 6

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
 545 U.S. 913 (2005) .............................................................................................................. 7

*Nautilus Ins. Co. v. I.L.S. Gen. Contractors, Inc.*,
 369 F. Supp. 2d 906 (E.D. Mich. 2005) ................................................................................ 7

*Sprint Sols., Inc. v. Lafayette*,
 No. 15-cv-2595-SHM, 2016 WL 11529980 (W.D. Tenn. Apr. 13, 2016) ............................ 7

*United Fabrics Int'l, Inc. v. Life N Style Fashions, Inc.*,
 No. 2:15-CV-05733-ODW (Ex), 2015 WL 7454512 (C.D. Cal. Nov. 23,
 2015) ..................................................................................................................................... 8

*Univ. Furn. Int'l, Inc. v. Collezione Europa USA, Inc.*,
 618 F.3d 417 (4th Cir. 2010) .............................................................................................. 10

**STATUTES**

Digital Millennium Copyright Act .............................................................................................. 1

# TABLE OF AUTHORITIES
## (CONTINUED . . . )

**OTHER AUTHORITIES** **PAGE(S)**

10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
 § 2690 (4th ed. 2021)..................................................................................................5

Compendium of U.S. Copyright Office Practices § 309.2 (3d ed. 2021) ....................................10

Fed. R. Civ. Proc. 54(b)...................................................................................................5, 10

**INTRODUCTION**

While Cloudflare has no objection to Plaintiffs' efforts to secure rapid and effective relief against defaulting defendants, Cloudflare opposes the mechanism that Plaintiffs propose. The default judgment Plaintiffs seek presents a risk of inconsistent rulings not just about damages, but also liability. Cloudflare therefore asks the Court to deny Plaintiffs' motion.

This is a copyright case. Plaintiffs are two wedding and formal dress vendors whose complaint at its core is that certain Doe defendants allegedly sold knockoff versions of their dresses online. Although copyright law generally does not protect clothing designs, Plaintiffs allege that the websites infringed Plaintiffs' copyrights in photographs of the dresses that appeared on the websites. Rather than suing only the operators of the websites on which the images allegedly appeared (as they have in other cases), Plaintiffs have also added a claim of contributory copyright infringement against Cloudflare, a cybersecurity company that protects tens of millions of websites from malicious attacks. Through that claim, Plaintiffs seek to hold Cloudflare liable for the same alleged infringements that the Doe defendants allegedly committed.

Plaintiffs' contributory infringement claim will likely involve questions that are unique to Cloudflare, including Cloudflare's role in the Internet infrastructure and its qualification for safe harbors under the Digital Millennium Copyright Act. But in the first instance, the contributory infringement claim will involve threshold questions of whether Plaintiffs can prove valid ownership of their copyrights and direct infringement by Cloudflare customers—questions underlying the claims against both Cloudflare and the Doe defendants. Plaintiffs may not use non-litigated, default judgments against Does as substitutes for actual proof of underlying infringements in their claim against Cloudflare. Cloudflare has the right to defend every element of the claim against it, including challenging whether Plaintiffs have proved underlying

1

infringements. As a result, the piecemeal judgment Plaintiffs seek presents an obvious risk of inconsistent results: a judgment may determine that Doe No. 1 committed direct infringement of a valid copyright, while the outcome as to Cloudflare may determine that the same copyright was *invalid*, or that Doe No. 1 did *not* infringe. Accordingly, a final judgment against non-Cloudflare defendants, even as to liability only, should await conclusion of all issues in the claim against Cloudflare.

This does not mean that Plaintiffs are without recourse now against the Doe defendants. Plaintiffs' legitimate interests may call for a preliminary injunction or other interim relief against the defaulting defendants, like the preliminary injunctions Plaintiffs have obtained in other cases. Indeed, the TRO application Plaintiffs filed just last week (Dkt. 80) illustrates this point. Plaintiffs can shut down websites through injunctions that require domain registrars to suspend or transfer domain names, or that require hosting providers to turn off infringing websites—steps that Cloudflare, which does not control and cannot remove content from websites, *cannot* take. Those actions can have immediate effect to accomplish Plaintiffs' goals, and they require no court judgment at this time.

