# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

AMERICAN CLOTHING EXPRESS, INC.,
D/B/A ALLURE BRIDALS AND JUSTIN
ALEXANDER, INC.,

Plaintiffs,

v.

CLOUDFLARE, INC. and DOES 1 - 200,
inclusive,

Defendants.

Case No. 2:20-cv-02007-SHM-dkv

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
FOR DEFAULT JUDGMENT AGAINST NINETY-FOUR WEBSITE DEFENDANTS**

In its opposition to Plaintiffs' motion for a default judgment against the Website Defendants, Cloudflare does not dispute that Plaintiffs had transmitted 7,623 notifications to Cloudflare that these Websites had posted Plaintiffs' images on 5,630 distinct URLs. In Exhibit 5 to the Complaint, Plaintiffs furnished for each Website Defendant a side-by-side display of each of the Plaintiffs' copyrighted images with the corresponding Infringing Image that had been reported to Cloudflare, along with the copyright registration, URL, and DMCA reporting information.  Now, twenty-three months after Plaintiffs filed suit, Cloudflare does not introduce a single fact to controvert this compelling evidence of such massive, bad faith infringement.

As wedding dress manufacturers, the Plaintiffs are particularly vulnerable to this widespread infringement, as their high-quality images of models wearing their dresses constitute their primary marketing tool to consumers. The American Bridal Association has filed suits seeking to enjoin the operation of thousands of websites and to freeze their payment accounts. Unfortunately, this tactic has done little to slow down the infringement. The counterfeiters infrequently leave meaningful sums of money in the accounts associated with their misconduct. The infringers' ability to quickly reproduce their websites with different domain names renders the ability to enjoin active websites from operating as an ineffective remedy.

However, Cloudflare stunningly has revealed in this action that out of the ninety-eight Websites selected for inclusion in this lawsuit (out of many more), that sixty-two of them were controlled by four persons, or four networks of persons. Although each Website to the outside world appeared as a distinct internet store front, Cloudflare's internal records revealed that the same individuals were operating large clusters of websites. As Cloudflare knew all along, the Plaintiffs potentially could knock out a significant amount of the infringement by ferreting out and holding accountable perhaps a dozen or so operators of large clusters of infringing websites.

Undoubtedly, the defaulting operators of these websites will "spend, secrete, or otherwise protect their ill-gotten gains… [to] permanently prevent [the Plaintiffs] from being made whole." *Abbott Labs. v. Adelphia Supply United States*, 2020 U.S. Dist. LEXIS 241980 (E.D.N.Y. Dec. 23, 2020) (in a trademark infringement case, declining to delay issuing a final damages award due to the risk of inconsistent judgments because of the risks of collection to the plaintiff). Thus, Plaintiffs now seek to procure judgments as to liability against the defaulting Website Defendants. Plaintiffs will then seek permission to engage in the broader type of discovery afforded to judgment creditors under Fed. Civ. P. Rule 69 to fully identify the operators of these infringing websites, and to locate and attach their assets pending the issuance of a final damages award.[1]

**Upon Balancing The Equities, This Court Should Enter Default Judgments Despite Cloudflare's Speculation About the Possibility Of Inconsistent Judgments.**

Fed. Civ. P. Rule 54(b) provides that where some defendants have defaulted and others have not, "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Courts often consider factors including the risk of inconsistent judgments, judicial economy, and prejudice to the parties – including the plaintiffs and the non-defaulting defendants. *See Int'l Gemmological Inst., Inc. v. Rafaeil*, 2005 U.S. Dist. LEXIS 19288 (S.D.N.Y. August 17, 2005) (weighing the risk of an inconsistent judgment against countervailing factors).

