IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
MEMPHIS

| | |
|---|---|
| AMERICAN CLOTHING EXPRESS, INC. D/B/A ALLURE BRIDALS AND JUSTIN ALEXANDER, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> CLOUDFLARE, INC. AND DOES 1-200, INCLUSIVE, <br><br> Defendants. | No. 2:20-cv-02007-SHM-dkv |

**PLAINTIFFS' MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION AND INCORPORATED MEMORANDUM IN SUPPORT**

Plaintiffs American Clothing Express, Inc. d/b/a Allure Bridals ("Allure") and Justin Alexander, Inc. ("Justin," combined with Allure, "Plaintiffs") move pursuant to Fed. R. Civ. P. Rules 26 and 37 to compel the Defendant Cloudflare, Inc. ("Cloudflare") to answer certain interrogatory and document requests. In further support of their Motion, Plaintiffs state as follows:

**PRELIMINARY STATEMENT**

Plaintiffs file this motion to compel Cloudflare to answer discovery requests directly relating to the subjects of what Cloudflare knew about the infringers using its content delivery network ("CDN") and the reasonableness of Cloudflare's policies for responding to such infringers. This discovery is relevant to critical topics in this copyright infringement case such as: i) the identity of the "John Doe" operators ("Operators") of the ninety-seven infringing websites identified as direct infringers in Schedule A to the Complaint (the "Domains"); ii) the potential

1

identity of Cloudflare's business partners, called "Resellers," in facilitating the infringement; iii) Cloudflare's knowledge of the scope of the Operators and/or Resellers involvement in caching and transmitting infringing materials through Cloudflare's CDN; and iv) Cloudflare's ability to assert its affirmative defense under the Digital Millennium Copyright Act, 17 U.S.C. §512(i), that it had reasonably adopted and implemented a policy for terminating repeat infringers.

In its Complaint, Plaintiff identified ninety-seven Domains, out of the hundreds if not thousands, that used Cloudflare's CDN to optimize their websites which posted Plaintiffs' own product images for the purpose of selling knock-off dresses. Each of the Domains presented itself on the internet as a distinct and unrelated store front. Only after the Court directed Cloudflare to provide the contact information for each Domain did Plaintiffs discover that 62 of the 97 Domains had the same contact information, and many of the other 35 domains had common contact information with one or two other Domains.[1]

Counterfeiters often operate clusters or networks of infringing websites such that if the brand rights holder can shut down some websites the counterfeiter can seamlessly continue the infringing activity on other websites. Because Cloudflare tracks its customers by their email accounts, Cloudflare's disclosure demonstrates that Cloudflare knew or was willfully blind to Plaintiffs being infringed not by 97 distinct websites but instead by large, sophisticated networks of counterfeiters. Cloudflare's failure to shut down these criminal networks of foreign infringers misusing Cloudflare's services directly relates to critical issues at the heart of this case such as Cloudflare's knowledge and the reasonableness of its policies for dealing with infringers (much less networks of infringers).

---

[1] Based on Cloudflare's disclosures, 35 of the websites were controlled by one network. Those 35 websites were the subject of more than 1,000 complaints of infringement from just the Plaintiffs.

2

Hence, discovery pertaining to other websites that are part of these clusters – based upon their operation by the same persons and their infringement of the legitimate bridal industry's images ("Related Domains") – is highly relevant to the case. For one, what Cloudflare's own, easily searchable records reflect regarding the magnitude of these clusters (e.g., the number of websites comprising the clusters and the amounts of complaints of infringement per each website in the cluster) bears directly on the reasonableness of Cloudflare's infringement policies. Moreover, the identification of the other websites could help lead to the identification of the operators of these websites.

Just recently, Cloudflare has shifted gears, and has definitively stated it will not produce any discovery regarding the Related Domains because the common emails probably belong to Cloudflare's resellers ("Resellers") as opposed to the Counterfeiters themselves. Apparently, a Reseller is a Cloudflare "partner" selling to consumers web hosting services along with Cloudflare accounts and technical support as part of a contractual/financial arrangement with Cloudflare. *See, e.g.*, https://portal.cloudflarepartners.com/English/. After taking five months to investigate the existence of responsive information and the burden of answering these discovery requests, Cloudflare only offers pure speculation and not a shred of documentary evidence as to who operates these four large clusters of infringing websites. This evidentiary failure alone mandates that Cloudflare produce the disputed discovery.

