IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| AMERICAN CLOTHING EXPRESS, INC. d/b/a ALLURE BRIDALS AND JUSTIN ALEXANDER, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CLOUDFLARE, INC. AND DOES 1-200, INCLUSIVE, <br><br> Defendant. | Case No. 2:20-cv-02007-SHM-atc <br><br> DEMAND FOR JURY TRIAL |

**MEMORANDUM OF FACTS AND LAW IN SUPPORT OF
MOTION TO SET ASIDE DEFAULT JUDGMENT**

## TABLE OF CONTENTS

                                                                                             **Page**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................. 1

RELEVANT BACKGROUND ............................................................................................... 3

LEGAL STANDARD .............................................................................................................. 5

ARGUMENT ............................................................................................................................ 5

       I.       The Copyright Act Does Not Authorize the Exercise of *In Rem* Jurisdiction Over "Websites" ............................................................................... 6

      II.      The Relevant Good-Cause Factors Weigh in Favor of Setting Aside the Default Judgment ........................................................................................... 8

              A.     Plaintiffs Will Not Be Prejudiced From Setting Aside the Default Judgment ................................................................................................. 9

              B.     The Purported Imerle Websites Have Meritorious Defenses ...................... 9

              C.     The Default Judgment Must Be Set Aside Regardless of Whether the Purported Imerle Websites Acted Culpably .......................... 13

CONCLUSION ...................................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Clothing Express, Inc. et al. v. Imerle Limited (UK) et al.*,
  Case No. 2:23-cv-02151-JPM-atc (W.D. Tenn.), Doc. 142 .............................................1, 2, 9

*Berthelsen v. Kane*,
  907 F.2d 617 (6th Cir. 1990) ........................................................................................ *passim*

*Checkpoint Sys. v. Castleton Enters.*,
  No. 5:10-CV-128, 2010 U.S. Dist. LEXIS 41993 (N.D. Ohio Apr. 29, 2010).........................7

*Community for Creative Non-Violence v. Reid*,
  490 U.S. 730 (1989)................................................................................................................12

*Complex Sys. v. ABN AMBRO Bank N.V.*,
  979 F. Supp. 2d 456 (S.D.N.Y. 2013)....................................................................................10

*Counce v. Wolting*,
  No. 13-3199-JTM, 2016 U.S. Dist. LEXIS 129192 (D. Kan. Sep. 21, 2016) ....................7, 8

*Dassault Systemes, SA v. Childress*,
  663 F.3d 832 (6th Cir. 2011) ...............................................................................................2, 5

*Days Inns Worldwide, Inc. v. Patel*,
  445 F.3d 899 (6th Cir. 2006) ...................................................................................................6

*Flanagan v. Islamic Rep. of Iran*,
  190 F. Supp. 3d 138 (D.D.C. 2016) .........................................................................................8

*Hi-Tech Video Prods. v. Capital Cities/ABC, Inc.*,
  58 F.3d 1093 (6th Cir. 1995) ......................................................................................3, 10, 11

*M.G.B. Homes, Inc. v. Ameron Homes, Inc.*,
  903 F.2d 1486 (11th Cir. 1990) .............................................................................................10

*Miller v. Underwood*,
  No. 4:06-CV-116, 2007 U.S. Dist. LEXIS 6079 (W.D. Mich. Jan. 26, 2007) .........................7

*Overstock.com, Inc. v. Visocky*,
  No. 1:17-cv-01331, 2018 U.S. Dist. LEXIS 179060 (E.D. Va. Oct. 17, 2018).................2, 6, 7

*Redmond v. Leatherwood*,
  Case No. 06-C-1242, 2009 U.S. Dist. LEXIS 9745 (E.D. Wis. Jan. 29, 2009).........................7

*RJ Control Consultants, Inc. v. Multiject, LLC*,
    100 F.4th 659 (6th Cir. 2024) ..........................................................................................10

*Sanders v. Gilbert*,
    Case No. 94-35014, 1995 U.S. App. LEXIS 1182 (9th Cir. Jan. 20, 1995) ..............................7

*Schiller & Schmidt, Inc. v. Nordisco Corp.*,
    969 F.2d 410 (7th Cir. 1992) ............................................................................................12

*United Coin Meter Co. v. Seaboard C. R.R.*,
    705 F.2d 839 (6th Cir. 1983) .......................................................................................5, 13