## FACTUAL BACKGROUND

Plaintiffs import and sell wedding or other special-occasion dresses through retail dress shops in the United States. They are members of the American Bridal and Prom Industry Association (ABPIA). Alongside ABPIA and its members, Plaintiffs have brought numerous lawsuits in federal courts against hundreds of website owners or operators that allegedly use the plaintiffs' brands or images to sell knockoff dresses. ABPIA has publicized its success, claiming to have shut down over 2,000 websites through litigation. The lawsuits follow a common pattern: (1) complaints identify websites alleged to have infringed trademarks or copyrights, (2) the

plaintiffs obtain TROs against the websites, (3) the plaintiffs obtain expedited discovery through subpoenas to websites' various service providers, (4) the plaintiffs freeze financial accounts of the websites, (5) the plaintiffs obtain addresses of the websites and serve them with process, (6) the plaintiffs obtain preliminary injunctions blocking the websites and transferring control of their finances and domain names, and (7) the plaintiffs obtain default judgments and permanent injunctions putting the websites out of business.

For whatever reason, in this lawsuit Plaintiffs have pursued a different approach. First, in addition to suing the accused website operators for direct infringement, Plaintiffs added a claim for contributory infringement against Cloudflare for providing services to those websites. They did so even though Cloudflare does not host websites and cannot remove content or websites from the Internet. Nevertheless, Plaintiffs seek to hold Cloudflare and the website operators liable for the same alleged infringements.

Second, Plaintiffs skipped the TRO/preliminary injunction step (with the recent exception of the TRO application Plaintiffs filed after filing this motion), and they instead ask the Court to move directly to issuing default judgments, but only as to liability. Plaintiffs claim that they seek this unusual relief because they seek to use the judgments to obtain "provisional" remedies while this case proceeds. But Plaintiffs' recent TRO application (Dkt. 80) illustrates why that is not the case. Plaintiffs have also sought provisional remedies without default judgments in many prior cases. *See, e.g.*, *Am. Bridal & Prom Ind. Assoc., Inc. et al. v. Weddingshopevansville.com et al.*, US Dist. N.J., Case No. 3:13-cv-05544(FLW)(LHG), Dkt. No. 28; *Am. Bridal & Prom Ind. Assoc., Inc. et al. v. Moncherybridal.com et al.*, US Dist. N.J., Case No. 3:12-cv-07079(FLW)(LHG), Dkt. Nos. 14 and 25; *Am. Bridal & Prom Ind. Assoc., Inc. et al. v. Weddingshoparizona.com et al.*, US Dist. N.J., Case No. 3:13-cv-4081(FLW)(LHG), Dkt. No. 22; *Am. Bridal & Prom Ind. Assoc., Inc.*

*et al. v. 2016dressforprom.com et al.*, US Dist. N.J., Case No. 3:16-cv-08272(AET)(LHG), Dkt. No. 13; *Am. Bridal & Prom Ind. Assoc., Inc. et al. v. Affordablebridal.com et al.*, US Dist. N.J., Case No. 3:14-cv-02311(AET)(LHG), Dkt. No. 26; *Justin Alexander, Inc. v. John Does 1-72*, US Dist. N.D. Ill. (Eastern Div.), Case No. 17-cv-04402(ARW)(SEC), Dkt. No. 29; *Justin Alexander, Inc. v. Jack Chan, et al.*, US Dist. N.D. Ill. (Eastern Div.), Case No. 1:15-cv-10089(SJC)(MTM), Dkt. No. 36. In these cases, part of the provisional relief Plaintiffs received included shutting down websites accused of infringement, and engaging in third-party discovery to determine the identities and finances of the website operators. This is the same type of provisional relief that Plaintiffs appear to seek in this lawsuit.

Plaintiffs' motion does not explain why they have not sought TROs or preliminary injunctions earlier in this case, or why such orders would not provide the relief they seek. Plaintiffs state that they seek default judgments to allow them to pursue third-party discovery regarding the website defendants (Mot. at 16), but Plaintiffs have already been issuing subpoenas to the website defendants' internet service providers for the past several months, and they have received extensive materials in response to those subpoenas. Plaintiffs also state that they seek default judgments in order to obtain provisional remedies (presumably the termination of any websites that have not already been terminated by the hosting providers), but those provisional remedies are traditionally sought through preliminary injunctions, and Plaintiffs have in fact obtained these remedies through preliminary injunctions in the cases cited above. Because Plaintiffs seek default judgment only as to 94 of the 99 defendants identified in the Complaint (omitting Cloudflare and four remaining website defendants), this judgment would not entirely resolve any issue in this case, nor obviate any stage of the proceedings. Indeed, as to the 94 defendants, Plaintiffs seek only partial judgment—solely as to liability—conceding as they must that they will eventually need to

prove up damages against the Doe Defendants, which will be a complex task. Accordingly, in addition to creating a risk of inconsistent outcomes, as discussed below, the relief Plaintiffs seek ultimately will not promote efficiency.