---

[1]Undoubtedly, non-party financial institutions and payment processors, along with the infringers' alleged nominees, transferees, and co-conspirators, will object to such discovery absent a default judgment. *See e.g., Mack Boring & Part Co. v. Novis Marine, Ltd.*, 2008 U.S. Dist. LEXIS 98479 (D.N.J. December 5, 2008) (the "law is virtually uniform" in not permitting pre-judgment asset discovery). Most prejudgment attachment statutes require, along with a showing of a likelihood of success on the merits, a showing of the specific assets located within the state. *See, e.g.* Cal. Code Civ. Proc §484.020. This cannot be satisfied absent asset discovery. Entering judgment as to liability now will conserve judicial resources by avoiding trials as to liability in multiple jurisdictions whenever another court must rule upon objections to a subpoena (*see*, R. 45 (d)(3)(A)) or efforts to attach assets.

Cloudflare misinterprets *Frow v. De La Vega*, 82 U.S. 552 (1872) to require the withholding of the granting of a default judgment against some defendants when there is a possibility of inconsistent judgments. In *Frow*, the Supreme Court explained that in a multi-defendant case where defendants are to be "jointly liable," entering a default judgment runs the risk of inconsistent judgments. 82 U.S. 552, 554. A claim is one for joint liability where "as a matter of law, no one defendant may be liable unless all defendants are liable, or. . . when the nature of the relief demanded is such that, in order to be effective, it must be granted against each and every defendant." 10 *Moore's Federal Practice* §55.36 (3d Ed. 2018).

Hence, some federal courts have declined to apply *Frow* in cases asserting "joint and several liability," because its holding has been narrowed to cases involving true joint liability. *See*, *e.g.*, *Abbott Labs.*, 2020 U.S. Dist. LEXIS 241980, at *20-21; *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1257 (7th Cir. 1980) (the "several" in "joint and several" liability refers to individual liability, a liability not dependent on the actions of others).

Cloudflare claims that Ninth Circuit authority requires a different result. This is not true. For example, a Northern District of California court held, in entering a default judgment as to less than all defendants in a copyright suit that: "Cases subsequent to *Frow* are clear that the key point is to recognize that the *Frow* principle is designed to apply only when it is necessary that the relief against the defendants be consistent." *Jazz Casual Prods. v. Byron*, 2012 U.S. Dist. LEXIS 205009, at *10 (N.D. Cal. June 21, 2012) (internal citations omitted); *Shanghai Automation Instr. Co., Ltd. v. Kuei*, 194 F.Supp.2d 995 (N.D. Cal. 2001) (the key question with respect to the applicability of *Frow* is whether the "liability of all the defendants must be uniform"). In reliance upon *Shanghai*, Judge Spiegel in *Lucas v. Telemarketer Calling from (407) 476-5680,* 2014 U.S. Dist. LEXIS 147850 (W.D. Ohio Oct. 16, 2014), refuted the claim raised by Cloudflare here that

the unpublished opinion in *Kimberly v. Coastline Coal Corp.*, 1988 U.S. App. LEXIS 12265 (6th Cir. 1988), created a "preferred practice" within the Sixth Circuit of not entering default judgments in multi-defendant cases. *See Lucas*, 2014 U.S. Dist. LEXIS 147850 (a "determination that the [] defendants may not be held vicariously liable for the actions of the telemarketers who actually initiated the unlawful calls, for example, will not create the conundrum anticipated by *Frow*").

Under all of these cases, "the mere possibility that there may be inconsistent judgments is not a bar to the entry of judgment under 54(b)." *Jazz Casual Prods.*, 2012 U.S. Dist. LEXIS 205009, at *11. "To hold that the mere possibility of inconsistent judgments divests the Court of its discretion under Rule 54(b) would imply that whenever there are multiple defendants who raise similar defenses, the court could never enter a default until conclusion of the entire case regardless of the substantial prejudice likely to be suffered by the plaintiff as a result of the delay. Such a rule would contravene the purpose" of Rule 54 (b). *Shanghai*, 194 F.Supp.2d at 1009.

Yet, nearly two years after Plaintiffs filed suit, Cloudflare only offers pure conjecture as to the *possibility* of inconsistent judgments. Cloudflare states that during discovery it will explore its ability to attack "the chain of title for any asserted work" and to raise a fair use defense. But Cloudflare fails to explain what possibly could be "fair" about misappropriating 5,000 of the Plaintiffs' product images and passing them off as the Website Defendants' images. Nor does Cloudflare marshal a single fact to question the chain of title for Plaintiffs' registered works.