Cloudflare's argument about the Resellers (even assuming *arguendo* its speculation is accurate) only militates in favor of requiring the discovery to be answered. Under Cloudflare's speculation, Cloudflare's own business partners – in exchange for financial rewards from Cloudflare – have been introducing counterfeiters to Cloudflare's service who have engaged in large scale infringement while the Resellers ignore thousands of complaints of infringement.

3

NDB 4874-2775-4824
2906954-000007

Based upon Cloudflare's explanation, the Resellers' role in facilitating this large-scale infringement should be explored in the discovery process.

## THE DISPUTED DISCOVERY

Cloudflare has categorically refused to produce any discovery whatsoever pertaining to the Related Domains in response to Interrogatory Requests Numbered 1F and 5 along with Document Requests Numbered 11, 18, 19, 20 and 28.

### INTERROGATORY 1.F

With respect to each Domain, identify in accordance with Cloudflare's records the following information pertaining to the persons or entities controlling and or operating each Domain (the "Operators"):

F. Any other websites, other than the Domains, for which the operator of the other websites submitted the same email address, business name or payment information as used for one of the Domains ("Related Domains").

**INTERROGATORY NO. 5:** For the Related Domains, please state the following:

A. Any additional contact information for the Operator not set forth above;
B. The Date of the first report of infringement (via either email or through Cloudflare's webform)
C. The total number of reports of infringement transmitted to Cloudflare (via either email or webform)
D. The date of the last or most recent report of infringement transmitted to Cloudflare (via either email or webform)
E. The name of each copyright holder which filed a report of infringement for each domain, along with the name of any agent used by that person or entity to report the infringement and the total number of reports of infringement made by each such person or entity
F. Whether Cloudflare discontinued providing any services to the Related Domains because of a breach of Cloudflare's Terms of Service or pursuant to Cloudflare's policies for responding to notifications of alleged copyright infringement.

NDB 4874-2775-4824
2906954-000007

**DOCUMENT REQUEST 11:**

With respect to the Related Domains[2], please produce the following information from January 1, 2015 until the present:

a. All documents containing any additional contact or payment information for the Operator of the Domains;
b. Any and all notices of infringement received [from] Plaintiffs;
c. Any and all notices of infringement received by Cloudflare from persons or entities other than Plaintiffs;
d. All responses from Cloudflare to the party making the complaint of infringement;
e. All communications between Cloudflare and the host of the Domain concerning the complaint of infringement;
f. All communications between Cloudflare and the operator of the Domain concerning the complaint of infringement.

**DOCUMENT REQUEST 18**:

All documents concerning Cloudflare's issuing of, or evaluation of issuing of, any warnings, account changes, and service terminations to any of the Domains or Related Domains for any issue relating to copyright infringement.

**DOCUMENT REQUEST 19:**

All documents concerning Cloudflare's evaluation of whether any of the Domains or Related Domains were repeat infringers.

**DOCUMENT REQUEST 20**:

All documents concerning Cloudflare's investigation of any of the Domains or Related Domains for violations of Cloudflare's terms of service, including documents relating to the decision whether to take any action against the Domain or Related Domain.

**DOCUMENT REQUEST 28**:

All documents prepared, reviewed, maintained, analyzed or stored by Cloudflare's Trust and Abuse Team relating to the Plaintiffs, their agents, the Domains, the Operators, the Related Domains.

---

[2] According to Plaintiffs' instructions and definitions, the term "Domain" refers to each domain identified in Schedule A to the Complaint and the term "Related Domain" refers to any other websites, other than the Domains, for which the operator of the other domain submitted to Cloudflare the same email address, business name, or payment information as used for one of the Domains.