**Statutes**

15 U.S.C. § 1125(d)(2) ...........................................................................................................7

17 U.S.C. 101 ................................................................................................................11, 12

17 U.S.C. 501(a) ....................................................................................................................6

17 U.S.C. § 411(a) ...............................................................................................................11

17 U.S.C. § 411(b)(1) ..........................................................................................................11

17 U.S.C. § 412 ...................................................................................................................11

15 U.S.C. § 1125(d) ...........................................................................................................2, 6

**Other Authorities**

Fed. R. of Civ. P. 55(c) ..................................................................................................1, 2, 5

Fed. R. Civ. P. 60(b) .............................................................................................................5

2 Moore's Federal Practice - Civil § 12.22 (2024) ..................................................................6

Pursuant to Federal Rule of Civil Procedure 55(c), Intervenor Imerle Limited (HK) ("Imerle HK") moves to set aside the default judgment for liability only, Doc. 157, entered against eleven "websites": angelmall.com.au, dreamqueen.es, dreamqueen.se, dressywell.co.za, herdress.co.uk, livedressy.com, missydress.com.br, missydress.es, missygowns.com, promdaily.com, promsdiary.com (collectively, the "Purported Imerle Websites").

## PRELIMINARY STATEMENT

In this action, Plaintiffs sued various "websites" for allegedly infringing copyrighted photographs that Plaintiffs claim to own. Doc. 165 ¶¶ 287-296 (alleging claim for copyright infringement against "Infringing Website Defendants"). Although Imerle HK is not a named defendant in this action, Plaintiffs have nonetheless alleged that an entity named "Imerle"[1] "controls[]" the Purported Imerle Websites. *Id.* ¶ 143.[2]

After authorizing substitute service of process via email, Doc. 52, on January 26, 2022, this Court entered a default judgment "as to liability" only against certain "Website Defendants," including the Purported Imerle Websites, Doc. 87 at 14. The Court joined "Imerle, Ltd."[3] as a

---

[1] Plaintiffs have failed to identify the precise entity that they contend controls the Purported Imerle Websites. In another pending lawsuit in this district, Plaintiffs sued two different entities with "Imerle" in their name: Imerle Limited (UK) and Imerle Limited (HK). *Am. Clothing Express, Inc. et al. v. Imerle Limited (UK) et al.*, Case No. 2:23-cv-02151-JPM-atc (W.D. Tenn.), Doc. 142. Regardless, for purposes of this motion only, Imerle HK assumes that Plaintiffs intended to refer to at least Imerle HK.

[2] In an order dated February 21, 2024, the Court wrote "Imerle acknowledges that it may be a 'named defendant as owner/ controller of the Infringing Websites[.]' " Doc. 157 at 8 (citing Doc. 142 at 5). Rather than "acknowledging" such ownership or control, prior counsel was attempting to say that Plaintiffs were seeking to hold "Imerle" liable for the default judgment as the alleged owner or controller of the websites.

[3] Again, the precise "Imerle" entity that Plaintiff has named in the pleadings and that the Court has joined as a party to this case is not clear. Imerle HK is not aware of any entity named "Imerle, Ltd."

1

necessary party in this case due to Plaintiff's allegations regarding an asserted connection between "Imerle, Ltd." and the Purported Imerle Websites

In a separate lawsuit that Plaintiffs have filed in this district (referred to herein as *Allure II*), Plaintiffs "seek to hold Imerle responsible as the alter ego for the" Purported Imerle Websites based on the existence of the default judgment. *Am. Clothing Express, Inc. et al. v. Imerle Limited (UK) et al.*, Case No. 2:23-cv-02151-JPM-atc (W.D. Tenn.), Doc. 142 ¶ 190.

Good cause justifies setting aside the default judgment against the Purported Imerle Websites for two reasons. *See* Fed. R. Civ. P. 55(c) (authorizing court to "set aside an entry of default for good cause"); *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 840 (6th Cir. 2011) (explaining that where a default judgment is not final because it did not resolve the issue of damages, the good-cause standard applies).