Plaintiffs also fail to identify any sudden urgency justifying this unusual motion. Many of the website defendants that Plaintiffs accuse in this lawsuit have already ceased operating the allegedly infringing websites. For instance, in the Declaration of Russell Bogart in support of Plaintiffs' motion, Plaintiffs specifically refer to five allegedly infringing websites: Alinagowns.com, Davidsdress.com, Glamchase.com, Izidresssale.com, and JDBridals.org. Bogart Decl. ¶¶ 21-26. As of December 13, 2021, none of those five domain names resolved to the allegedly infringing websites, which appear to have been removed from the Internet.

## ARGUMENT

I. **Entering Default Judgment Against the Website Defendants Would Be Inappropriate Because It Would Create the Risk of Inconsistent Results.**

Because default judgment as to liability against only 94 of the 99 defendants in this litigation would create a risk of inconsistent results, Plaintiffs' request should be deferred until it is possible to resolve the claims against all defendants. Rule 54(b) prohibits entry of judgment against fewer than all parties or claims except where a court expressly finds no just reason for delay. Fed. R. Civ. P. 54(b). Among the well-recognized reasons to deny such piecemeal resolution is a risk of inconsistent rulings. *See, e.g.*, *Est. of Lockner v. Clouse*, No. 2:19-CV-220, 2021 WL 2154163, at *3 (E.D. Tenn. May 5, 2021), report and recommendation adopted sub nom. *Est. of Lockner v. Washington Cty.*, No. 2:19-CV-220-DCLC-CRW, 2021 WL 2143128 (E.D. Tenn. May 26, 2021) (denying motion for default judgment due to risk of inconsistent judgments); 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2690 (4th ed. 2021).

5

This well-established principle applies with equal force to *default* judgments as well as judgments following full litigation. The U.S. Supreme Court cautioned over a century ago that default judgment against fewer than all defendants is improper where it may lead to inconsistent judgments in the same case. *Frow v. De La Vega*, 82 U.S. 552, 554 (1872). In *Frow*, the plaintiff alleged that the defendants engaged in a conspiracy to defraud him. *Id*. at 554. One of the named defendants did not answer the complaint and a default judgment was entered against him. *Id*. The Supreme Court later reversed the entry of a default judgment, explaining that when "there might be one decree of the court sustaining the charge . . . and another decree disaffirming the said charge . . . [s]uch a state of things is unseemly and absurd, as well as unauthorized by law." *Id*. Thus, as a more recent case from this District observed, "*Frow* cautions against allowing the possibility of inconsistent judgments within the same suit." *Bonds v. Tennessee*, 2:21-CV-02213-MSN-cgc, 2021 WL 3713059, at *1 (W.D. Tenn. Aug. 20, 2021).

Adhering to this longstanding principle, courts in the Sixth Circuit decline to enter default judgment against one defendant before judgment is final against all defendants. Indeed, "[i]t is the Sixth Circuit's 'preferred practice' in multi-defendant cases 'to withhold granting default judgment until the trial of the action on the merits.'" *Bonds*, 2021 WL 3713059, at *1–2 (quoting *Kimberly v. Coastline Coal Corp.*, 857 F.2d 1274, 1988 WL 93305, at *3 (6th Cir. 1988)). This rule applies with particular force in cases, like this one, where the theory of the complaint demands that liability for all defendants must be uniform. So, for example, in *Bonds*, default judgment on excessive force claims against a subset of defendants would have been premature before the court addressed the merits of Bonds' claim against the remaining defendants. *Id.* at *2.