To determine whether there is just reason for delay in entering the default judgment, this Court must weigh its interest in "judicial economy" arising out of the possibility of inconsistent judgments against the Plaintiffs' claims of prejudice from further delay. *See Shanghai*, 194 F.Supp.2d at 1009; *Abbott*, 2020 U.S. Dist. LEXIS 241980, at *26-27.  Most courts have balanced these equities in favor of entering the default judgment upon the plaintiff demonstrating that delay

4

could prejudice its ability to collect upon its judgment. *See, e.g, Rafaeil*, 2005 U.S. Dist. LEXIS 19288, at *7-9 (the "mild administrative inconvenience" in setting aside an early default judgment was "clearly outweighed" by the risk that delay could jeopardize plaintiff's ability to recover and forcing the non-defaulting defendant to satisfy the award itself); *Lucas*, 2014 U.S. Dist. LEXIS 147850, at *5 (delay may cause the plaintiff to "lose what little ability he has to collect"). [2]

Cloudflare blithely claims that absent a default judgment Plaintiffs can file preliminary injunctions to shut down and freeze the accounts belonging to those Websites which are still infringing Plaintiffs' images at the same precise domains up to five years later.[3] Even before COVID, the infringing websites had limited lifespans due to the counterfeiters setting up new sites in response to the receipt of scores of consumer complaints and infringement claims. Moreover, because the ability to freeze accounts via an injunction is limited to preserving "the equitable remedies of a return of lost profits and an accounting, not statutory damages," *Klipsch Grp., Inc. v. Big Box Store Ltd.*, 2012 U.S. Dist. LEXIS 149507, at *4-5 (S.D.N.Y. Oct. 11, 2012), Plaintiffs will be left with an incomplete remedy where the legal and statutory damages exceed those assets "traceable to the equitable claim." *Shamrock Power Sales, LLC v. Scherer*, 2016 U.S. Dist. LEXIS 144773, at *21-22 (S.D.N.Y. Oct. 18, 2016).

Accordingly, Plaintiffs' interest in not impairing their ability to collect against the Website Defendants warrants the entering of the default judgments now. This will aid Plaintiffs in gaining discovery regarding the participants in the counterfeiting schemes and to attach or restrain their assets when identified.

---

[2] Cloudflare makes the straw man argument that the default judgments could prejudice Cloudflare by precluding it from offering defenses. However, a default judgment has no collateral estoppel or law of the case effect on the non-defaulting defendants. *Associated Int'l Ins. Co. v. Crawford*, 182 F.R.D. 623, 629 (D. Colo. 1998).

[3] The January 2020 Complaint alleges infringement that occurred from 2017-2019.

5

DATED:  December 29, 2021

Respectfully submitted,

s/ Nicole D. Berkowitz
Nicole D. Berkowitz (TN #35046)
Grady M. Garrison (TN #8097)
**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, P.C.**
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Telephone:  (901) 526-2000
Facsimile:  (901) 577-2303
Email: ggarrison@bakerdonelson.com
Email:  nberkowitz@bakerdonelson.com

Russell Bogart (NY #2856078)
Stuart Kagen (NY #SK6496)
(Admitted Pro Hac Vice)
**KAGEN, CASPERSEN & BOGART, PLLC**
757 Third Avenue, 20th Floor
New York, NY 10017
Telephone: (212) 880-2045
Facsimile: (646) 304-7879
Email: rbogart@kcbfirm.com
Email: skagen@kcbfirm.com

*Attorneys for Plaintiffs-Counterdefendants*
*American Clothing Express, Inc. d/b/a Allure*
*Bridals and Justin Alexander, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2021, a true and correct copy of the foregoing was filed via the Court's CM/ECF system.  Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record.

s/ Nicole D. Berkowitz
Nicole D. Berkowitz