NDB 4874-2775-4824
2906954-000007

## THE PROCEDURAL HISTORY

On July 5, 2022, Plaintiffs served their first set of document and interrogatory requests on the defendant Cloudflare (Ex. 1 & 2). On August 4, 2022, Cloudflare served objections and responses to the document and interrogatory requests (Ex. 3 & 4). On September 2, 2022, Plaintiffs sent to Cloudflare a detailed letter addressing Cloudflare's improper objections to answering most of the document and interrogatory requests (Ex. 5). On September 16, 2022, the parties met and conferred at length on Cloudflare's extensive objections. On September 19, 2022, Plaintiffs sent to Cloudflare a detailed letter summarizing the open discovery disputes between the parties concerning Plaintiffs' discovery requests (Ex. 6).

On September 30, 2022, Cloudflare sent a letter promising that it will be supplementing its document production and answers to Interrogatory requests (which still has not happened) and will be reevaluating its objections to answering the same (Ex. 7). On October 21, 2022, Plaintiff's counsel wrote to Cloudflare concerning the "difficulties" that Cloudflare was encountering in gathering and producing the responsive electronic discovery.

On October 28, 2022, Plaintiffs filed a motion seeking to amend the scheduling order in light of Cloudflare's failure to provide to Plaintiffs "the vast majority of the document discovery that Cloudflare intends to produce absent court intervention." Out of judicial economy, Plaintiffs do not repeat herein the procedural history set forth in the Motion to Amend the Scheduling Order ("MASO").

On December 12, 2022, the parties conferred again with respect to: i) Cloudflare's "extremely dilatory and incomplete" responses to Plaintiffs' discovery requests; and ii) Plaintiffs' belief that the only discovery that Cloudflare had purported to produce – communications between

6

Cloudflare and Plaintiffs' anti-counterfeiting vendors regarding the domains specifically at issue – was also significantly incomplete. On December 16, 2022, Plaintiffs' counsel wrote to summarize the content of the meet-and-confer, including Cloudflare's statement that the employee responsible for providing the responsive information had "checked out" before formally leaving the company (Ex. 8). Cloudflare's counsel then clarified that: "I don't think it is correct to characterize any former Cloudflare employee as 'checked out' and if I mistakenly conveyed that impression then I apologize. Rather, there are complexities with identifying information in large databases such as Cloudflare has, and employee turnover has added further difficulty, which we are addressing" (Ex. 8).

On December 21, 2022, Cloudflare finally declared that although it will produce (but still has not done so) the vast majority of the discovery outlined in Plaintiffs' September 19, 2022 letter, that Cloudflare categorically is refusing to produce any discovery pertaining to the Related Domains. The parties completed conferring about the issue on January 3, 2023 (Ex. 9).

## THE LEGAL STANDARD

The scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1), which provides that:

> "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The party seeking discovery is obligated to demonstrate relevance. *Johnson v. CoreCivic, Inc.*, No. 18-CV-1051-STA-tmp, 2019 U.S. Dist. LEXIS 176284, 2019 WL 5089086, at *2 (W.D. Tenn. Oct. 10, 2019). Upon a showing of relevance, the burden shifts to the party opposing discovery to show, with specificity, why the requested discovery is not proportional to the needs of the case. *William Powell Co. v. Nat'l Indem. Co.*, No. 1:14-CV-00807, 2017 U.S. Dist. LEXIS 55148, 2017 WL 1326504, at *5 (S.D. Ohio Apr. 11, 2017), *aff'd sub nom.* 2017 U.S. Dist. LEXIS 146802, 2017 WL 3927525 (S.D. Ohio June 21, 2017), and *modified on reconsideration*, 2017 U.S. Dist. LEXIS 157733, 2017 WL 4315059 (S.D. Ohio Sept. 26, 2017). Six factors are relevant to proportionality: (1) "the importance of the issues at stake in the action;" (2) "the amount in controversy;" (3) "the parties' relative access to relevant information;" (4) "the parties' resources;" (5) "the

7

importance of the discovery in resolving the issues;" and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "It is well established that the scope of discovery is within the sound discretion of the trial court." *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)).

*Fusion Elite All Stars v. Varsity Brands, LLC*, 2022 U.S. Dist. LEXIS 166705, at *7-8 (W.D. Tenn. Sep. 15, 2022).