*First*, federal courts cannot exercise jurisdiction over copyright-infringement claims against "websites"—rather than actual parties to litigation. A default judgment cannot be entered against a website in the absence of a statute authorizing the exercise of *in rem* jurisdiction over the website. *See Overstock.com, Inc. v. Visocky*, No. 1:17-cv-01331 (LMB/TCB), 2018 U.S. Dist. LEXIS 179060, at *7 (E.D. Va. Oct. 17, 2018) (denying motion to enter default judgment against sixty-three websites because there is not "any precedent for the proposition that domain names can be sued in their own right as alter egos of named defendants or of persons not yet identified rather than in rem"). And Plaintiffs indisputably have not filed a claim under the only federal statute— the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)—that authorizes *in rem* actions against websites and domain names. *See generally* Doc. 165 (alleging only a single claim for direct copyright-infringement against "websites").

2

*Second*, even if the Court had properly exercised *in rem* jurisdiction over the Purported Imerle Websites, the relevant good-cause factors weigh in favor of setting aside the default judgment. *See Berthelsen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990) (setting forth three-factor test). Plaintiffs will not be prejudiced. *Id.* at 621 (stating "delay alone is not a sufficient basis for establishing prejudice"). The "websites" would have a meritorious defense to Plaintiffs' copyright-infringement claim, on the issue of, among other things, copyright ownership. *See Hi-Tech Video Prods. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1099 (6th Cir. 1995) (invalidating registrations and dismissing copyright-infringement claim where work at issue, which was registered as a work for hire, was in fact created by an independent contractor). It is not clear how a website, which is an intangible form of property, can act culpably. In any event, the default judgment must be set aside regardless of whether the websites acted culpably. *See Berthelson*, 807 F.2d at 622 ("Notwithstanding the defendant's culpable behavior, we conclude that the entry of default and the default judgment must be set aside.").

For the reasons explained more fully below, Imerle HK therefore respectfully requests that the Court set aside the default judgment.

**RELEVANT BACKGROUND**

On January 6, 2020, Plaintiffs American Clothing Express, Inc. d/b/a Allure Bridals ("Allure") and Justin Alexander, Inc. ("Justin Alexander") filed this lawsuit (1) against CloudFlare, Inc. ("CloudFlare") for contributory copyright infringement and (2) against unnamed websites described as "Does 1-200" for direct copyright infringement. Doc. 1. Plaintiffs allege that they own certain copyrighted photographs of wedding dresses, that the websites unlawfully copied and published those photographs, and that CloudFlare materially contributed to the alleged infringement by making copies of the photographs available online. *See generally id.*

According to the copyright registrations for the images at issue, the photographs were first published between 2010 and 2016. Doc. 165-1 at Page ID # 13410-25; Doc. 165-2 at Page ID # 13428-36. The copyright registrations state that the copyrighted photographs are owned by Plaintiffs as "employer for hire[.]" *Id.*

The images copyrighted by Justin Alexander were actually photographed by Jason Masters, Inc. ("JMI"). *See* Master Photography Agreement, attached hereto as **Exhibit 1**. As stated in the Master Photography Agreement, Justin Alexander and JMI entered into a "Letter of Acknowledgement" on February 9, 2023, in which they "acknowledged and memorialized their discussions and mutual understanding" that Justin Alexander would be the "sole author" and "exclusive copyright owner" of the photographs taken by JMI. *Id.* at 1. The parties agreed that "Justin Alexander properly registered the Photographs . . . as works for hire[.]" *Id.* at 2. JMI also agreed to assign its copyright interest in the photographs to Justin Alexander if it is "determined that any Photograph is not a work made for hire[.]" *Id.* at 3.

Allure has not produced a similar Master Photography Agreement for its allegedly copyrighted photographs. As a result, the provenance of those images and the manner in which Allure contends to have acquired ownership of the photographs is not known to Imerle HK.

On October 29, 2020, Plaintiffs moved for leave to serve process by email upon certain of the allegedly infringing websites, including the Purported Imerle Websites. Doc. 42. The Court granted Plaintiff's motion on June 9, 2021, holding that "Plaintiffs are directed to serve the Infringing Websites . . . by email." Doc. 52 at 13.

On September 17, 2021, Plaintiffs moved for default against certain "Website Defendants," including the Purported Imerle Websites. Doc. 61 at 1. The Clerk entered default on September 29, 2021. Doc. 62. On December 6, 2021, Plaintiffs moved for default judgment "as to all questions

of liability" against certain "Website Defendants," including the Purported Imerle Websites. Doc. 74. The Court entered default judgment "as to liability against" certain "Website Defendants[,]" including the Purported Imerle Websites. Doc. 87 at 14.