Where the merits issue or key factual questions underlying the default judgment are material to the case against a non-defaulting defendant, the prohibition on piecemeal and

inconsistent judgments raised by the United States Supreme Court in *Frow* and the Sixth Circuit in *Bonds* applies. This includes (but is not exclusive to) cases with joint theories of liability. *See Sprint Sols., Inc. v. Lafayette*, No. 15-cv-2595-SHM, 2016 WL 11529980, at *1 (W.D. Tenn. Apr. 13, 2016) (citing *In re Uranium Antitrust Litigation*, 617 F.2d 1248, 1257 (7th Cir. 1980)); *see also Nautilus Ins. Co. v. I.L.S. Gen. Contractors, Inc.*, 369 F. Supp. 2d 906, 908–09 (E.D. Mich. 2005) ("[T]he Court finds that the potential for inconsistent judgments requires denying Nautilus's motion for default judgment.").

Entering default judgment now against Doe defendants creates precisely the risk the Supreme Court cautioned against in *Frow*. Plaintiffs seek default judgment on direct infringement while continuing to litigate a contributory infringement claim against Cloudflare. But direct infringement by the Doe defendants is an *element* of contributory infringement, which Plaintiffs have the burden of proving. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). Plaintiffs also allege that the defaulting websites are jointly and severally liable with Cloudflare. Mot. at 15. For these reasons, Plaintiff's proposal to limit the judgments to the issue of liability does nothing to ameliorate the risk of inconsistent outcomes. Proof of ownership of a valid, registered copyright and proof of direct infringement by the Doe defendants will be necessary elements of Plaintiff's contributory copyright claim against Cloudflare (and against the website defendants omitted from Plaintiffs' motion for default judgment), so entering default judgment on direct infringement for some of the website defendants creates a risk of inconsistent outcomes as the case proceeds. If Cloudflare prevails in any of its defenses concerning invalidity in Plaintiffs' copyright registrations (such as problems with Plaintiffs' chain of title), or noninfringement (through fair use defenses or otherwise), the Court would have to rescind or modify the default judgments as to some or all of the website defendants.

In similar copyright cases, courts have denied motions for default judgment against a subset of alleged infringers. In *United Fabrics Int'l, Inc. v. Life N Style Fashions, Inc.*, the district court reasoned that because the direct and contributory infringement claims against all defendants involved the same design, and the plaintiff had yet to prove a valid copyright in that design, default judgment would be improper and risk inconsistent rulings. No. 2:15-CV-05733-ODW (Ex), 2015 WL 7454512, at *2 (C.D. Cal. Nov. 23, 2015). Similarly, in *Fabric Selection, Inc. v. NNW Import, Inc.*, the court held that entering default judgment for direct infringement would be inappropriate while non-defaulting defendants asserted defenses that included invalidity of the underlying copyrights. No. 2:16-CV-08558-CAS(MRWx), 2017 WL 10378499, at *3 (C.D. Cal. Aug. 21, 2017). Both cases cite several other examples of district courts declining to enter default judgment against one of multiple alleged infringers.

That Cloudflare did not object to the *entry of default* has no bearing on whether to issue the entry of *judgment* at this stage. *See* Mot. at 3–4. While Plaintiffs may have adequately *pleaded* direct infringement, which is all that is required for entry of default, they have yet to *prove* valid ownership, registration, or infringement of their copyrighted materials. *See* Mot. at 12–14. Unlike the entry of default, which is an appropriate administative step when a party failed to respond to a summons (and which may later be set aside), *judgment* should be reserved until the merits are resolved.

Discovery as to the claims against Cloudflare has not even commenced. As the case proceeds, Plaintiffs may ultimately fail to prove their claims of direct infringement, which underlie their contributory infringement claim against Cloudflare. Given the risk of inconsistent results, entering default judgment against the Doe Defendants would be imprudent, and the Court should deny Plaintiff's request for entry of default judgment without prejudice.

8

## II. Denial of Plaintiff's Motion for Default Judgment Would Not Limit Plaintiffs' Stated Goal of Obtaining Provisional Relief Against Doe Defendants.

Plaintiffs state that they seek entry of judgment as to liability for 94 of the 98 website defendants, because they believe doing so "will assist the Plaintiffs in obtaining information from other internet service providers which identifies the operators of these infringing websites, and to potentially seek provisional remedies if the Website Operators are ultimately identified by the Plaintiffs." Mot at 16. But Plaintiffs can pursue that information already. Presently, Plaintiffs can already subpoena third party internet service providers for information (and have done so numerous times in this lawsuit). A default judgment would not enhance that ability.