### A. THE INFORMATION PERTAINING TO THE RELATED DOMAINS IS RELEVANT

The discovery pertaining to the Related Domains is relevant because the information sought bears directly on the questions of: i) Cloudflare's knowledge of the infringement; ii) the reasonableness of Cloudflare's policies for terminating repeat infringers; and iii) the identity of parties involved in directly perpetrating the infringement or facilitating that infringement.

In general, "relevance is an 'extremely low bar.'" *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, No. CV 16-10936, 2021 WL 5049154, at *3 (E.D. Mich. Oct. 31, 2021). Relevancy, for purposes of discovery, "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Teradyne, Inc. v. Astronics Test Sys.*, 2022 U.S. Dist. LEXIS 231173, at *15 (C.D. Cal. Dec. 22, 2022); *Lynch v. Experian Info. Sols., Inc.*, 569 F. Supp. 3d 959, 963 (D. Minn. 2021) ("A discovery request is relevant unless the information sought can have no possible bearing on the claims or defenses of the case."). "Most courts which have addressed the issue find that the amendments to Rule 26 still contemplate liberal discovery, and that relevancy under Rule 26 is extremely broad." *B&P Littleford v. Prescott Mach.*, 2022 U.S. Dist. LEXIS 38262, at *12 (E.D. Mich. Mar. 3, 2022), *quoting*, 12 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2008 (3d ed. 2021).

NDB 4874-2775-4824
2906954-000007

Here, the discovery regarding the Related Domains is relevant because, at a very minimum, it has a possible bearing on the claims or defenses in the case. As explained above, the discovery is likely to have a bearing on what Cloudflare knew or should have known from its own records about the magnitude of the infringement, who was involved in directly perpetrating and possibly facilitating that infringement and the reasonableness of Cloudflare's policies for dealing with repeat infringers. Notably, these issues will likely determine Cloudflare's ability to assert Cloudflare's affirmative defense under the DMCA for which Cloudflare bears the burden of proof.

**B. CLOUDFLARE HAS FAILED TO SATISFY ITS BURDEN OF DEMONSTRATING WITH SPECIFICITY WHY THE DISCOVERY IS NOT PROPORTIONAL TO THE NEEDS OF THE CASE.**

As set forth above, Plaintiffs, as the parties seeking to compel discovery, have satisfied their initial burden in demonstrating that the discovery pertaining to the Related Domains satisfied the relevancy requirements of Fed. R. Civ. P. Rule 26(b)(1). Thus, Cloudflare, as the "party opposing discovery is 'required to carry a heavy burden of showing' why discovery should be denied." *Teradyne, Inc. v. Astronics Test Sys.*, 2022 U.S. Dist. LEXIS 231173, at *16 (C.D. Cal. Dec. 22, 2022).

Cloudflare's raw speculation as to what the discovery might show as a matter of law fails to satisfy this "heavy burden of showing why discovery should be denied." *Id*. "A party objecting to a request for production of documents as burdensome must submit affidavits or other evidence to substantiate its objections." *Cratty v. City of Wyandotte*, 296 F. Supp. 3d 854, 859 (E.D. Mich. 2017). "[T]his burden cannot be sustained with bald generalizations or a conclusory assertion that production will be time-consuming and/or expensive." *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 569 F. Supp. 3d 626, 634 (E.D. Mich. 2021).

9

Cloudflare cannot satisfy its heavy burden to show that the discovery is not proportional to the needs of the case based upon the "six factors" used by courts for this purpose:

1. The Importance of the Issues at Stake in the Action

The exposure of the operators of large networks of infringing websites, and any Resellers that facilitated such illegal behavior, presents an important issue of public concern. See, e.g., *North Atlantic Operating Co. v. Ebay Seller Dealz_for_you*, 2017 U.S. Dist. LEXIS 226794, at *7-8 (E.D. Mich. May 3, 2017); *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) ("[T]he public has a compelling interest in protecting copyright owners' marketable rights to their work"). Moreover, given the number of website operators that use Cloudflare's services, questions pertaining to the sufficiency of Cloudflare's policies for responding to infringement complaints presents an important issue of concern to the parties and to the public generally. *See Viacom Int'l, Inc. v. YouTube, Inc.*, 2008 U.S. Dist. LEXIS 79777, at *16 (N.D. Cal. Aug. 18, 2008) ("The issues at stake are also important not only for defendant YouTube, but also for the future of user-generated video on the internet").