On May 17, 2024, Plaintiffs stipulated to the dismissal, with prejudice, of their claims against CloudFlare. Doc. 170. Accordingly, there is no remaining named defendant in this lawsuit, and the websites are the only remaining defendants. *See id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 55(c) provides that a "court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." "An order granting default judgment without any judgment entry on the issue of damages is no more than an interlocutory order to which Rule 60(b) does not yet apply." *Dassault*, 663 F.3d at 840 (6th Cir. 2011). Accordingly, the "more lenient Rule 55(c) standard " of "good cause" governs a motion to set aside a default or default judgement as to liability only. *Id.*

Because trials "on the merits are favored in federal courts[,] . . . . [a]ny doubt should resolved in favor of the petition to set aside the judgment so that the cases may be decided on their merits." *United Coin Meter Co. v. Seaboard C. R.R.*, 705 F.2d 839, 846 (6th Cir. 1983) (quotation omitted). "All ambiguous or disputed facts" must be viewed "in the light most favorable to the defendant, resolving any doubts in his favor." *Dassault*, 663 F.3d 832 at 841 (quotation and internal alterations omitted).

## ARGUMENT

The Court should set aside the default for two reasons: (1) federal courts cannot exercise jurisdiction over copyright-infringement claims against "websites," rather than actual parties to

5

litigation, and (2), in any event, the relevant good-cause factors weigh in favor of setting aside the default judgment.

I. **The Copyright Act Does Not Authorize the Exercise of *In Rem* Jurisdiction Over "Websites"**

"The validity of a court order depends on the court having jurisdiction over the subject matter and the parties." *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 903 (6th Cir. 2006). "When an action is brought against property," such as website, rather than an identified defendant, "in rem jurisdiction is the analog to personal jurisdiction." 2 MOORE'S FEDERAL PRACTICE - CIVIL § 12.22 (2024).

A judgment cannot be entered against a website in the absence of a statute authorizing the exercise of *in rem* jurisdiction over the website. *See Overstock.com, Inc. v. Visocky*, No. 1:17-cv-01331 (LMB/TCB), 2018 U.S. Dist. LEXIS 179060, at *7 (E.D. Va. Oct. 17, 2018) (denying motion to enter default judgment against sixty-three websites because there is not "any precedent for the proposition that domain names can be sued in their own right as alter egos of named defendants or of persons not yet identified rather than in rem").

Here, Plaintiffs' claims against the Purported Imerle Websites arise solely under the Copyright Act. *See generally* Doc. 165 (alleging only a single claim for direct copyright-infringement against "websites"). The Copyright Act authorizes copyright-infringement claims against "[a]ny*one* who violates" certain enumerated exclusive rights. 17 U.S.C. 501(a). No provision in the Copyright Act authorizes a copyright-infringement claim against "any*thing*" or a website. *See* 17 U.S.C. § 101 *et seq*. Simply put, no authority supports the proposition that a plaintiff may bring a copyright-infringement claim against a piece of property.

In contrast to the Copyright Act, the ACPA, 15 U.S.C. § 1125(d), authorizes a plaintiff to bring an *in rem* action against a website domain name: "The owner of a mark may file an in rem

6

civil action against a domain name in the juridical district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located" when the "owner" of the domain name is not subject to personal jurisdiction or cannot be found "through due diligence[.]" 15 U.S.C. § 1125(d)(2).

The ACPA is the only congressionally authorized vehicle for bringing *in rem* actions against websites and domain names. *Overstock.com, Inc.*, 2018 U.S. Dist. LEXIS 179060, at *6. Because Plaintiffs sought a default judgment against the Purported Imerle Websites for alleged violation of the Copyright Act, rather than for alleged violation of the ACPA, this Court lacked jurisdiction to granted the requested default judgment.