Default judgments are also unnecessary to obtain provisional remedies. Presumably, the provisional remedy Plaintiffs seek is to have the website defendants shut down—something their web hosts or domain name registrars could accomplish. Were the Court to issue a preliminary injunction against the 94 website defendants ordering that the infringing material on their websites be removed from the originating site or that access to the material on the originating site be disabled, Plaintiffs could serve that order on any internet service provider that hosts the websites, and those internet service providers would presumably be required to disable the websites.

Plaintiffs are familiar with this avenue for relief. In numerous lawsuits filed in recent years, Plaintiffs have sought and obtained preliminary injunctions against websites accused of infringing Plaintiffs' copyrights or trademarks. *See* pp. 3-4, above. Those preliminary injunction orders granted Plaintiffs the same relief they appear to seek here: the ability to commence discovery from third parties, and provisional remedies that included termination of the accused websites.

Because a preliminary injunction offers the more appropriate method of providing provisional relief (which may be subject to modification as the case develops), Cloudflare respectfully suggests that the Court either convert Plaintiffs' motion into a request for preliminary

injunction, or require Plaintiffs to refile their motion as a request for preliminary injunction. That would provide Plaintiffs the relief they ultimately seek without running afoul of Rule 54(b) and creating any prejudice, inefficiency, or risk of inconsistent rulings.

### III. If the Court Decides to Issue a Default Judgment, The Judgment Should State Expressly That It Has No Preclusive Effect on Cloudflare.

If the Court is inclined to grant Plaintiffs' motion for a default judgment, Cloudflare requests that the Court clarify that any judgment it issues at this early point in the case does not have a preclusive effect as to any factual or legal issue that Cloudflare might raise as the case progresses.

There are numerous factual and legal determinations implicitly subsumed within the default judgment that Plaintiffs request, which Cloudflare may later need to challenge. For example, Plaintiffs must prove ownership and validity of any copyright they assert. *Feist Publications, Inc. v. Rural Telephone Serv.,* 499 U.S. 340, 361 (1991) (a copyright plaintiff "must prove . . . ownership of a valid copyright."). In their motion for default judgment, Plaintiffs cite to copyright registrations, which provide rebuttable *prima facie* evidence of ownership and validity—sufficient for a default judgment where the relief is unopposed, but insufficient where there is opposition or reason to doubt the assertions in the registrations. Although a registration certificate creates a rebuttable presumption of validity, the effect is limited, because the Copyright Office "will not conduct its own factual investigation to confirm the truth of the statements made in the application." *See* Compendium of U.S. Copyright Office Practices § 309.2 (3d ed. 2021). "[T]he Copyright Office's practice of summarily issuing registrations . . . counsels against placing too much weight on registrations as proof of a valid copyright." *Univ. Furn. Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 428 (4th Cir. 2010), as amended (Aug. 24, 2010). Cloudflare has raised concerns regarding Plaintiffs' ownership of the copyrights at issue, and

intends to obtain discovery regarding the chain of title for any asserted work. *See* Amended Counterclaims and Answer of Cloudflare, Inc., Dkt. 35 at pp. 36 and 63.

Likewise, to prosecute their claim of contributory infringement by Cloudflare, Plaintiffs must also prove direct infringement by the website defendants. Although none of the website defendants have yet made an appearance in this litigation, Cloudflare reserves the right to defend itself by arguing noninfringement, including fair use, as appropriate.

For these reasons, Cloudflare requests that in default judgment, the Court should explicitly state that the default judgment against the 94 website defendants do not have any preclusive effect as to any factual or legal issue concerning Cloudflare or which Cloudflare may raise.[1]

## CONCLUSION

For the reasons addressed above, Cloudflare respectfully requests that the Court deny Plaintiffs' motion for entry of default judgment, without prejudice to the entry of such judgment upon the conclusion of this litigation.

---

[1] The Court may also want to include similar language concerning the other four defendants not included in Plaintiffs' motion.

Dated:  December 20, 2021

Respectfully submitted,

By: /s/ Andrew P. Bridges
Andrew P. Bridges
(Cal. State Bar: 122761)
Fenwick & West LLP
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Email: abridges@fenwick.com
(Admitted to U.S.D.C., W.D. Tenn.)

Robb S. Harvey
(Tenn. BPR No. 011519)
Waller Lansden Dortch & Davis LLP
511 Union Street, Suite 2700
Nashville, TN  37219
Telephone:  615.850.8859
Email:  robb.harvey@wallerlaw.com

Attorneys for Defendant Cloudflare, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

   */s/ Andrew P. Bridges*
Andrew P. Bridges