2. The Importance of the Discovery in Resolving the Issues

For the reasons set forth above, the discovery is highly relevant to resolving important questions in the case such as Cloudflare's knowledge of the infringement, Cloudflare's ability to assert the safe harbor defense under the DMCA because it purportedly reasonably adopted and implemented policies for terminating repeat infringers and the identification of the infringers and those who facilitated their actions.[3] Further, to the extent the discovery shows that Cloudfare knew of even larger networks of infringement, and failed to take action, the discovery could impact the

---

[3] Because the persons operating these networks of infringing websites for the most part use email providers located in China, Plaintiffs cannot subpoena the relevant internet service provider to identify the person operating these accounts.

10

NDB 4874-2775-4824
2906954-000007

awarding of statutory damages under the Copyright Act which considers the need for deterrence of the wrongdoing.

3. <u>The Amount in Controversy</u>

This factor clearly weighs in favor of ordering the discovery because Plaintiffs are seeking to recover from Cloudflare, a publicly traded company, damages for thousands of infringing images. *See, e.g.*, *Viacom Int'l, Inc. v. YouTube, Inc.*, 2008 U.S. Dist. LEXIS 79777, at *16 (N.D. Cal. Aug. 18, 2008) ("The amount in controversy is quite large due to the size of the parties and the alleged amount of copyright infringement on YouTube.com").

4. <u>The Parties' Relative Access To Relevant Information</u>

Here, Cloudflare has exclusive access to the disputed discovery. Instead of making a good faith proffer as to what its records show through the disclosure of concrete facts supported by documentary evidence, Cloudflare has asked Plaintiffs to accept its speculation as to what Cloudflare's own records show.

5. <u>The Parties' Resources</u>

This factor also militates in awarding the discovery as Cloudflare has ample resources to produce the discovery (and despite those resources has been extremely dilatory in producing any meaningful discovery in this case).

6. <u>Whether The Burden Or Expense Of The Proposed Discovery Outweighs Its Likely Benefit</u>

Here, the identification of the Related Domains should be relatively easy. Cloudflare would not need to investigate to link together the various websites by their common email address. Rather, Cloudflare stored this information in the normal course of its operations. Cloudflare's corporate designee testified in a separate action that: ███████████████

███████████████

██████████████████████████████████████ *See* Exhibit 10 (filed under seal). The burden upon Cloudflare to search for responsive information is further minimized by virtue of so many of the Domains being controlled by so few networks.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that their motion be granted, that Cloudflare be directed to answer the disputed discovery, and that Plaintiffs be awarded all further relief that is just and appropriate.

Respectfully submitted,

s/ Nicole Berkowitz Riccio
Grady M. Garrison (TN #8097)
Nicole Berkowitz Riccio (TN #35046)
**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, P.C.**
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Telephone: (901) 526-2000
Facsimile: (901) 577-2303
Email: ggarrison@bakerdonelson.com
Email: nriccio@bakerdonelson.com

Russell Bogart (NY #2856078)
Stuart Kagen (NY #SK6496)
(Admitted *Pro Hac Vice*)
**KAGEN & CASPERSEN, PLLC**
750 Third Avenue, Suite 2401
New York, NY 10017
Telephone: (212) 880-2045
Facsimile: (646) 304-7879
Email: rbogart@kagencaspersen.com
Email: skagen@kagencaspersen.com

*Attorneys for Plaintiffs American Clothing Express, Inc. d/b/a Allure Bridals and Justin Alexander, Inc.*

## **CERTIFICATE OF CONSULTATION**

      As shown by the declaration of Russell Bogart and exhibits thereto, the parties conferred regarding this subject matter of this motion by email and telephone from September 2, 2022 through January 3, 2023.  The parties were unable to reach an agreement regarding the relief sought in this motion.

                                                    s/ Nicole Berkowitz Riccio

NDB 4874-2775-4824
2906954-000007