To the extent Plaintiffs argue that they sought and obtained a default judgment against the "Doe" alter-ego owners of the Purported Imerle Websites, rather than the websites themselves, then their argument fails as well. As courts across the country have repeatedly held, "Service upon a fictitious person is impossible for an obvious reason—that person does not exist." *Counce v. Wolting*, No. 13-3199-JTM, 2016 U.S. Dist. LEXIS 129192, at *1-2 (D. Kan. Sep. 21, 2016); *see, e.g.*, *Checkpoint Sys. v. Castleton Enters.*, No. 5:10-CV-128, 2010 U.S. Dist. LEXIS 41993, at *4-5 (N.D. Ohio Apr. 29, 2010) ("It also appears that Checkpoint would like an entry of default against the unidentified defendants, which is improper."); *Sanders v. Gilbert*, Case No. 94-35014, 1995 U.S. App. LEXIS 1182, at *3 (9th Cir. Jan. 20, 1995) ("[E]ntry of default judgment is inappropriate against a fictitious party defendant."); *Redmond v. Leatherwood*, Case No. 06-C-1242, 2009 U.S. Dist. LEXIS 9745, at *5 (E.D. Wis. Jan. 29, 2009) ("[T]he court cannot enter default against the John Does and Jane Does."); *Miller v. Underwood*, No. 4:06-CV-116, 2007 U.S. Dist. LEXIS 6079, at *1 (W.D. Mich. Jan. 26, 2007) (holding it is improper and unworkable to issue a default judgment against unnamed parties).

7

The reason for this rule is simple:

> Courts permit plaintiffs to use fictitious names in their complaint when they do not know the identity of the defendants, but provide sufficient details to indicate that the identity of the unknown defendants may be revealed through the discovery process. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). The plaintiff, however, must eventually identify the unknown defendants to serve process on them. *Scott v. Hern*, 216 F.3d 897, 912 (10th Cir. 2000) (Fed. R. Civ. P. 4(m) authorizes dismissal without prejudice where plaintiff fails to identify unnamed police office and serve process on them). Service cannot occur until the plaintiff identifies the unknown defendant.

*Counce*, 2016 U.S. Dist. LEXIS 129192, at *1-2. Thus, to the extent Plaintiffs claim that they sought to impose a default judgment through process served on unknown, fictitiously named defendants, rather than the websites themselves, then that service was insufficient to establish jurisdiction over the Purported Imerle Websites.

## II. The Relevant Good-Cause Factors Weigh in Favor of Setting Aside the Default Judgment

Even if the Court had properly exercised *in rem* jurisdiction over the Purported Imerle Websites (it did not), the relevant good-cause factors weigh in favor of setting aside the default judgment. "Courts are required to weigh three factors. First, the court must determine whether the plaintiff will be prejudiced from reopening the case. Then the inquiry turns to whether the defendant has a meritorious defense. Finally, the court must examine whether culpable conduct of the defendant led to the default." *Berthelsen*, 907 F.2d at 620; *see also Flanagan v. Islamic Rep. of Iran*, 190 F. Supp. 3d 138, 150 (D.D.C. 2016) (same). The balancing of these factors warrants setting aside the default judgment against the Purported Imerle Websites.

8

### A. Plaintiffs Will Not Be Prejudiced From Setting Aside the Default Judgment

"To establish prejudice, the plaintiff must show that the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Berthelsen*, 907 F.2d at 621. "[D]elay alone is not a sufficient basis for establishing prejudice." *Id.*

Plaintiffs cannot establish any meaningful prejudice. If Plaintiffs were worried about the loss of evidence or increased difficulties in discovery, they would have served discovery on the Purported Imerle Websites, at least on the issue of damages, at some point during the over four-year history of this case. Plaintiffs, however, have not. To the extent Plaintiffs claim that they sought discovery from the Purported Imerle Websites by serving discovery upon Imerle HK in *Imerle II*, then Plaintiffs have already taken the measures that would prevent loss of evidence or increased difficulties in discovery.

Nor can Plaintiffs establish that setting aside the default judgment would result in greater opportunities for fraud and collusion. Despite the lapse of over four years, in this case Plaintiffs never moved for a preliminary injunction against any of the Purported Imerle Websites to prevent the alleged copyright infringement. Moreover, in *Allure II* Plaintiffs have admitted that the Purported Imerle Websites are no longer "operational." *Am. Clothing Express, Inc. et al. v. Imerle Limited (UK) et al.*, Case No. 2:23-cv-02151-JPM-atc (W.D. Tenn.), Doc. 142 ¶ 188 ("At the time the [Purported Imerle Websites" were operational . . . ."). Inoperable websites, by definition, cannot commit fraud or collude.

This factor therefore weighs strongly in favor of setting aside the default judgment.

### B. The Purported Imerle Websites Have Meritorious Defenses

When analyzing whether a defendant has a "meritorious defense to the suit[,]" a court must "resolve all ambiguities or disputed facts in the light most favorable to the defendant." *Berthelsen*, 907 F.2d at 621. A defendant need not prove "likelihood of success." *Id.* Instead, the inquiry turns

9

solely on whether a defendant "states a defense good at law." *Id.* at 622 (quoting *United Coin*, 705 F.2d at 845).

A plaintiff asserting a claim for copyright infringement must establish two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 667 (6th Cir. 2024) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). The Purported Imerle Websites have a meritorious defense to Plaintiffs' copyright-infringement claim, on the issue of, *inter alia*, copyright ownership.[4]

As described above, Justin Alexander registered each of the images at issue—which were actually photographed by JMI—as "works made for hire." *See* Ex. 1. If the works were, in fact, not works made for hire, then the registrations are invalid and Justin Alexander cannot prevail on a claim for copyright infringement. *See Hi-Tech Video Prods. v. Capital Cities/ABC, Inc.*, 58 F.3d

---

[4] In *Imerle II*, Plaintiffs argued that the defendants lack standing to contest Plaintiffs' alleged ownership of the photographs. It is true that, as a general rule, "a party accused of infringement cannot defeat that claim by pointing to rights that another may have to the work in question." *Complex Sys. v. ABN AMBRO Bank N.V.*, 979 F. Supp. 2d 456, 475 (S.D.N.Y. 2013). That general rule, however, is subject to an exception that applies here. An alleged infringer has standing to assert that the plaintiff is not a valid copyright owner because of the application of the work-for-hire doctrine, specifically. *See id.* ("[A]n alleged infringer can undermine the plaintiff's ownership by asserting work for hire; the issue is not whether an alleged infringer can establish some ownership rights never asserted by a third party which the third party allegedly shares with the plaintiff." *Id.* at 476 (citing *Psihoyos v. Pearson Educ., Inc.*, 855 F.Supp.2d 103, 117, n.7 (S.D.N.Y. 2012); *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486 (11th Cir. 1990) (alleged infringer asserted that plaintiff was not a valid copyright owner under the work for hire doctrine); *Molinelli-Freytes v. University of Puerto Rico*, 09 Civ. 1655, 2012 U.S. Dist. LEXIS 143314, 2012 WL 4665638 (D. P.R. Feb. 15, 2012) (defendant sought to undermine plaintiff's ownership pursuant to the work for hire doctrine as a defense in an infringement suit); *International Code Council, Inc. v. National Fire Prot. Assoc., Inc.*, 2006 U.S. Dist. LEXIS 13783, 79 U.S.P.Q.2d 1651 (N.D. Ill. 2006) (defendant sought to defeat an infringement claim by asserting that plaintiff did not own the works pursuant to a work for hire theory; the court also noted the policy concern with allowing such a challenge but cited *M.G.B. Homes* as precedent); *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087 (N.D. Ca. 2002) (defendant in a copyright infringement suit contested ownership by the plaintiffs on a work for hire theory)).

1093, 1099 (6th Cir. 1995) (invalidating registrations and dismissing infringement claim where work at issue, which was registered as a work for hire, was in fact created by an independent contractor).

The ownership assignment contained in the Master Photography cannot cure the defect contained in Just Alexander's registration. *See* 17 U.S.C. § 411(b)(1) (stating that an inaccurate certificate of registration is insufficient if "(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.")[5] And without a valid registration, Plaintiffs have no statutory right to assert a copyright-infringement claim and certainly no right to seek attorneys' fees or statutory damages. *See* 17 U.S.C. § 411(a); 17 U.S.C. § 412.

> Section 101 of the Copyright Act defines a "work made for hire" in two ways:
>
> (1) a work prepared *by an employee* within the scope of his or her employment; or
>
> (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, *if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire*. . . .

17 U.S.C. 101 (emphasis added); *Hi-Tech*, 58 F.3d at 1099.

The images cannot qualify as works made for hire under the second prong for specially commissioned works. As set forth in the Master Photography Agreement, Justin Alexander and JMI did not execute a written instrument signed by them that the work shall be considered a work made for hire until, at the earliest, February 9, 2023 when they "entered into a Letter of

---

[5] These two statutory criteria would, of course, be the subject of discovery in in this action.

11

Acknowledgement." Ex. 1 at 1. Because Justin Alexander and JMI entered into that written instrument *after* the creation of the photographs, the written instrument fails to satisfy 17 U.S.C. 101 of the Copyright Act. *See, e.g.*, *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 413 (7th Cir. 1992) ("The writing must precede the creation of the property in order to serve its purpose of identifying the (noncreator) owner unequivocally.").

The images also likely do not qualify as a work made for hire under the second prong for works made within the scope of employment. Whether JMI acted as the "employee" of Justin Alexander requires application of a list of nonexclusive factors:

(1) the hiring party's right to control the manner and means by which the product is accomplished;

(2) the skill required;

(3) the source of the instrumentalities and tools;

(4) the location of the work;

(5) the duration of the relationship between the parties;

(6) whether the hiring party has the right to assign additional projects to the hired party;

(7) the extent of the hired party's discretion over when and how long to work;

(8) the method of payment;

(9) the hired party's role in hiring and paying assistants;

(10) whether the work is part of the regular business of the hiring party;

(11) whether the hiring party is in business;

(12) the provision of employee benefits; and

(13) the tax treatment of the hired party.

*Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52 (1989).

12

Notably, the Master Photography Agreement fails to claim that the JMI created the photographs within the scope of employment by Justin Alexander. *See generally* Ex. 1. Justin Alexander and JMI's need to attempt to rely on the test for specially commissioned works is irrefutable prove that the photographed images cannot satisfy the "scope of employment" test. At the very least, relevant factors would require exploration through discovery.

With respect to the images registered by Allure, the facts regarding the creation of those images are not apparent from either this docket or the docket in *Imerle II*. Construing all ambiguities in favor of the defaulting websites, the same problems plaguing Justin Alexander's defective ownership claim likewise apply to Allure's ownership claim.

### C. The Default Judgment Must Be Set Aside Regardless of Whether the Purported Imerle Websites Acted Culpably

A defendant acts culpably if it evades service or otherwise engages in willful conduct that led to the default. *United Coin*, 705 F.2d at 845; *Berthelsen*, 907 F.2d at 622.

Here, it is not apparent how a website, which is an intangible form of property, can act culpably. In any event, the default judgment must be set aside regardless of whether the websites acted culpably. *See Berthelson*, 807 F.2d at 622 ("Notwithstanding the defendant's culpable behavior, we conclude that the entry of default and the default judgment must be set aside.").

In *Berthelson*, the Sixth Court "agree[d] with the district court's conclusion that the defendant actively evaded services of process" and "his culpability contributed to the entry of default." *Id.* The Sixth Circuit nonetheless reversed the default judgment entered by the district court because

> culpability is only one of the three factors which the court must consider when determining whether good cause exists to set aside the entry of default. Although we certainly do not condone the actions of the defendant, the plaintiff has failed to demonstrate that he will be prejudiced by the reopening of this case, and the defendant has shown that he has a meritorious defense to the suit.

13

*Id.*

The same is true here. Even assuming that the Purported Imerle Websites were capable of acting culpably, the first two factors justify setting aside the entry of default because of federal courts' strong preference for deciding cases on the merits.

## CONCLUSION

For the foregoing reasons, Imerle HK respectfully requests that the Court set aside the default judgment for liability only entered against the Purported Imerle Websites.

Respectfully submitted,

s/ Tim Warnock
Tim Warnock (TN BPR #12844)
Keane Barger (TN BPR #33196)
LOEB & LOEB LLP
35 Music Square East, Suite 310
Nashville, TN 37203
(615) 749-8300
(615) 749-8308 (facsimile)
twarnock@loeb.com
kbarger@loeb.com

*Counsel for Imerle Limited (HK)*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the Court's ECF filing system upon:

Grady M. Garrison
Nicole Berkowitz Riccio
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, TN 38103
(901) 526-2000
(901) 577-2303 (facsimile)
ggarrison@bakerdonelson.com
nriccio@bakerdonelson.com

Russell Bogart
Stuart Kagen
Kagen, Caspersen & Bogart PLLC
551 Madison Avenue, 12th Floor
New York, NY 10022
(212) 880-2045
(646) 304-7879 (facsimile)
rbogart@kcbfirm.com
skagen@kcbfirm.com

this the 29th day of July, 2024.

s/ Tim Warnock

15